UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**BRETT PETERSON,**

     **Plaintiff,**

**v.**                              **Case No. 3:22-cv-00090-TJC-PDB**

**MICHELE MYERS, et al.,**

     **Defendants.**

_____/

## DEFENDANT ALEX MILLIGAN SHARP'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT, WITH PREJUDICE

COMES NOW Defendant ALEX MILLIGAN SHARP, sued in his personal capacity, and hereby files this Motion to Dismiss Plaintiff's Complaint (ECF No. 1, hereinafter "Complaint"), with prejudice, pursuant to Rules 8, 10, and 12, Federal Rules of Civil Procedure, principles of statutory immunity under section 768.28(9)(a), Florida Statutes (for the claims brought pursuant to state law), and principles of qualified immunity (for the federal claims), and in support thereof, states as follows:

**I.**       **BACKGROUND**

Defendant Alex Milligan Sharp ("Deputy Sharp") is a Deputy with the Putnam County Sheriff's Office. Complaint, ¶ 8. At the specific direction of Defendant Michele Myers (the Mayor of Crescent City, Florida) and one or more

1

employees of the City, Deputy Sharp performed a "forensic analysis" of a City-owned computer. Complaint, ¶ 35; see also FIBRS Incident Report Number PCSO21OFF001223 (hereinafter "Report"), attached to Plaintiff's Complaint as Exhibit "A," ECF No. 1-1, pp. 2-3. Employees of the City had expressed concerns "that confidential information was being accessed off the Mayor's work computer and then leaked" and that "they had discovered links to adult websites and accounts with passwords associated with the former Mayor Brent Peterson." Complaint, ¶¶ 37, 39; Report, pp. 2-3. Deputy Sharp told the City "unauthorized access to a computer or network was a crime under Florida Statute and could be investigated," but "[a]s for the adult websites, [he] would see if any images had been retained on the computer, but unless they were images involving children, there was no basis for a crime." Report, p. 3.

Deputy Sharp used Putnam County Sheriff's Office technical support to create an exact digital copy of the subject computer's hard drive for examination and inspection. ECF No. 1-1, p. 3. At no point did Deputy Sharp examine or inspect the subject computer's actual hard drive. Id.

Deputy Sharp performed the following four actions on the copied hard drive:

- He reviewed an Excel file titled "Google Chrome Passwords;"

- He reviewed an image file titled "Google Chrome Screen capture;"

2

- He searched for image files that could be pornographic;

- He examined the event logs in the Windows operating system to anything that would indicate illegal access.

Report, pp. 3-4.

The files Deputy Sharp reviewed – the Excel file titled "Google Chrome Passwords" and the image file titled "Google Chrome Screen capture" – were created approximately <u>12 days before</u> the City asked Deputy Sharp to perform a forensic analysis. Report, p. 3. In his Complaint, Plaintiff alleges that Mayor Myers created these files. Complaint, ¶¶ 32, 50. In any event, it is undisputed that <u>someone else</u> created these files and saved them on the City's computer before Deputy Sharp's involvement in this matter. Complaint, ¶¶ 46, 47. Deputy Sharp reviewed the Excel and image files without having to access Plaintiff's online Google Account.

Deputy Sharp never reviewed an internet browser history. Deputy Sharp never visited any of the websites listed in the "Google Chrome Passwords" file. Deputy Sharp never even opened a Google Chrome browser during his analysis. Deputy Sharp never reviewed information that was not stored on the computer provided by the City and copied to the separate hard drive for inspection.

Deputy Sharp searched the copied hard drive for images but found none that could be considered pornographic. Complaint, ¶ 40; Report, p. 4.

3

Additionally, Deputy Sharp examined the event logs on the copied hard drive but discovered no evidence that the subject computer had been accessed illegally. Id. Deputy Sharp concluded his report by noting that he "was not able to establish any illegal activities involving" the City's computer. Report, p. 4. This is the only new information that Deputy Sharp provided in his forensic report. Complaint, ¶¶ 35, 36; Report.

