## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BRETT PETERSON,

                    Plaintiff,                         Case No.: 3:22-cv-90

v.

MICHELE MYERS, et al.,

                    Defendants.

_____ /

## MOTION TO DISMISS COMPLAINT BY
## THE CITY OF CRESCENT CITY AND MICHELE MYERS

Defendants, THE CITY OF CRESCENT CITY, FLORIDA ("the City") and MAYOR MICHELE MYERS ("Myers"), in her individual capacity, and her official capacity as Mayor, move to dismiss Counts I - X of Plaintiff's Complaint ("Complaint") with prejudice, pursuant to Rules 8, 10(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION AND PROCEDURAL HISTORY

This action arises from an investigation of a suspected security breach of a City-owned computer. ECF 1 (*Complaint*), ¶ 28, 29, 35; ECF 1-1.  On April 5, 2021, City officials, including Mayor Myers, met with investigators at the Putnam County Sheriff's Office and "relayed their concerns that confidential information was being accessed off the Mayor's work computer and then leaked."  ECF 1-1, p. 3.

The Putnam County Sheriff's Office investigated and generated a report of its findings.[1]  ECF 1-1.  The investigation concluded that no evidence of illegal remote access or other illegal activities involving the computer had occurred.  *Id.* The investigator concluded that the previous mayor, Brett Peterson, had never logged out of his google account on the City's computer.  In the review of an image file dated 3/24/2021, located on the computer, the investigator noted a link to adult websites and "a link to an unidentified Gmail account" and concluded that such was "not indicative of any unauthorized computer intrusion." *Id.*  Although the image file "contained multiple websites and accounts associated with adult sex sites" the investigator's search into the computer's hard drive reflected "no pornography or images of a sexual nature discovered." *Id.* at 4.  At the conclusion of the investigation, the City's computer was returned to the City and, by law, the report generated was public record.  Fla. Stats. §119.01(1).

Plaintiff, former Mayor Brett Peterson admits that he logged onto the city owned computer "assigned to the mayor's office" using his Google login identity and password and failed to log out of the City's computer after leaving office in November 2021.  ECF 1, ¶28, 30, 105.  Although it was Peterson's failure to log out of his google account on the City's computer that, in part, led to the security questions and investigation, he sues his successor in office personally and alleges that she should have "log[ged] out of [his] Google Account." *Id.* ¶31, 68, 69.

---

1 This report is a public record under Florida law.  Fla. Stat. Section 119.01(1) subject to exemptions contained in Chapter 119.

Peterson accuses "Myers — either on her own or through agents working on her behalf" of "opportunistically elect[ing] to access" his Google Account, going so far as to assemble a spreadsheet" of Peterson's personal online usernames and passwords.  *Id.*  The alleged motive of Myers was to gain a political advantage over Peterson who was likely to again run for office, since he had only served one term as mayor.  *Id.* ¶ 29, 33, 119.

Peterson further alleges that the city manager, Myers and the city attorney "directed the Putnam County Sheriff's Office to perform a forensic analysis" of the city's computer.   Id. ¶35.   The Sheriff's report, however, documents that its personnel reviewed the City's computer at the "request" of city officials due to reported "concerns that confidential information was being accessed off the Mayor's work computer and then leaked. Additionally, there was concern that they had discovered links to adult websites and accounts with passwords associated with the former Mayor Brent [sic] Peterson".  ECF 1-1 p.2-5.  The research into the City's computer reflected websites that had been accessed by the user.  Peterson alleges that he "*never* accessed adult sites" from the City's computer, but accessed such sites "from his personal home computer" and that this was discovered when "he inadvertently left himself logged into his Google Account on the subject computer..." Id. ¶105.

The Complaint asserts nine counts against **Myers**.[2] Six counts are based on <u>State Law</u>: Count I (Tortious Invasion of Privacy,  Intrusion); Count II (Tortious Invasion of Privacy, Public Disclosure of Private Facts); Count III (Tortious Invasion of Privacy, False Light); Count IV (Defamation); Count IX (Intentional Infliction of Emotional Distress); Count X (Negligence). Three counts based on <u>Federal Law</u>: Count V (Unreasonable Search and Seizure (42 U.S.C § 1983); Count VI (Conspiracy to Interfere with Civil Rights (42 U.S.C § 1985(3)); Count VIII (Violations of the Stored Communications Act (18 U.S.C. § 2701, et seq.).

The Complaint asserts five counts against **the City**. Two counts are based on <u>State Law</u>: Count IX (Intentional Infliction of Emotional Distress); Count X (Negligence). Four counts are based on <u>Federal Law</u>:  Count V (Unreasonable Search and Seizure (42 U.S.C § 1983)); Count VI (Conspiracy to Interfere with Civil Rights (42 U.S.C § 1985(3)); Count VII (Deprivation of Equal Protection *Monell* Claim – Municipal Liability (42 U.S.C. §1983); Count VIII (Violations of the Stored Communications Act (18 U.S.C. § 2701, et seq.).