Plaintiff has brought the following claims against Deputy Sharp:

State Law

Count I – Tortious Invasion of Privacy – Intrusion

Count II – Tortious Invasion of Privacy – Public Disclosure of Private Facts

Count III – Tortious Invasion of Privacy – False Light

Count IV – Defamation

Count IX – Intentional Infliction of Emotional Distress

Count X – Negligence

Federal Law

Count V – Unreasonable Search and Seizure (§ 1983)

Count VI – Conspiracy to Interfere with Civil Rights (§ 1985(3))

Count VIII – Violations of the Stored Communications Act (§ 2701, et seq.)

Plaintiff's claims against Deputy Sharp are not based on Deputy Sharp's search of the copied hard drive for pornographic images or evidence of illegal

access. Rather, Plaintiff's claims against Deputy Sharp are based <u>solely</u> on the fact that, as part of his analysis of the copied hard drive, he reviewed an Excel file and an image file – files created by someone else, presumably someone with the City – that contained information reflecting that Plaintiff, at some point, visited pornographic websites.

Plaintiff has failed to allege facts to support any of his claims against Deputy Sharp. Deputy Sharp never invaded Plaintiff's privacy. Deputy Sharp never defamed Plaintiff. Deputy Sharp's actions were limited to reviewing a copy of a hard drive belonging to the City, and those electronic files contained therein – including files that were presumably created by the City. As discussed in greater detail below, Deputy Sharp is entitled to entry of an order dismissing all of Plaintiff's claims against him. Because Plaintiff will be unable to amend his Complaint to allege facts to establish a cause of action against Deputy Sharp, dismissal should be with prejudice.

## II.    RULE 12(b)(6) STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court must limit its scope of review "to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "a document

5

attached to a motion to dismiss may be considered by the court ... only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002).

"While a complaint attacked by a ... 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and brackets omitted). The Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

### III.    PLAINTIFF'S STATE LAW CLAIMS

**Deputy Sharp is entitled to statutory immunity under section 768.28(9)(a), Florida Statutes, for all of Plaintiff's state law claims against him**

Pursuant to section 768.28(9)(a), Florida Statutes, "[a]n officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

As a preliminary matter, it cannot seriously be disputed that Deputy Sharp

acted within the scope of his employment when he investigated a potential crime as reported by the City. And Plaintiff makes no allegation to the contrary.

Plaintiff fails to plead any facts that indicate Deputy Sharp in any way acted in bad faith, with malicious purpose, or with a wanton and willful disregard for human rights, safety, or property. To be sure, Plaintiff makes passing, conclusory reference to those buzzwords contained in the statute [Complaint, ¶¶ 2, 17], but Plaintiff wholly fails to provide any detail regarding how Deputy Sharp's investigation and reporting comprise "bad faith" and "malicious purpose." Plaintiff's Complaint is completely devoid of any facts alleging that Deputy Sharp acted with the actual malice necessary to overcome the statutory immunity from these state law claim he otherwise enjoys. Each of Plaintiff's claims, therefore, is barred by section 768.28(9)(a), and must be dismissed.

### Count I – Tortious Invasion of Privacy – Intrusion

As discussed above, based on the allegations of Plaintiff's Complaint (and the attached documents), Deputy Sharp did not electronically intrude into Plaintiff's private quarters. Deputy Sharp only searched a digital copy of a computer hard drive belonging to the City for pornographic images (finding none) and evidence of improper remote access (finding none). The other files examined (the Excel file and image file) were created by someone else and existed on the City's computer hard drive at the time the City asked Deputy Sharp to investigate.

To be sure, any "intrusion" that may have occurred took place 12 days before Deputy Sharp became involved. See, e.g., Complaint ¶¶ 46, 47, 64 ("Defendant Myers herself physically intruded into Plaintiff's private Google Account and various other online accounts belonging to the Plaintiff, going so far as to amass a spreadsheet of Plaintiff's personal usernames and passwords."). Plaintiff cannot establish an intrusion claim against Deputy Sharp based on the alleged actions of another party.