## MOTION

Plaintiff has filed an 11-count complaint, attempting to allege various claims pursuant to 42 U.S.C. § 1983, 42 U.S.C § 1985(3), 18 U.S.C. § 2701, et seq., and various state law claims.  As explained in the memorandum of law below, each of Plaintiff's claims fails to meet the pleading requirements of the Federal Rules of

---

[2] Unfortunately, the Complaint does not clarify which claims are asserted against Myers in her personal as opposed to her official capacity.

Civil Procedure and/or Federal or Florida substantive law. Because it fails to properly state its claims or otherwise comply with pertinent law, the Complaint should be dismissed, with prejudice.

WHEREFORE, Myers and the City respectfully request that the Court dismiss the Complaint or in the alternative require Plaintiff to replead the Complaint with a more definite statement to provide clarity sufficient for Myers and the City to form a response to the Complaint.

## MEMORANDUM OF LAW

### I.    MOTION TO DISMISS STANDARD

Federal Rules of Civil Procedure 12(b)(6) allow a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. In deciding Rule 12(b)(6) motions, the Court must limit its consideration to well pled factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a

complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

## II.    Claims Against Myers in Official v. Individual Capacity

The allegations asserted against Myers in her official capacity should be dismissed as superfluous. A suit against a governmental official in her official capacity is a suit against the governmental entity of which the government official serves as an agent. *Mitchell v. City of Bartow*, Case No. 8:18-cv-1088-T-23CPT, 2019 WL 7193878, at *10 (M.D. Fla. Dec. 29, 2019) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, (1989)).

Throughout the Complaint, unfortunately, Plaintiff fails to identify whether Myers is being sued individually or officially. The distinction matters. If sued individually, Plaintiff must plead that Myers acted in bad faith. Fla. Stat. §768.28(9)(a) outlines differing duties for the City and an agent of the City:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act,

event, or omission of action in the scope of her or his employment or function, **unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property**.

Florida Statutes, Section 768.28 (9)(a) (emphasis added). Plaintiff's failure to be clear in whether Myers is sued individually also violates Rules 8 and 10(b). To the extent possible, the City will respond to all official capacity claims against Ms. Myers when able to discern from the Complaint that Myers is being sued in her official capacity.  To the extent that the Complaint allegations are asserted against Myers personally, she asserts that the Complaint allegations fail to meet the required standards contained in Section 768.28(9)(a) because she did not act in bad faith or with malicious purpose, but instead, acted responsibly in assuring no security breaches in her work issued computer.

### III.   Plaintiff Did Not Have a Reasonable Expectation of Privacy in the City's Computer

Plaintiff did not have a reasonable expectation of privacy in the City's computer.[3] A public employee is afforded a reasonable expectation of privacy in their workplace. *O'Connor v. Ortega*, 480 U.S. 709, 711, 715 (1987)(noting the reasonableness of an expectation of privacy in a particular place or item depends on context and is decided on a case-by-case basis). A public employee's expectation of privacy may be deemed unreasonable in the face of "operational realities" of "actual office practices and procedures, or ... legitimate regulation." *Id.* at 717

---

3 Plaintiff refers to the City's computer throughout his complaint as the "subject computer" or the "office computer" when, in truth, it is the City's computer and the City's property at issue here.

(emphasis added); *see, e.g.*, *U.S. v. Simons*, 206 F.3d 392 (4th Cir. 2000) (applying *Ortega* the Fourth Circuit held a search of a government computer used by a public employee was reasonable where it was company policy to "audit, inspect and/or monitor" its "employees' use of the Internet, including all file transfers, all websites visited, and all e-mail messages, 'as deemed appropriate'").

Other factors that have been considered in determining the legitimacy of an expectation of privacy in an item seized from an office include the employee's relationship to the item, whether the item was in the employee's immediate control when it was seized, and whether the employee took actions to maintain a sense of privacy in the item. *United States v. Anderson*, 154 F.3d 1225, 1232 (10th Cir.1998).