Having failed to allege facts to support his threadbare assertion that Deputy Sharp "intruded" in any manner, Plaintiff's intrusion claim fails. Because Deputy Sharp's actions can never support an intrusion claim, dismissal should be with prejudice.

**Count II – Tortious Invasion of Privacy – Public Disclosure of Private Facts**

The elements of a public disclosure of private facts claim "can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Cape Publications, Inc., v. Hitchner*, 519 So. 2d 1374, 1377 (Fla. 1989) (citing Restatement (Second) of Torts § 652D (1977)).

Plaintiff has not alleged that Deputy Sharp published <u>anything</u>. In fact, Plaintiff's entire "publication" claim appears to be based on some variation of the principle of *res ipsa loquitur* – namely, that because a news reporter was able to report on Plaintiff's internet use, Deputy Sharp must have released the

8

information. Complaint, ¶ 82 ("Evidence of the fact that Defendants Myers, Sharp, and DeLoach released this information to the public is inherent in the fact that the Defendant Cavacini was able to report on it in the Palatka Daily News.") This argument, of course, fails, as it does not account for the possibility that someone other than Deputy Sharp provided the news reporter with information regarding Plaintiff's internet use.

Notably, in his examination of the copied hard drive, Deputy Sharp did not "discover" any information related to Plaintiff's internet use. Rather, Deputy Sharp merely noted that the copied hard drive contained files (purportedly created by a City employee) that appeared to contain information associated with Plaintiff visiting adult websites. Deputy Sharp did not supplement or add to this information in any way in his report. Put another way, the information in the report related to Plaintiff visiting adult websites <u>already existed on the City's computer when the hard drive was copied</u>. Deputy Sharp cannot be found to have "published" this information merely because he includes reference to it in his report. He merely returned to the City the same information the City had previously provided to him.

Plaintiff's public disclosure of private facts claim against Deputy Sharp fails, and is due to be dismissed, with prejudice.

### Count III – Tortious Invasion of Privacy – False Light

Plaintiff's false light claim fails because Florida law does not recognize such a cause of action. *Dowbenko v. Google Inc.*, 582 F. App'x 801, 804 (11th Cir. 2014) (*citing Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1100 (Fla. 2008)); *see also Anderson v. Gannett Co. Inc.*, 994 So. 2d 1048, 1051 (Fla. 2008) ("false light" cause of action never existed at common law.) This claim should be dismissed, with prejudice.

### Count IV – Defamation

Plaintiff's defamation claim against Deputy Sharp fails, as Plaintiff has not alleged facts to establish the elements of that claim. To state a cognizable defamation claim under Florida law, the Plaintiff must show: (1) publication; (2) falsity; (3) that the defendant acted negligently; (4) actual damages; and (5) that the statement was defamatory. *Rapp*, 997 So. 2d at 1106. Count IV of Plaintiff's Complaint contains threadbare recitation of these elements, but does not allege any facts to support his allegations against Deputy Sharp.

First, as discussed above, Deputy Sharp has not published anything. There is no allegation that Deputy Sharp (or any other employee of the Putnam County Sheriff's Office) provided the press or any other party a copy of the report. The defamation claim against Deputy Sharp is due to be dismissed for this reason alone, as well as for the following, additional reasons.

As it relates to the second element of a defamation claim, Plaintiff has not

alleged that anything Deputy Sharp included in the report was false. A false statement of fact is the *sine qua non* for recovery in a defamation action. *Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*, 733 F.2d 1461 (11th Cir. 1984) (*quoting Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983). Defamation by implication occurs when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them," or when the defendant "creates a defamatory implication by omitting facts." *Rapp*, 997 So. 2d at 1108.