Further, government employees and their agents can conduct "reasonable" work-related searches in government workplaces, even if those searches violate an employee's reasonable expectation of privacy under the Fourth Amendment. *Ortega,* at 725-26, 732; *Liebeskind v. Rutgers University*, 2014 WL 7662032 (N.J. Super. Ct. App. Div. 2015), *cert. denied*, 223 N.J. 280, 122 A.3d 990 (2015) (finding no reasonable expectation of privacy in internet browsing history of a work-issued computer where the search was reasonable at inception and in scope and motivated by an investigation of work-related misconduct). Gathering evidence of work-related misconduct on a work-place computer does not violate a public-sector employee's Fourth Amendment rights, even if evidence of crimes are also gathered by such a search. *U.S. v. Slanina*, 283 F.3d 670 (5th Cir. 2002), *cert.*

*granted, judgment vacated*, 537 U.S. 802 (2002); *see also City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010) ("Government searches to retrieve work-related materials or to investigate violations of workplace rules, which are searches of the sort that are regarded as reasonable and normal in the private-employer context, do not violate the Fourth Amendment").

Plaintiff did not have a reasonable expectation of privacy in the City's computer.

## IV.    Plaintiff Did Not Have a Reasonable Expectation of Privacy in the Logged-In Google Drive Account

Plaintiff did not have a reasonable expectation of privacy in his Google Drive account ("Google Account") to the extent he logged into the account on a City-owned computer and failed to log out. The contents of the account remained accessible to the City's employees and the succeeding mayor.

Similarly, in *Edwards v. State*, the Third District Court of Appeal found a user did not have a reasonable expectation of privacy under the Fourth Amendment in a flash drive left plugged into work computer at work. 274 So. 3d 1222 (Fla. 3d DCA 2019). There the work computer was owned by the user's public employer and was kept in an office the user shared with another public employee who had full access to the computer because the user left his password to the computer in plain view on her desk for the express purpose of allowing the co-worker to use the computer. *Id.*; *see also U.S. v. Durdley*, 436 Fed. Appx. 966 (11th Cir. 2011) (holding no reasonable expectation of privacy existed in a thumb drive left in a county-owned computer, where the thumb drive was later accessed by a co-worker who opened

files stored on the thumb drive); *see also U.S. v. Angevine*, 281 F.3d 1130 (10th Cir. 2002) (holding, where professor made "a careless effort to maintain a privacy interest" in his office computer, he had no "reasonable expectation of privacy.").

Just like the user in *Edwards* who openly allows access to their account and leaves connected a drive of information or the user in *Durdley* that leaves a thumb drive in a common-use computer, Plaintiff does not have a reasonable expectation of privacy where he leaves his Google Account logged in to the City's computer, therefore allowing access to the attached files in the Account. Further, just like the professor in *Angevine*, Plaintiff took no steps to maintain his alleged privacy interest by failing to log out. Any interest is waived by implied consent of openly allowing third-party access.

## V.    **Plaintiff's State Law Claims**:

### Count I - **Tortious Invasion of Privacy – Intrusion (*Myers*)**

Count I fails to identify whether Myers is being sued in her official or individual capacity; however, under either scenario, Count I should be dismissed because Plaintiff does not sufficiently state a claim for tortious invasion of privacy for intrusion. To assert a claim of tortious invasion of privacy for intrusion, a plaintiff is required to prove that the defendant "wrongful[ly]"[4] "physically or electronically intrud[ed] into one's private quarters." *Spilfogel v. Fox Broadcasting Co.*, 433 Fed. Appx. 724, 725, 726 (11th Cir.2011)(quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003)). To constitute an invasion of privacy, the intrusion must

---

[4] *Cason v. Baskin*, 20 So.2d 243, 249 (1944).

be "highly offensive to a reasonable person." *Oppenheim v. I.C. System, Inc.*, 695 F.Supp. 2d 1303 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010).

Here, no physical or electronic intrusion into Plaintiff's private quarters or space took place by Myers.  Importantly, the City had every right, if not the duty to investigate concerns relating to the City's computer.

Myers and other City employees were concerned that there was a security breach pertaining to the City computer. This concern "of suspected unauthorized access to the Mayor's and other Crescent City staff work computers" is what prompted city officials to reach out to Defendant Sharp and the Putnam County Sheriff's Office for assistance. ECF 1-1, at 2.  Plaintiff has failed to support his threadbare allegation that Myers created the pre-existing files by intruding, either "physically or electronically".

Aside from the fact that Plaintiff is unable to support his assertion that there was a "physical or electronic" intrusion of any kind, he cannot show that Myers intruded into his "private quarters." Assuming arguendo that Plaintiff can amend his Complaint with support showing that Myers committed a physical or electronic intrusion, his claim will still fail because any such intrusion was not into Plaintiff's "private quarters." As outlined above, the Plaintiff did not have a reasonable expectation of privacy in either the City's or his Google Account which he left logged into the City's computer for almost six months.  Even assuming that Plaintiff's Google Account is the same as Plaintiff's "private quarters" (which it is not), there is no intrusion where the alleged "quarters" were not private and

11

maintained on a public computer. To the extent that the Court finds that a reasonable expectation of privacy existed in either Plaintiff's use of the City's computer or in the Google Account that Plaintiff left logged into the City's computer, Myers and the City assert that "[e]ffective consent negates an intrusion upon seclusion" common law invasion of privacy claim." *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016) (*citing Restatement Second, Torts* § 892A (1979)).