In this case, Plaintiff asserts that the report "*impl[ied]* a false assertion of fact – that Plaintiff looked at porn on his work computer, when this is, in fact, not so." Complaint, ¶ 169 (emphasis added). However, any review of the report itself reveals that Deputy Sharp made no such implication. Not even close. In fact, the report actually implies that the Excel and image files (with creation dates that post-date Plaintiff leaving office) were likely the result of the very situation that Plaintiff alleges in his Complaint – specifically, that Plaintiff "never logged out of his Google account upon leaving as Mayor," and someone "subsequently launching Google Chrome on this computer would be automatically logged in as [Plaintiff] with access to his email and links to his frequent web destinations."

This is not a false statement, nor is it a true statement that creates a false impression. Deputy Sharp's report presents nothing that would imply that Plaintiff "looked at porn on his work computer." Plaintiff's defamation claim

11

against Deputy Sharp fails for this additional reason.

Third, Plaintiff has not alleged, and will be unable to establish, that any statement of Deputy Sharp caused him actual damages. Plaintiff does not specify how he was allegedly damaged, but a fair reading of his defamation claim suggests that Plaintiff's alleged damages are "reputational" in nature, and stem from the publication of the news article attached as Exhibit B to his Complaint. Complaint, ¶ 179; ECF No. 1-2 (hereinafter "Article").

Nothing potentially damaging in the article was the creation of Deputy Sharp. On the contrary, any reputational damage resulting from the article is from the Excel and image files that, according to the article, were provided to the newspaper by the City. Article, p. 3.

The article noted that "city documents" revealed that Plaintiff's email was used as the username for the adult site "ismygirl.com." Article, p. 3. Notably, Deputy Sharp's report makes no reference to any such site.[1] In other words, the portions of the article that "damaged" Plaintiff could have been written without Deputy Sharp having ever written a report. For this reason, Plaintiff cannot establish that any alleged damages from his defamation claim can be connected to the actions of Deputy Sharp. Plaintiff's defamation claim against Deputy Sharp

---

[1] The other website reported in the article, "Tube8.com," was referenced in the report as a link Deputy Sharp observed on the image file that was created 12 days prior. Report, p. 3.

fails for this additional reason.

Fourth, it cannot be disputed that Deputy Sharp made no defamatory statements. His report contains only factually true statements and opinions that he gathered as part of an investigation into possible criminal activity as reported by the City.

Finally, even if Plaintiff could otherwise establish the elements of a defamation claim against Deputy Sharp, his claim would nonetheless fail, as Deputy Sharp enjoys an absolute privilege related to his involvement in preparing his report.

Under Florida law, "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997). This "absolute privilege protects the statements of all public officials, regardless of the branch of government or the level of the official." *Cassel v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007). It cannot be disputed that Deputy Sharp's investigation and reporting related to a potential crime is within the scope of his duties, and Plaintiff makes no argument to the contrary.

Deputies who author reports are absolutely privileged as to any defamatory publications made in connection with the performance of their duties as law enforcement officers – no matter how false or malicious the words spoken or

13

written are. *Lindbloom v. Stuebe*, Case No: 8:10–cv–2108–T–26TBM, 2011 WL 13175835, *3 (M.D. Fla. Jan. 27, 2011) (*citing McNayr v. Kelly*, 184 So.2d 428, 433 (Fla. 1966); *Stewart v. Sun-Sentinel Co.*, 695 So.2d 360 (Fla. 4th DCA 1997)).

For all of the above reasons – or any one of them – Plaintiff's defamation claim against Deputy Sharp fails, and is due to be dismissed, with prejudice.

### Count IX – Intentional Infliction of Emotional Distress

The Supreme Court of Florida recognized a cause of action for intentional infliction of emotional distress in *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001). To state a cause of action for intentional infliction of emotional distress, a plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the Plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe. *Id.* (citation omitted). In *McCarson*, the Florida Supreme Court relied on the definition of extreme and outrageous conduct set forth in Section 46, Restatement (Second) of Torts:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

14

*Id., citing McCarson*, 467 So. 2d at 278–9. The issue of whether a plaintiff has met the requirements set forth above in a claim for intentional infliction of emotional distress is a question for the trial court to decide as a matter of law. *Id., citing Baker v. Florida Nat'l Bank*, 559 So. 2d 284 (Fla. 4th DCA 1990).