Plaintiff validly consented to any alleged intrusion by knowingly logging into a City computer and failing to log off.  When a Google Account is logged into on a public computer it will prompt the user to confirm that they are sure they want to log into that computer. On top of that, Google will send an email notification to the user indicating that their login information was used on a different computer. To the extent that the Google Account holder believes the logon permission is fraud, Google advises the user to immediately change their password.

Here, Plaintiff knew the computer was a physical desktop computer owned by the City that did not belong to him and was issued by the City for government use.  In this setting Plaintiff had no reasonable expectation of privacy but also to the extent that he argues there was a reasonable expectation to privacy, any such expectation of privacy was effectively waived when he consented to logging into his Google Account onto that desktop and failing to sign off.

Additionally, any alleged intrusion was not wrongful. As stated above in Section III, "reasonable" work-related searches in government workplaces are

lawful, even if those searches violate an employee's reasonable expectation of privacy under the Fourth Amendment or if evidence of crimes are also gathered by such a search. *See Ortega,* at 725-26, 732; *Slanina*, 283 F.3d at 670. Here, the discovery of Plaintiff's illicit conduct incidental to a work-related search of a government workplace computer is not wrongful nor a violation of Plaintiff's Fourth Amendment rights or right to privacy under the Florida Constitution. This is especially true where the search implicates a matter of legitimate public concern. In *Cason v. Baskin*, the Florida Supreme Court stated:

> The right of privacy does not prohibit the publication of matter which is of legitimate public or general interest. At some point the public interest in obtaining information becomes dominant over the individual's desire for privacy. It has been said that the truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest.

155 Fla. 198, 215-26 (1944); *See also Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) ("[t]he developing law surrounding the private-facts tort recognizes that the requirement of lack of public concern is a formidable obstacle").

In the instant case, the Plaintiff's involvement in illicit activity, as the former Mayor of the City, implicates a legitimate public concern especially as it relates to a politician who was seeking continued involvement in the City's politics and maintained a public status as to pressing town issues.

Therefore, Plaintiff's unsupported claim of tortious invasion of privacy based off intrusion should be dismissed with prejudice.

### Count II - Tortious Invasion of Privacy – Public Disclosure of Private Facts (*Myers*)

Count II should be dismissed because Plaintiff failed to adequately plead a cause of action under Florida law. To assert a claim of tortious invasion of privacy for public disclosure of private facts a plaintiff is required to prove: (1) the publication; (2) of private facts; (3) that are offensive, [5] and (4) are not of public concern. *Spilfogel*, 433 F. App'x. 724, 725.

Under Florida law, this claim requires the dissemination of truthful private information that a reasonable person would find objectionable. *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (citation and internal quotation marks omitted).

Plaintiff vaguely alleges that a report was published and sues, among others, Myers.   ECF 1 ¶51. The Complaint does not (and cannot) allege that Myers published any harmful, private facts that are not of public concern relating to Plaintiff.  Plaintiff alleges only "as a result of the release of [the] report… an article was published." *Complaint*, ¶ 52. The "report" was a public record under Florida Law.  The Complaint fails as it does not account for the possibility that someone other than Myers provided the news reporter with the information, who then

---

[5] *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) (citing Florida law and the Restatement (Second) of Torts in finding that the matter published must be "highly offensive to a reasonable person").

subsequently published the information. No agency between the actions of Myers and the Defendant, SARAH CAVACINI ("Defendant Cavacini") or Defendant Palatka Daily News is alleged. This claim should be dismissed, with prejudice, for failing to prove any publication of private facts by Myers.

Additionally, regardless of Plaintiff's inability to establish the element of publication, Plaintiff failed to show that (1) these facts are private or (2) these facts are not of the public concern. Here, Myers again raises the argument that the at-issue facts were not private as Plaintiff had no reasonable expectation of privacy where he logged into the City-owned computer with his personal Google account information and never checked whether he logged out. *See* Section III and IV. Alternatively, consent is evident by Plaintiff's conduct.

Again, the publication of private facts is not an invasion of privacy where the facts are of public concern. *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501 (Fla. 3d DCA 1993). Not only does Florida place extreme importance on the transparency of its government, but the illicit activity of its former and potentially future officials is the very definition of legitimate public concern. *See, e.g., Baskin*, 155 Fla. 198, 215-26; *Hitchner*, 549 So. 2d at 1377 (finding the public had a right to know that many school bus drivers had criminal records).