Plaintiff's intentional infliction of emotional distress claim against Deputy Sharp is based on the allegation that Deputy Sharp "tortiously invad[ed] into the private online quarters of Plaintiff…" Complaint, ¶ 251. As discussed above, Deputy Sharp conducted no such invasion.

Plaintiff's intentional infliction of emotional distress claim against Deputy Sharp is also based on the allegation that Deputy Sharp "released the findings of the forensic audit on the subject computer to the public…" Complaint, ¶ 252. Again, Deputy Sharp did not release his report to the public.

Rather, all Deputy Sharp did was conduct an investigation into potential crimes reported by the City. Unfortunately for Plaintiff, the City's computer contained an Excel file and an image file that revealed Plaintiff's internet use – including usernames and passwords associated with adult websites. Plaintiff cannot seriously argue that Deputy Sharp should have not noted this information in his report. More important for the Court's analysis of this claim, it cannot be disputed that Deputy Sharp's conduct falls remarkably short of the type of "outrageous," "extreme," atrocious," or "utterly intolerable" conduct that would

15

support an intentional infliction of emotional distress claim.

For these reasons, Plaintiff's intentional infliction of emotional distress claim against Deputy Sharp is due to be dismissed, with prejudice.

### Count X – Negligence

Plaintiff's negligence claim against Deputy Sharp fails, and should be dismissed, with prejudice. First, section 768.28(9)(a), Florida Statutes, provides that no employee of the state or its subdivisions is personally liable in tort for ordinary negligence in the scope of employment. *DeRosa v. Shands Teaching Hosp. & Clinics, Inc.*, 504 So. 2d 1313, 1315 (Fla. 1st DCA 1987). As it is undisputed that Deputy Sharp was acting in the scope of his employment, Plaintiff's negligence claim against Deputy Sharp fails as a matter of law.

Additionally, the only "duty" identified by Plaintiff in support of his negligence claim against Deputy Sharp is a duty "to refrain from infringing on Plaintiff's constitutionally-protected rights, privileges, or immunities…" Complaint, ¶ 261. As noted below, Deputy Sharp did not violate any constitutionally-protected right of Plaintiff. As Plaintiff has not identified any other purported duty, Plaintiff's negligence claim against Deputy Sharp fails for this additional reason, and should be dismissed, with prejudice.

### IV.   PLAINTIFF'S FEDERAL CLAIMS

**Deputy Sharp is entitled to qualified immunity for all of Plaintiff's federal claims against him**

16

Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity is an immunity from suit rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Generally, courts are urged to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation – including on a motion to dismiss. *See Andrade v. Miami Dade Cty.*, No. 09-23220-CIV, 2010 WL 4069128, at *4 (S.D. Fla. Sept. 30, 2010)

To receive qualified immunity, the defendant public official must prove as a threshold matter that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Courson v. McMillan*, 939 F.2d 1479 (11th Cir. 1991) (*quoting Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)). Once this is established, the burden shifts to the Plaintiff. *Id*.

A public official is acting within the scope of his discretionary authority if the official was performing a legitimate job-related function through means that were within his power to utilize. *See, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004).

Here, it cannot be disputed that Deputy Sharp was engaged in a

discretionary function when he investigated a potential crime reported by the City. Accordingly, Plaintiff shoulders the burden of proving that Deputy Sharp does not enjoy qualified immunity protection.

The Court then engages in a two-step inquiry. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). The first question is whether, taken in the light most favorable to the Plaintiff, the facts alleged show that the defendant's conduct violated a constitutional or statutory right. *Id*. If so, the second question is whether the right, be it constitutional or statutory, was clearly established. *Id*. To demonstrate that a right is "clearly established," a plaintiff may point to a "materially similar case," identify a "broader, clearly established principle," or show that "the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60 (11th Cir. 2018) (citation and internal quotation marks omitted); *see also Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).

> For a right to be clearly established to defeat qualified immunity,
>
> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted).