### Count III - Tortious Invasion of Privacy – False Light (*Myers*)

Count III should be dismissed with prejudice as Florida no longer recognizes false light claims as a valid cause of action. *Jews For Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1114 (Fla. 2008) ("However, because the benefit of recognizing the tort,

which only offers a distinct remedy in relatively few unique situations, is outweighed by the danger of unreasonably impeding constitutionally protected speech, we decline to recognize a cause of action for false light invasion of privacy."); *see also Anderson v. Gannett Co., Inc.*, 994 So. 2d 1048, 1051 (Fla. 2008) ("false light" cause of action never existed at common law).  Count III should be dismissed with prejudice.

### Count IV - Defamation  (*Myers*)

Plaintiff's claim should be dismissed with prejudice as Plaintiff fails to allege facts establishing the required elements of this cause of action.

Under Florida law, a Plaintiff is required to prove that:

> Wrongdoer published a false statement; (2) that the statement was about the person who is bringing the lawsuit; (3) that the statement was made to a third party; and (4) the falsity of the statement caused injury to the person who is bringing the lawsuit.

*Jews for Jesus, Inc., v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008); *Border Collie Rescue v. Ryan*, 418 F.Supp. 2d 1330, 1348 (M.D. Fla. 2006).

First, Myers did not "publish" anything. The alleged defamatory statements were published in a newspaper article based off an Incident Report that was neither drafted nor made public by Myers[6] and is a public record.  Second, truth is an absolute bar to a defamation claim. Nothing contained in the Report was false as the cites were accessed by Plaintiff. ECF 1, ¶105.  Myers did not make any

---

[6] *See Complaint*, ¶ 165, 169.

statement that created a false impression. Plaintiff has failed to adequately show that he suffered actual damages.

Despite Plaintiff's failure to sufficiently support a general claim of defamation against Myers, Plaintiff also fails to show an additional element of actual malice as is required for public officials and public figures as well as claims against individual governmental officials in Florida. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964); Fla. Stat. §768.28(9)(a). To prove actual malice, a plaintiff is required to prove that the defendant knew what she was saying or writing was false when the statements were made; that they were untrue; or that she had a reckless disregard for whether they were true or not. *Id.*

At the very least, the "public official" designation applies to those among the hierarchy of government employees who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs. *Rosenblatt v Baer*, 383 U.S. 75 (1966).[7]

Since Plaintiff formerly served as the mayor of the City less than six months before the alleged defamation, his status as a public official is not lost. Even after passage of time or leaving office, public officials must meet the actual malice standard because the public has a continued interest in the misdeeds of its leaders.

---

[7] *Bishop v. Wometco Enterprises, Inc.*, 235 So. 2d 759, 762 (Fla. 3d DCA 1970) (quoting White v. Fletcher, 90 So. 2d 129 (Fla. 1956) ("We think the rule is now generally accepted that anyone who seeks public employment or public office or who makes his living by dealing with the public or otherwise seeks public patronage, submits his private character to the scrutiny of those whose patronage he implores, and that They may determine whether it squares with such a standard of integrity and correct morals as warrants their approval.")

*See, e.g., Morgan v. Tice,* 862 F.2d 1495, 1499 (11th Cir.1989) (former Town Supervisor and Sheriff in Pennsylvania who was campaigning as a mayoral candidate in Florida was a public figure for purposes of a defamation claim); *Finkel v. Sun Tattler Co.*, 348 So 2d 51 (Fla. 4th DCA 1977), *cert. denied*, 358 So.2d 135 (Fla.1978) (former city attorney appeared to be a "public official or public figure" by virtue of his status as a former city attorney and current activities).

All-purpose public figures are private individuals who occupy "positions of such persuasive power and influence that they are deemed public figures for all purposes. . . . They invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1972). Similarly, the actual malice standard extends to virtually all aspects of their lives. Here, Plaintiff admits that during the six months following his service as City Mayor, Plaintiff was actively participating in City politics and he remained heavily involved in conversations "speaking out" regarding the controversy surrounding the City's budget and the Crescent City Police Department. *Complaint*, ¶ 34.

Plaintiff was a "public official or public figure". The alleged defamation pertained to true facts surrounding actions he took while in office. Plaintiff even admits that during the time he left office he maintained to be a political speaker "speaking out" in the media regarding issues that he handled while serving as Mayor of the City. *Complaint*, ¶ 9. It is clear that he is a public official or public figure and actual malice must be shown regarding the alleged defamatory statements. However, Plaintiff made no attempt at a showing of actual malice in

the Complaint.[8] Due to this failure to adequately plead the necessary elements to show a claim of defamation under Florida law, this claim should be dismissed with prejudice.