A materially similar case "need not be directly on point, but existing

precedent must have placed the statutory or constitutional question beyond debate." *J W by & through Tammy Williams*, 904 F.3d at 1259 (citation and internal quotation marks omitted). "A single case does not establish the law in a sufficiently concrete context so as to defeat the qualified immunity defense." *Blanco v. City of Clearwater, Fla.*, 9 F. Supp. 2d 1316, 1319 (M.D. Fla. 1998).

In considering whether a violation is "clearly established," relevant law "consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

As discussed in more detail elsewhere in this motion, Deputy Sharp's conduct did not violate a constitutional or statutory right. Accordingly, under the first question, Deputy Sharp enjoys qualified immunity from suit.

Deputy Sharp is entitled to qualified immunity under the second question, as well. Plaintiff has not cited, and the undersigned has been unable to locate, even a case that would suggest that Deputy Sharp's actions as alleged in Plaintiff's Complaint violate any constitutional or statutory right. Accordingly, it cannot be said that Deputy Sharp's alleged actions violated clearly established federal statutory or constitutional rights which a reasonable person would have known. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Plaintiff's federal claims against Deputy Sharp are without basis. Moreover, Deputy Sharp enjoys qualified immunity from suit based on his limited and

innocuous involvement in this matter. For these reasons, Plaintiff's federal claims against Deputy Sharp should be dismissed, with prejudice.

### Count V – Unreasonable Search and Seizure (§ 1983)

Plaintiff's unreasonable search claim against Deputy Sharp fails. As discussed in greater detail above, Deputy Sharp did not "search" anything owned by or under the control of Plaintiff. Rather, Deputy Sharp merely examined a digital copy of a computer hard drive belonging to the City. Any "search" that *may* have implicated Plaintiff's privacy interests occurred took place 12 days before Deputy Sharp first became involved. See, e.g., Complaint ¶¶ 46, 47, 64.

Plaintiff alleges that "Defendants Michele Myers, Sharp, and DeLoach … employed sophisticated forms of technological surveillance in the form of a forensic audit on the subject computer…" Complaint, ¶ 193. Of course, Deputy Sharp employed nothing of the sort. Putnam County Sheriff's Office tech support created an exact digital copy of the subject computer's hard drive so that in the event Deputy Sharp discovered evidence of a crime, the original hard drive would remain unaltered and unmodified. Report, p. 3. Other than that, Deputy Sharp used a common wildcard and extension search to look for pornography or images of sexual nature that may have been saved to the City's computer, and looked at the event logs in the operating system to see if the computer had been accessed remotely. Id. Neither of these actions is specifically challenged by Plaintiff in this

action, but even if they were, they are not the sort of "sophisticated … technological surveillance" that would implicate Plaintiff's privacy rights related to his former work computer (should any such rights exist).

The only other actions Deputy Sharp undertook were to look at an Excel file and an image file created by the City.

Each of the above actions of Deputy Sharp can be accomplished using nothing more than the software that comes on any computer.[2]

Even if Deputy Sharp had conducted a "search" of something that could be considered to be owned by or under the control of Plaintiff, there still would be no violation of the Fourth Amendment, as Plaintiff has no expectation of privacy to information he makes available on a City-owned, common-use computer. *See U.S. v. Durdley*, 436 Fed.Appx 966, 968 (11th Cir. 2011) (employee "did not have a reasonable expectation of privacy in the thumb drive he left in a county-owned, common-use computer."); *U.S. v. King*, 509 F.3d 1338, 1341 (11th Cir.2007) (civilian contractor did not have a reasonable expectation of privacy in the contents of his laptop, which contained child pornography, when he connected the laptop to his military base's computer network); *U.S. v. Angevine*, 281 F.3d 1130, 1135 (11th Cir.

---

[2] Plaintiff also alleges, in passing, that unnamed "Defendants" viewed "the contents of the private browser history associated with Plaintiff's Google Account." Complaint, ¶ 195. Deputy Sharp did not view any browser history related to Plaintiff and included no reference to a browser history in his report. It is not clear to which other Defendant Plaintiff might be referring.