In the event that Plaintiff could otherwise establish the elements of a defamation claim against Myers, this claim should still fail by way of absolute immunity. Under Florida law, "public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997). This "absolute privilege protects the statements of all public officials, regardless of the branch of government or the level of the official." *Cassell v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007). The controlling factor in deciding whether a public employee is absolutely immune from actions for defamation is whether the communication was within the scope of the officer's duties. *Quintero v. Diaz*, 300 So. 3d 288, 291 (Fla. 3d DCA 2020); *see also Albritton v. Gandy*, 531 So. 2d 381, 387 (Fla. 1st DCA 1988) (noting "[I]n actions against a government official for defamation, public officials are protected by absolute immunity no matter how false or malicious or badly motivated a statement may be as long as the statements or actions fall within the 'scope of duty' of the public official."). The scope of public official's duties is to be "liberally construed." *Cassell*, 964 So. 2d at 194 ("The term 'duties' is not

---

[8] Even if the Court does not find that his public official/public figure status endured during the mere months following his public service as mayor and the mayoral election, he still was a limited-purpose public figure insofar as he has "thrust[ed himself] to the forefront of particular controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch Inc.*, 418 U.S. 323 (U.S. 1947).

confined to those things required of the officer, but rather extends to all matters which he is authorized to perform").

Here, Myers is absolutely immune against claims for defamation. *See* § 768.28(1), Florida Statutes. Similarly, the public employer cannot be liable for defamation based on the theory of *respondeat superior. See Medina v. City of Hialeah*, No. 02-20957-CIV, 2003 WL 1562281, at *2 (S.D. Fla. Mar. 24, 2003)(citation omitted); *see also Murphy v. City of Aventura*, No. 08–20603–CIV, 2008 WL 4540055, at *5 n. 3 (S.D. Fla. Oct.10, 2008) (stating the city would not be liable for defamation if the defendant city manager was found to possess absolute immunity (citation omitted)); *Saxon v. Knowles*, 185 So. 2d 194, 196 (Fla. 4th DCA 1966) ("The alleged liability of the city is based solely on the doctrine of *respondeat superior.* Exoneration of the city manager necessarily requires the exoneration of his employer, the City of Sanford." (citation omitted)).

Plaintiff's claims for defamation against Myers are due to be dismissed, with prejudice. Therefore no claim against the City can exist.

## Count IX – Intentional Infliction of Emotional Distress
### (against *Myers* and *the City*)

Because the City is sovereignly immune from any such claim, Count IX should be dismissed, with prejudice. Plaintiff fails to plead the necessary facts to assert an IIED claim against Myers.

In *Williams v. City of Minneola*, 619 So. 2d 983 (Fla. 5th DCA 1993), the plaintiffs attempted to state a cause of action of IIED against the City of Minneola.

There, the court recognized that the state of Florida essentially requires deliberate or reckless infliction of mental suffering on another in order to support such a claim. *Williams*, 619 So. 2d at 986.

For IIED, a plaintiff is required to show that: (1) the wrongdoer's conduct was intentional or reckless; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Williams*, 619 So.2d at 986.  The issue of whether a plaintiff has met the requirements set forth above in a claim for intentional infliction of emotional distress is a question for the trial court to decide as a matter of law. *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001); citing *Baker v. Florida Nat'l Bank*, 559 So. 2d 284 (Fla. 4th DCA 1990).

Plaintiff did not properly allege injuries suffered as a result of any physical impact under Florida's "impact rule." *See Degitz v. Southern Mgmt. Servs., Inc.*, 996 F.Supp. 1451, 1461 (M.D. Fla. 1998) ("[I]n order to recover damages for emotional distress caused by the negligence of another under Florida's impact rule, the emotional distress must flow from a physical injury sustained by physical impact.").

At no point did Myers's alleged actions rise to the level of "outrageous," "extreme," "beyond all bounds of decency," "atrocious," or "utterly intolerable in a

civilized community." As discussed above, Myers did not conduct an invasion into Plaintiff's "private online quarters." Myers had a genuine security concern regarding the City's computer. She reasonably requested an investigation take place. A concern for a breach in security, and seeking an investigation to alleviate that concern, does not rise to the level of conduct Florida law recognizes as "outrageous," "extreme," "beyond all bounds of decency," "atrocious," or "utterly intolerable in a civilized community." As such, Plaintiff's claim of IIED against Myers is due to be dismissed, with prejudice.

The *Williams* court also recognized that Florida Statute § 768.28(9)(a) states:

> the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

619 So. 2d at 986. At no point did Myers, or any agent of the City, act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." As such, Plaintiff's claim of IIED against the City is due to be dismissed, with prejudice.