2002) ("We are reluctant to find a reasonable expectation of privacy where the circumstances reveal a careless effort to maintain a privacy interest.").

Here, Plaintiff essentially alleges he connected his personal Google Account to his work computer, and then left his information unprotected by any password. Based on compelling case law, Plaintiff cannot argue that he has an expectation of privacy in the contents of his Google Account, especially when he took no steps to maintain a privacy interest. As a result, even if it was Deputy Sharp who performed a search (and not the City), Plaintiff's unlawful search claim would fail.

For the above reasons, Plaintiff's unlawful search claim against Deputy Sharp should be dismissed, with prejudice.

### Count VI – Conspiracy to Interfere with Civil Rights (§ 1985(3))

Plaintiff's §1985(3) claim against Deputy Sharp fails. First, other than the threadbare recitation of the elements of the cause action, Plaintiff provides no factual support for his claim that any Defendant conspired with any other Defendant. Even if he did, his conspiracy claim under § 1985(3) is due to be dismissed, with prejudice.

To prove a private conspiracy in violation of the first clause of § 1985(3), "a plaintiff must show, inter alia, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' actions, and (2) that the conspiracy aimed at inferring with rights that are protected against

22

private as well as official encroachment." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (*quoting Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–78 (1993)). Of course, Plaintiff makes no claims related to racial or class-based discriminatory animus, and none exists under the facts of this case. For these reasons, Plaintiff's §1985(3) claim against Deputy Sharp should be dismissed, with prejudice.

### Count VIII – Violations of the Stored Communications Act

As with every other claim against Deputy Sharp, Plaintiff's violation of the Stored Communication Act ("SCA") claim is entirely without merit, and due to be dismissed, with prejudice. Under the SCA, anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided; or ... intentionally exceeds an authorization to access that facility; and thereby obtains ... access to a wire or electronic communication while it is in electronic storage in such system" may be liable. *Brown Jordan International, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017); 18 U.S.C. §§ 2701(a), 2707.

Here, Deputy Sharp did not access a facility through which an electronic communication service is provided. Nor did he obtain access to a wire or electronic communication. In fact, Plaintiff does not allege that any Defendant accessed Plaintiff's email. At most, Plaintiff alleges that Mayor Myers had access to Plaintiff's emails, although he admits he doesn't know if she opened or read any

of them. Complaint, ¶¶ 241, 242. Plaintiff's allegations are insufficient to state a claim for violation of the SCA against any Defendant, and certainly against Deputy Sharp.

Accordingly, Plaintiff's SCA claim against Deputy Sharp should be dismissed, with prejudice.

## V.   RULE 8 AND 10 STANDARDS

Plaintiff's Complaint should be dismissed, with prejudice, for the reasons stated above. However, should any claim against Deputy Sharp survive dismissal on the merits, Plaintiff should nonetheless be required to file an amended complaint that complies with applicable rules of pleading.

The instant Complaint violates Rule 8 and Rule 10, Federal Rules of Civil Procedure. Rule 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires parties to "state their claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Plaintiff's Complaint is replete with narrative, argument, conjecture, and even hypothetical and rhetorical questions which a responsive pleading cannot answer. It is the antithesis of the "short and plain statement" that Rule 8 requires.

## VI.   CONCLUSION

For the reasons stated above, Deputy Sharp respectfully requests that this

Court enter an Order dismissing Plaintiff's Complaint against him, and any other relief this Court deems proper.

### 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned conferred with counsel for Plaintiff via telephone, and was advised that the Plaintiff does not agree to the relief sought herein.

Respectfully submitted this 24th day of March, 2022.

*/s/ Matthew J. Carson*
**MICHAEL P. SPELLMAN**
Florida Bar Number: 0937975
mspellman@sniffenlaw.com
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendant Alex Sharp*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent via the Court's CM/ECF system to counsel of record this 24th day of March, 2022.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**