### Count X – Negligence (against *Myers* and *the City*)

Count X is a claim of negligence against Myers and the City. As to Myers, she is not subject to suit, or individual liability, for alleged negligent acts pursuant to § 768.28(9), Florida Statutes. *See Keck v. Eminisor,* 104 So. 3d 359, 363 (Fla. 2012) (§ 768.28(9)(a) bars negligence suits, and liability, against governmental

employees acting in the course of their employment, absent bad faith, malicious purpose or wanton and willful disregard of human rights, safety or property). As Myers was acting in the course of her employment as Mayor of the City and she did not act in "bad faith," with "malicious purpose or wanton and willful disregard of human rights," Plaintiff's claim of negligence against Myers fails as a matter of law. In Florida, negligence consists of duty, breach, causation, and damages. *Clay Elec. Coop., Inc. v. Johnson*, 873, So. 2d 1182, 1185 (Fla. 2003). Plaintiff has not produced any evidence relating to Defendants' alleged duty, breach, causation, or damages that would entitle Plaintiff to any legally cognizable recovery. Here, the only duty identified by Plaintiff in support of his claim of negligence is against Myers and the City is "to refrain from infringing on Plaintiff's constitutionally-protected rights. Complaint, ¶ 261. As noted below, Plaintiff did not violate any constitutionally-protected right of Plaintiff.  Indeed, it was *Plaintiff's* negligence when "he inadvertently left himself logged into his Google Account on the subject computer" that led to security concerns on the City's computer. ECF 1 ¶105.

Because neither Myers nor the City breached any duty to Plaintiff Count X should be dismissed against both Defendants with prejudice.

VI.  **Plaintiff's Federal Law Claims**:

**Qualified Immunity Bars Plaintiff's Federal Claims against Myers**

At all times, Myers was acting within the scope of her duties as Mayor for the City of Crescent City and as such, is entitled to dismissal of Plaintiff's federal claims on the basis of qualified immunity.

Public officers are entitled to qualified immunity from suit rather than a mere defense to liability under § 1983.[9] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[Q]ualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.").

First, a public officer must prove she was acting within the scope of her discretionary authority when allegedly wrongful acts occurred.  Once the officer has made that showing, the burden then shifts to plaintiff to establish that qualified immunity is not appropriate. *Bates v. Harvey*, 518 F.3d 1233, 1243 (11th Cir. 2008). Here, it is undisputed that Myers was acting within the scope of her discretionary authority out of concern for the City's security interests in its computer. Plaintiff bears the burden of showing Myers is not entitled to qualified immunity.

Next, the Court applies a two-step assessment. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). First, whether facts that plaintiff has alleged or shown establish violation of a constitutional right, and second, whether the right at issue was clearly established[10] at the time of defendant's alleged misconduct. *Id.*  Other

---

[9] The purpose of this is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

[10] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (internal citations omitted).

than the law cited in this memorandum, the City and Myers found no case on point with the alleged facts in Plaintiff's complaint.

As discussed throughout this motion, Plaintiff has failed to allege a "clearly established" violation of a constitutional right. Myers operated under the impression that the City's computer was being targeted by an outside security threat, she became concerned and expressed that concern to City officials and the Sheriff's investigators. Plaintiff had no privacy interest in the City's computer or the Google Account under his facts. Myers did not violate Plaintiff's "clearly established" rights and thus is entitled to qualified immunity from suit.

### Count V – Unreasonable Search and Seizure (§ 1983) (against *Myers* and *the City*)

Plaintiff's claim of unreasonable search and seizure against Myers and the City fails. "The Fourth Amendment to the United States Constitution and Article I, section 12 of the Florida Constitution guarantees the right to be free from 'unreasonable searches and seizures'" *Armstrong v. State*, 46 So. 3d 589, 593 (Fla. 1st DCA 2010). However, a "party must demonstrate the government has infringed upon his reasonable expectation of privacy." *Id.*

Here, no "search" of anything owned or under the control of the Plaintiff was conducted. To the extent a "search" was conducted government employees are allowed reasonable work-related searches, as discussed above. Therefore, any such search into the safety of the City's data would qualify as a reasonable work-related

search.  Under these facts, the Constitution does not require to City to obtain a warrant to search its computer.

Additionally, as discussed above, Section II and III the Plaintiff fails to show any reasonable expectation of privacy in both his use of the City's computer and in his logged in Google Account.  Further, even if the City's inquiry was a search, which it is not, it would be reasonable with valid consent. *State v. Purifoy*, 740 So.2d 29, 29 (Fla. 1st DCA 1999).

## Count VI – Conspiracy to Interfere with Civil Rights
### (against *Myers*)

Plaintiff's threadbare allegations pursuant to 42 USC § 1985(3) of conspiracy are insufficient to prove conspiracy to interfere with Civil Rights and should be dismissed, with prejudice, as such. He provides no factual proof of any conspiracy between the Defendants.

The elements of a claim under the "rights and privileges" provision of the federal civil-rights-conspiracy statute are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection, or privileges and immunities, under the law; (3) an overt act in furtherance of the conspiracy; and (4) an injury. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). To sustain a claim for a conspiracy to interfere with civil rights, the claimant must prove both membership in a protected class and discrimination on account of it. *Id.* at 102. The Complaint asserts no claim related to racial and/or class-based discrimination or that any action was done to further that

discrimination. In addition to the section 1983 protections afforded to the City, discussed below, and Myers in her professional capacity, the City and its employees are considered a single legal entity which would not be capable of conspiring with itself. *Dickerson v. Alachua County Comm'n.*, 200 F.3d 761 (11th Cir. 2002). For the reasons stated throughout this Motion, this claim should be dismissed, with prejudice.

### Count VII – Deprivation of Equal Protection (*the City*)

Plaintiff's claim of deprivation of equal protection against the City fails to adequately allege all the necessary elements of the claim. Section 1983 has three main elements: (1) a deprivation of a federal right[11]; (2) the right was deprived under color of state law[12]; and (3) as a matter of law. The plaintiff must also allege that a policy or custom of the School Board was the "moving force" of the deprivation. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978); *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)(A "plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

Since a local government entity may not be sued under § 1983 for an injury inflicted solely by its agent." It follows: "it is only when the execution of the government's policy or custom inflicts the injury' that the municipality may be held liable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)

---

[11] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)
[12] *Id.*

(citing *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)); *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986) (emphasis added) (stating it is generally necessary to show a persistent and wide-spread practice to establish a policy or custom under *Monell*).

The allegations of the Complaint reflect no violation of Plaintiff's constitutionally protected rights. There is no wide-spread or persistent practice of infringement of the constitutional protections of the Plaintiff or those similarly situated. There is no evidence of disparate treatment or class-based distinctions made by the City in conducting their investigation of the computer or any City-wide policy requiring such.  Plaintiff's claims against the City in Count VII are meritless and due to be dismissed with prejudice.

### Count VIII – Violations of the Stored Communications Act (*Myers* and *the City*)

Plaintiff alleges violation of the Stored Communications Act ("SCA"). This claim does not sufficiently state the elements necessary to support this claim. A plaintiff must show that a defendant: (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. *Brown Jordan International, Inc. v. Carmicle,* 2016 WL 815827 (S.D. Fla. March 2, 2016); *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 961 (11th Cir. 2016).

First, the allegations fail to assert access of a "facility" within the meaning of the SCA and no electronic communication were intercepted. The internet history

was not in "electronic storage" as the term is defined by the SCA. *See Carmicle*, 846 F.3d at 1175 (stating that previously opened emails may be exempt from the purview of the SCA statute). Electronic storage, that the SCA is aimed to protect, is defined as "<u>temporary</u>, <u>intermediate</u> storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

Here, the alleged stored communications involved stored internet history of the Plaintiff. However, in *In re Facebook, Inc. Internet Tracking Litig.*, the court held that browsing histories are not composed of the actual communications sent between the individuals—rather, the browsing histories are merely a record of URLs visited. Thus, Plaintiffs' claims for relief under the SCA are insufficient, and the district court correctly dismissed them. 956 F.3d 589, 609 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021).

VII.   **<u>Rule 8 and 10 Standards</u>**

The Complaint violated Rules 8 and 10, Fed. R. Civ. P. Rule 8(a)(2) requires a pleading to have "short and plain statement[s] of the claim showing that the pleader is entitled to relief." Rule 10(b) requires parties to "state their claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances." That is not the case with Plaintiff's Complaint, containing multiple instances of the contrary.

VIII.  **Punitive Damage Claim**

Plaintiff's claims throughout the Complaint for punitive damages should be stricken pursuant to Rule 12(f) because the allegations do not support a punitive damage claim and punitive damages are not recoverable from a local government. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

IX.  **Conclusion**

For the reasons stated above, Myers and the City respectfully request that this Court enter an Order dismissing Plaintiff's Complaint against both parties, with prejudice.

X.  **Local Rule 3.01(g) Certification**

The undersigned certifies that she spoke with opposing counsel Rook Ringer who represented that Plaintiff does NOT agree with the relief requested in this motion.

Respectfully submitted this 12th day of April, 2022.

**MARKS, GRAY, P.A.**

*Susan Smith Erdelyi*
Susan S. Erdelyi
Florida Bar No.  0648965
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: (904) 398-0900
serdelyi@marksgray.com
jmcduffie@marksgray.com
*Attorney for Defendants Michele Myers and City of Crescent City*