## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**BRETT PETERSON,**

     **Plaintiff,**

**v.**

            **Case No. 3:22-cv-00090-TJC-PDB**

**MICHELE MYERS, et al.,**

     **Defendants.**

---

### PLAINTIFF BRETT PETERSON'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT H.D. DELOACH AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Plaintiff BRETT PETERSON, and hereby files this Response in Opposition to the Motion to Dismiss of Defendant H.D. DELOACH [Dkt. #17] (hereinafter, the "Motion"), and in support thereof, states as follows:

1. On January 25, 2022, the Plaintiff filed his Complaint against. [Dkt. #1].

2. On March 24, 2022, the Defendant filed his Motion to Dismiss.

3. Plaintiff has brought the following claims against Defendant H.D. DeLoach (hereinafter, the "Defendant" or "DeLoach"):

> State Law Claims
> Count I – Tortious Invasion of Privacy – Intrusion
> Count II – Tortious Invasion of Privacy – Public Disclosure of Private Facts
> Count III – Tortious Invasion of Privacy – False Light
> Count IV – Defamation
> Count IX – Intentional Infliction of Emotional Distress
> Count X – Negligence
>
> Federal Law Claims

> Count V – Unreasonable Search and Seizure (§ 1983)
> Count VI – Conspiracy to Interfere with Civil Rights (§ 1983)
> Count VIII – Violations of the Stored Communications Act (§ 2701, *et seq.*)

4.      On March 24, 2022, the Defendant filed his Motion to Dismiss.

## MEMORANDUM OF LAW

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46, (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Quality Foods, 711 F.2d at 995. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (*quoting* Conley, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246 (1980); Dussouy v. Gulf

Coast Investment Corp., 660 F.2d 594, 602 (5th Cir.1981); Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc., 540 F.2d 824, 826-827 (5th Cir. 1976). Furthermore, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v.Iqbal, 556 U.S. 662, 678 (2009).

## I.      PLAINTIFF'S STATE LAW CLAIMS

### A. Count I – Tortious Invasion of Privacy – Intrusion

Florida law defines intrusion as "physically or electronically intruding into one's private quarters." Allstate Ins. Co. v. Ginsberg, 863 So.2d 156, 162 (M.D. Fla. Sept. 18, 2003). "Even though publication is not required, the focus of the tort is nonetheless 'the right of a private person to be free from public gaze.'" Oppenheim v. I.C. System, Inc., 695 F.Supp.2d 1303, 1308-09 (*citing*, Ginsberg, *supra.*)

In support of Defendant DeLoach's Motion to Dismiss, with respect to Plaintiff's invasion of privacy claim for intrusion, DeLoach relies upon the Motion to Dismiss of Defendant Deputy Alex Sharp ("Sharp") [Dkt. #5] (hereinafter, "Sharp's Motion"), and contends that the Plaintiff, "having failed to allege facts to support his threadbare assertion that Deputy Sharp 'intruded' in any manner..." (*Motion to Dismiss*, p.4), Plaintiff has similarly failed to allege facts to support Plaintiff's claim that DeLoach similarly intruded upon Plaintiff's private quarters. In the very next sentence, DeLoach concedes that, "Any 'intrusion' that may have occurred took place 12 days before Deputy Sharp became involved." (*Motion to Dismiss*, p.4).

To recap Sharp's actions, by his own admission, Sharp "used Putnam County Sheriff's Office technical support to create an exact digital copy of the subject computer's hard drive for examination and inspection... At no point did Deputy Sharp examine or inspect the subject computer's actual hard drive... Deputy Sharp performed the following four actions on the copied hard drive:

- He reviewed an Excel file titled 'Google Chrome Passwords;'

- He reviewed an image file titled 'Google Chrome Screen capture;'

- He searched for image files that could be pornographic;

- He examined the event logs in the Windows operating system to anything that would indicate illegal access." (*Sharp's Motion*, p.2-3).

The fact that Sharp examined a copied hard drive rather than the subject computer's hard drive is a distinction of no consequence, but for the fact that in so copying the drive, Sharp created a duplicate of Plaintiff's sensitive information and doubled the potential for intrusion in Plaintiff's private digital activity. Now, rather than there being one extraneous copy of Plaintiff's sensitive online passwords in hands other than Plaintiff's own, there were two.

That fact aside, DeLoach, like Sharp, appears to consider the 'intrusion' at issue in Plaintiff's claim to be the <u>creation</u> of the files Sharp reviewed, placing heavy emphasis on the fact that, "The files Deputy sharp reviewed... were created approximately <u>12 days before</u> the City asked Deputy Sharp to perform a forensic analysis." (*Sharp's Motion*, p.3). The creation of the files is not the most salient intrusion

at issue in Plaintiff claim – rather, it is the possession, and more importantly, the <u>reviewal</u> of the files themselves, which undisputedly possessed sensitive information relative to Plaintiff's online activities, including his private online passwords.

Thus, Sharp's assertion that, "[he] reviewed the Excel and image files without having access to Plaintiff's online Google Account," (*Sharp's Motion*, p.3) is simply untrue, for if Sharp had possession of Plaintiff's private passwords, which included the password to his Google Account – and by his own admission he did – then he absolutely had access to Plaintiff's online Google Account without Plaintiff's knowledge or authorization. Thus, the possession and review of a file containing Plaintiff's private online passwords – irrespective of whether said passwords were, in fact, used by Sharp or DeLoach – is an invasion of Plaintiff's privacy and an intrusion into Plaintiff's digital quarters. It should be noted as well that the article from the Palatka Daily News (hereinafter, the "PDN Article") annexed to Plaintiff's Complaint as Exhibit "B" makes explicit reference to the sheriff's office discussing "an open Google account" (Ex. "B" at p.2) – Plaintiff's – which again confirms DeLoach's access thereto.

Additionally, Sharp contends that, "[he] never reviewed an internet browser history." Simultaneously he states that, "[he] never visited *any of the websites listed* in the 'Google Chrome Passwords' file." (*Sharp's Motion*, p.3) (emphasis added). This list of websites itself constitutes a part of Plaintiff's internet browser history as it consisted of a list of websites to which Plaintiff had passwords – ergo, they were sites that Plaintiff visited. This list of websites alone was clearly not information Plaintiff

intended anyone but he to be privy to, and is again, an invasion of Plaintiff's privacy and an intrusion into Plaintiff's digital quarters.

Similarly, while again contending that he never reviewed a formal internet browser history, and stating that he, "never even opened a Google Chrome browser during his analysis," Sharp simultaneously admits that he reviewed a Google Chrome screen capture of Plaintiff's online activity. (*Sharp's Motion*, p.3). The Google Chrome screen capture would – like the list of websites in the Excel file – contain a URL to a website that Plaintiff visited and would likely include as well the time and date from the computer's clock indicating when the screenshot was captured. This information itself is a constituent part of Plaintiff's browser history and is, again, clearly not information Plaintiff intended anyone but he to be privy to. Thus, the review of the screen capture is another invasion of Plaintiff's privacy and an intrusion into Plaintiff's digital quarters.

Additionally, Putnam County Sheriff's Office employee, spokeswoman, Allison Waters-Merritt, is paraphrased in the PDN Article as follows, "Sheriff's office spokeswoman Allison Waters-Merritt said even if the sites were accessed at home, the links still showed up on city computers..." and further, she is directly quoted as saying, "These are not safe sites." (Ex. "B" at p.2). These statements by Waters-Merritt, who herself represents the sheriff's office, and thus, Sheriff DeLoach, further evidences the fact that Sheriff DeLoach possessed knowledge of Plaintiff's browser history, despite Sharp's claims of not having accessed same.

All of these intrusions into Plaintiff's digital privacy, albeit performed by Deputy Sharp, were performed at the request of, and under the authorization and supervision of, Defendant DeLoach in his capacity as Sheriff of Putnam County, Florida. Is Plaintiff merely supposed to accept DeLoach's flat assertion that, "[he] was not personally involved in any of the events referenced in Plaintiff's Complaint..."? (*Motion to Dismiss*, p.1). It would be wholly unjust to dismiss Plaintiff's claim for intrusion, when there are numerous clear examples of same, based solely on DeLoach's simple claim that he had no involvement, and without Plaintiff being afforded the opportunity to tease out the true level of involvement – whether personally, or through direction or supervision – of Defendant DeLoach through discovery, and particularly, through depositions.

In sum, Plaintiff has certainly made a *prima facie* showing of Defendant DeLoach "physically or electronically intruding into [Plaintiff]'s private quarters" à la Ginsberg, *supra.*, at least sufficient to withstand the instant Motion to Dismiss, and now Plaintiff must be afforded the opportunity to bear out additional facts which further support Plaintiff's claim through discovery.

**Count II – Tortious Invasion of Privacy – Public Disclosure of Private Facts**

"Under [invasions of privacy based upon the public disclosure of private facts], '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" Hunstein v. Preferred Collection and Management Services,

Inc., 17 F.4th 1016, 1023, (11th Cir. Oct. 28, 2021) (*citing* Restatement (Second) of Torts § 652D (1977)).

As Defendant DeLoach in his Motion to Dismiss only disputes his publication of the information at issue and does not contest (a) whether same would be highly offensive to a reasonable person, and nor (b) whether same is not of legitimate concern to the public, these elements need not be addressed here.

Thus, addressing this publicity requirement, it is clear given the facts underlying this matter, that following the April 2021 forensic audit of the computer formerly utilized by Plaintiff, the contents of Plaintiff's private online browser history – if not the browser history itself – were released to the public, at least in part, by Defendant DeLoach.

DeLoach contends that, "Plaintiff's entire 'publication' claim appears to be based on some variation of the principle of *res ipsa loquitur* – namely, that because a news reporter was able to report on Plaintiff's internet use, an employee of the Sheriff's Office must have released the information," and further, that, "This argument fails, as it does not account for the possibility that someone other than a Sheriff's Office employee provided the news reporter with information regarding Plaintiff's internet use." (*Motion to Dismiss*, p.5). These assertions by DeLoach are entirely disingenuous.

It is public record that it was the Putnam County Sheriff's Office and the employees thereof, acting pursuant to Sheriff DeLoach's authority and direction, that provided the press with information regarding Plaintiff's private internet use. The article from the Palatka Daily News annexed to Plaintiff's Complaint as Exhibit "B"

states explicitly that the highly sensitive information discussed in the article, and which is the subject of Plaintiff's claims, was obtained by the press from a "sheriff's office report" from the Putnam County Sheriff's Office, and further, names explicitly – and even quotes numerous times – a Putnam County Sheriff's Office employee, spokeswoman, Allison Waters-Merritt.

As stated in the article, "The sheriff's office report did not find any evidence of illegal activities involving Myer's computer that Peterson, whom Myers defeated in the November general election, used during his time in office." (Ex. "B" at p.2). Given that, there was then no need to release the report to the press at all, and even bring the investigation to the press's attention. Nonetheless, DeLoach authorized a report be released to the press, and authorized his office spokeswoman to talk with the press about Plaintiff's private online activities, which by that point they knew were perfectly innocuous – which was almost assuredly a politically motivated move.

Be that as it may, and despite the foregoing which plainly demonstrates that the press was provided with a report of Plaintiff's online activities from none other than the Sheriff's Office itself, DeLoach's contention that Plaintiff failed to consider the possibility that *someone* other than a Sheriff's Office employee provided the news reporter with information regarding Plaintiff's internet use is troubling. If the Sheriff's Office were to be conducting an active investigation into Plaintiff's internet activities and intruding upon Plaintiff's privacy as Plaintiff alleges – and it is undisputed such an investigation was taking place – then who other than Sheriff's Office would be in a possession of such information as that obtained by the press? Surely, Defendant

DeLoach is not suggesting that the security of his office has been compromised and that the information was leaked to the public without his knowledge and approval. No, it is quite clear from the publicly available facts as reported in the PDN article that the highly sensitive information regarding Plaintiff's online activities were released deliberately by the Putnam County Sheriff's Office, and thus, at Sheriff DeLoach's authorization and direction.

Therefore, Plaintiff has unequivocally made a *prima facie* showing of Defendant DeLoach's public disclosure of the private facts regarding Plaintiff's online activities, at least sufficient to withstand the instant Motion to Dismiss, and now Plaintiff must be afforded the opportunity to bear out additional facts which further support Plaintiff's claim through discovery.

**Count III – Tortious Invasion of Privacy – False Light**

Defendant DeLoach contends that, "Plaintiff's false light claim fails because Florida law does not recognize such a cause of action," referencing the seminal false light case from the Supreme Court of Florida, Jews for Jesus, Inc. v. Rapp, 997 So.2d, 1098 (Fla. 2008). Factually, this is a true statement – generally, Florida does not *presently* recognize false light invasion of privacy as its own tort. However, prior to the Jews for Jesus case in 2008, Florida most certainly did recognize false light invasion of privacy and the Middle District opined on numerous cases involving same. *See*, Tyne ex rel. Tyne v. Time Warner Entertainment Co., L.P., 204 F.Supp.2d 1338 (M.D. Fla. May 9, 2002), *see also*, Harris v. District Bd. of Trustees of Polk Community College, 9 F.Supp.2d 1319 (M.D. Fla. June 18, 1998).

Even the opinion of the Court in <u>Jews for Jesus</u> appears to leave open the possibility that there are certain factual circumstances in which a false light cause of action could possibly be recognized in Florida once again:

> On the one hand, recognizing the tort would apparently not open the proverbial floodgates to false light claims. Yet, the fact that we can find no judgment that has been upheld by an appellate court solely on the basis of false light leads us to conclude that the absence of false light does not create any significant void in the law. Indeed, there are relatively few scenarios where defamation is inadequate and false light provides a potential for relief. The Restatement discusses one such example:

> A is a war hero, distinguished for bravery in a famous battle. B makes and exhibits a motion picture concerning A's life, in which he inserts a detailed narrative of a fictitious private life attributed to A, including a non-existent romance with a girl. B knows this matter to be false. Although A is not defamed by the motion picture, B is subject to liability to him for invasion of privacy. (internal citation omitted).

> Another illustration may be the portrayal of the plaintiff as suffering from a terminal illness, which is "not necessarily defamatory, but [is] potentially highly offensive." *Id.* (citing, *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 902-03 (Colo. 2002).

> <u>Id.</u> at 1113.

The Court in <u>Jews for Jesus</u> recognized that, "to the extent that there may be a subset of cases where there is a wrong without a remedy… the benefit of recognizing the tort [of false light], which offers a distinct remedy in relatively few unique situations, is outweighed by the danger of unreasonably impeding constitutionally protected speech," and thus, the Supreme Court of Florida denied to recognize the cause of action any longer. <u>Id.</u> at 1114.

Even so, the Court prefaced its analysis of false light by plainly stating that, "Because there is no statutory prohibition against recognizing the tort of false light [in Florida], and because our case law concerning the other categories of invasion of privacy may seem to support recognition of false light, we next review the main policy arguments against its adoption," chief among them being the First Amendment concern regarding constitutionally protected speech, particularly in context to the press. Id. at 1105.

This matter is potentially among the small subset of cases where false light can provide a remedy where one may not otherwise exist under a defamation cause of action, should this court find that defamation is inapplicable here. Specifically, the tort could provide Plaintiff a remedy if this court declines to recognize defamation by implication as a valid variation of defamation. This is because the First Amendment concern regarding impeding constitutionally protected speech and freedom of the press is one which is not implicated here, given that Plaintiff's false light claim is not raised as against the Palatka Daily News, for example, but against the individuals who provided the press with the facts which placed Plaintiff in a false light.

Thus, although Defendant DeLoach is correct that Florida does not generally recognize false light invasion of privacy as its own tort any longer, following the Jews for Jesus decision, the facts of this matter may very well be among the "relatively few unique situations" where the tort should be recognized, alternatively to Plaintiff's defamation if said claim fails. Id. at 1114.

**Count IV – Defamation**

With respect to Plaintiff's claim of defamation, Defendant DeLoach makes three primary contentions: (1) that Defendant DeLoach did not make a publication; (2) that Plaintiff was not defamed as "nothing in Deputy Sharp's report was false" (*Motion to Dismiss*, p.6); and (3) that even if Plaintiff establishes the elements of a defamation claim against DeLoach, DeLoach is absolutely immune from suit for defamation as a public official making statements within the scope of his duties, citing, Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2d DCA 1997).

Addressing these contentions in turn, it is quite clear that Defendant DeLoach did, in fact, make a publication as the Putnam County Sheriff's Office, under Sheriff DeLoach's authority and at his direction, released the afore-referenced "sheriff's report" to the Palatka Daily News.

Regarding DeLoach's second contention that nothing contained in the sheriff's report was, in fact, false, Florida law "already recognizes the concept that literally true statements can be defamatory where they create a false impression." This variation is known as defamation by implication and has a longstanding history in defamation law. Jews for Jesus, *supra.* 997 So.2d at 1106.

In articulating the contours of a defamation by implication claim, the Supreme Court of Florida opined in Jews for Jesus, *supra.*:

> "Defamation by implication arises, not from what is stated, but from what is implied when a defendant '(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the

defamatory implication ....'" (citing, *Stevens v. Iowa Newspapers, Inc.,* 728 N.W.2d 823, 827 (Iowa 2007), quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp.1988)); *Mohr v. Grant,* 153 Wash.2d 812, 108 P.3d 768, 774–76 (2005) (same); *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C.2000) ("[B]ecause the Constitution provides a sanctuary for truth, .... [t]he [defamatory] language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." (quoting *Chapin v. Knight–Ridder*, 993 F.2d 1087, 1092–93 (4th Cir.1993))); *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 829–30 (1995) ("'Defamation by implication' is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements."); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (recognizing that defamation can arise where a statement of opinion *reasonably implies* false and defamatory facts)...

Id. at 1106-07.

While it may very well be true, as Defendant DeLoach contends, that nothing contained in the sheriff's report was false, Defendant DeLoach knew, or should have known, that his publication of the report to the media, as well as the statements made by his office's spokeswoman, Allison Waters-Merritt, who is effectively speaking for Defendant DeLoach, juxtaposed facts so as to imply a defamatory connection between them. Consider, for example, the following passage from the PDN article:

Sheriff's office spokeswoman Allison Waters-Merritt said even if the sites were accessed at home, the links still showed up on city computers, which are government property. And the adult websites could have put viruses on all Crescent City computers, she said.

> "These are not safe sites," Waters-Merritt said. "And if your computer is linked to your work computer, what are you potentially exposing the rest of the city to?"
>
> (Ex. "B", *Complaint*).

Again, if by the time of Sheriff DeLoach's publication of the report to the press and by the time of Ms. Merritt's comments thereon as cited above, it was already known to DeLoach that Plaintiff had done nothing illegal, (1) why release the report to the press at all?; (2) why speculate as to whether Plaintiff's activities put viruses on the city's computers when there is nothing to suggest that is the case?; and (3) why engage in "what-aboutism" clearly intended only to instill unfounded fear in the public and disparage Plaintiff?

The answer, once again, is that Defendant DeLoach intended, through his publication of the sheriff's report, and through the manner in which he knew his spokeswoman would comment upon said report to the press, to create false suggestions, impressions, and implications of Plaintiff's conduct and character to the public, smearing him, likely so as to create political capital with Defendant Mayor Michele Myers, and even a cursory read of the PDN article (Ex. "B") illustrates that DeLoach was successful in portraying Plaintiff to the press, and subsequently to the public, in just such a manner.

The question, then, is whether DeLoach may be found liable for defaming Plaintiff by implication given that he is a public official. "The controlling factor in deciding whether a public employee is absolutely immune from actions for defamation

is whether the communication was within the scope of the officer's duties." <u>Quintero v. Diaz</u>, 300 So.3d 288, 291 (Fla. 3d DCA 2020).

"[T]he act of issuing a press release concerning the official duties of the sheriff [is] 'within the scope' of the office of the sheriff." <u>Crowder v. Barbati</u>, 987 So.2d 166, 168 (Fla. 4th DCA 2008). In looking at this quote in its full context, the District Court of Appeal in <u>Crowder</u>, clearly ties this conclusion to the purpose for which the press release was released: "In the instant case, the act of issuing a press release concerning the official duties of the sheriff [is] 'within the scope' of the office of the sheriff. The purpose of the release was to induce delinquent parents to pay their child support, a proper governmental function." <u>Id.</u>

In a similar case, <u>Mueller v. The Florida Bar</u>, 390 So.2d 449 (Fla. 4th DCA 1980), it was held that, "immunity applied to a press release issued by the Florida Bar about a disbarred attorney; [the court] concluded that the Bar counsel had acted within the scope of his authority to advise the public of the attorney's disbarment, so that 'dissemination of the press release *was in the interest of the public good and therefore* absolutely privileged.'" <u>Crowder</u>, *supra.* at 168 (*citing*, <u>Muller</u>, *supra.* at 452).

These cases make clear that this "absolute immunity" with respect to defamation claims arising from press releases of public officials is only absolute when the dissemination of the press release is in the interest of a beneficial public interest or in the furtherance of a proper governmental function. However, as DeLoach's publication was, as alleged earlier, *intended* to create false suggestions, impressions, and implications of Plaintiff's conduct and character to the public, and was, itself,

politically motivated, it neither furthered a proper governmental function, nor served a beneficial public interest, and thus, was not "within the scope" of DeLoach's duties. Therefore, DeLoach, under the line of case law cited above, is not *absolutely* immune from suit for a claim of defamation and enjoys no such immunity in the present matter.

**Count IX – Intentional Infliction of Emotional Distress**

Under Florida law the requisite level of outrageous and unacceptable conduct required to support a cause of action for intrusion-type invasion of privacy "is the same as that for the tort of intentional infliction of emotional distress." Liberti v. Walt Disney World Co., 912 F.Supp. 1494, 1506 (M.D. Fla. Sept. 8, 1995) (*citing*, Stoddard v. Wohlfahrt, 573 So.2d 1060, 1062 (Fla. 5th DCA)). It stands to reason, then, that an intrusion which is sufficiently outrageous and unacceptable can serve as the basis for a claim of intentional infliction of emotional distress.

Under Florida law, whether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of intentional infliction of emotional distress is a *matter of law for the court*, not a question of fact. *See*, Golden v. Complete Holdings, Inc., 818 F.Supp. 1495, 1499-1500 (M.D. Fla. Apr. 8, 1993).

Given the unique facts of this matter, Plaintiff could find no published opinion within the 11th Circuit where the court was asked to evaluate conduct similar to that of Defendant DeLoach's herein, however, a slip opinion from the Southern District of Florida is at least illustrative.

In the matter of Eby v. Levine, 2021 WL 6926421 (S.D. Fla. Oct. 18, 2021), Eby and Levine entered an agreement which, among other things, permitted Levine

to utilize an apartment owned by Eby for a number of days each month. Eby maintained a private office within the apartment but given the layout of the apartment – with the private office located between the bedroom and the bathroom – Levine was permitted to pass through Eby's private office only insofar as was required for him to utilize the bathroom. Eby maintained a surveillance camera within the private office, which, on the occasion at issue in the case, recorded Levine accessing Eby's private files. Eby sued Levine for breach of their agreement in connection with Levine's intrusion, and Levine countersued for invasion of privacy in connection with Eby's surveillance of him.

The Southern District concluded that because "Levine had no legitimate expectation of privacy" within the office area, Eby's conduct in surveilling him did not rise to the level of conduct "so highly outrageous in character, and so extreme in degree, to go beyond all possible bounds of decency." Id.

Given again that the requisite level of outrageous and unacceptable conduct required to support a cause of action for invasion of privacy as in Eby "is the same as that for the tort of intentional infliction of emotional distress", Eby makes clear that sufficiently outrageous and unacceptable conduct so as to support a claim for intentional infliction of emotional distress can arise from intrusions into quarters where one does have a legitimate expectation of privacy.

Here, Plaintiff's intentional infliction of emotional damages claim is intrinsically linked to his intrusion claim. Although the computer at issue in this matter belonged to the city, Plaintiff's private online accounts, especially those which were

password-protected, such as his Google Account, were most certainly private online quarters to which Plaintiff had a legitimate expectation of privacy. Defendant DeLoach's unauthorized and warrantless search into Plaintiff's private online quarters, then, given, not only the search itself, but the duplication of Plaintiff's private online information, and then the dissemination of said information to the press, is conduct which must be found to be so highly outrageous in character, and so extreme in degree, so as to go beyond all possible bounds of decency. This is especially so given that the intrusion was not perpetrated by a private actor, but by a governmental actor.

**Count X – Negligence**

Plaintiff has satisfied his burden of pleading a *prima facie* claim for negligence, alleging all the required elements thereof, and pleading factual allegations to support them. The element which DeLoach appears to contest is Plaintiff's recitation of DeLoach's duty.

Specifically, Plaintiff alleged in his Complaint that, "DeLoach... owed Plaintiff a duty as [a] governmental actor[] to refrain from infringing on Plaintiff's constitutionally-protected rights, privileges, or immunities, for example, by seeking and obtaining a warrant before conducting a search into and seizure of Plaintiff's private online content and then releasing the findings thereof to the public." (*Complaint*, ¶ 261).

The only rationale Defendant DeLoach provides for why Plaintiff's negligence claim should fail is that, "The only 'duty' identified by Plaintiff in support of his negligence claim" is that cited above, and "As noted in [Deputy Sharp's] Motion to

Dismiss, Deputy Sharp did not violate any constitutionally protected right of Plaintiff." (*Motion to Dismiss*, p.8). The merits of Deputy Sharp's Motion to Dismiss, however, were never assessed by this Court given that Deputy Sharp was voluntarily dismissed from this matter, and the reasoning behind that dismissal pertains to Sharp's specific actions as were taken in the scope of his employment and supervision of DeLoach. DeLoach's involvement in this case was not limited to the actions of Sharp. Thus, this statement by DeLoach is wholly conclusory and unfounded.

It is well-settled law that, "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained... a warrant must generally be secured." Kentucky v. King, 563 U.S. 452, 459 (2011), and further, that, "[a]ll searches and seizures must be reasonable... [and] a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." Id.

Thus, Plaintiff has properly identified an applicable duty of Defendant DeLoach sufficient to maintain Plaintiff's negligence claim.

## II.    PLAINTIFF'S FEDERAL LAW CLAIMS

### Count V – Unreasonable Search and Seizure (§ 1983)

Based upon the reasons articulated and the authorities cited in Plaintiff's Complaint at paragraphs 181 through 197, Plaintiff had a reasonable expectation of privacy with respect to his private online quarters, even despite the fact that said quarters were accessed from a computer owned by the city. Merely accessing said quarters from a city computer does not obviate their private nature.

A simple analogy makes this obvious: A man goes to his public library, and while using a library computer, accesses his private, password-protected email account. Before leaving the library, the man forgets to sign-out of his email account. Surely, neither the fact that (1) the computer was owned by the public library and not the man, and (2) that the man forgot to sign out of his email account, give the public library free rein to scour through the man's private emails.

The same principle applies here. Simply because Plaintiff utilized a city-owned computer and neglected to sign out of his private accounts prior to returning possession of the computer to the city did not convert something which is private – the contents of Plaintiff's personal online accounts – into something which is public, and to which, governmental actors such as DeLoach may have free and unfettered access to in the absence of a warrant.

Regarding DeLoach's contention that Plaintiff's claim of unreasonable search and seizure is premised on a theory of respondent superior alone – in other words that DeLoach is liable for the actions of Deputy Sharp – Plaintiff makes no such claim. No where in Plaintiff's Complaint does Plaintiff allege that Sharp alone accessed Plaintiff's private online quarters. In fact, absent the opportunity to engage in meaningful discovery, it is very possible that DeLoach directly participated in the warrantless search of Plaintiff's private online quarters.

Similarly, absent the opportunity to engage in meaningful discovery, Plaintiff is without sufficient information to present "evidence of a policy, custom, practice, or procedure that provided the moving force behind the alleged constitutional

allegation." *See* Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694-95 (1978). Plaintiff must, therefore, be permitted to engage in said discovery so as to flesh out fully basis for Plaintiff's unreasonable search and seizure claim, and further, be permitted to amend Plaintiff's Complaint to the extent necessary to incorporate those findings to which Plaintiff would not otherwise have access but-for discovery.

**Count VIII – Violations of the Stored Communications Act**

In his brief argument for why Plaintiff's claim under the Stored Communications Act must fail, Defendant DeLoach provides *absolutely no argument* for why this is so. Instead, he simply states, "Deputy Sharp did not access a facility through which an electronic communication service is provided. Nor did he obtain access to a wire or electronic communication." (*Motion to Dismiss*, p.11). In so stating, DeLoach wholly assumes the premise, and asks the court to simply believe that this is the case.

In Plaintiff's Complaint, Plaintiff articulated quite clearly and in sufficient detail just how Deputy Sharp and Sheriff DeLoach accessed a facility through which an electronic communication service is provided, and further, had access to a wire or electronic communication. For the sake of brevity, Plaintiff will not restate these arguments at length here, but respectfully asks the Court to refer to Plaintiff's Complaint at paragraphs 229 through 246.

**III. <u>CONCLUSION</u>**

In sum, in his instant Motion to Dismiss Plaintiff's Complaint, Defendant DeLoach repeatedly relies upon Defendant Sharp's Motion to Dismiss, however,

given again that the Motion was never heard by this Court and, therefore, the merits of the arguments unpinning said Motion were never assessed, DeLoach's arguments in reliance thereon must necessarily fail.

For the reasons stated above, and given the authorities cited, it is clear that Plaintiff has satisfied his burden in establishing *prima facie* claims with respect to all of the causes of action raised in Plaintiff's Complaint.  Further, to the extent that this Court disagrees, and finds that Plaintiff has failed to state a claim for which relief may be granted with respect to any Count of Plaintiff's Complaint, Plaintiff respectfully requests that the Court nonetheless permit said claims to stand such that Plaintiff may engage in meaningful discovery to uncover facts which are supportive of Plaintiff's claims, and to which Plaintiff would not otherwise have access, after which time Plaintiff will then seek leave to amend his Complaint to more fully satisfy Plaintiff's burden. Dismissal with prejudice, as Defendant DeLoach seeks, would be wholly premature and improper.

WHEREFORE, the Plaintiff respectfully requests that Defendant DeLoach's instant Motion to Dismiss Plaintiff's Complaint be denied in its entirety, and for any and all other relief as this Court sees fit in the interests of justice.

Respectfully submitted,

Dated: May 20, 2022

**ROOK ELIZABETH RINGER, ESQUIRE**
FL State Bar No. 1015698
**LENTO LAW GROUP, P.A.**
222 San Marco Ave., Ste. C

St. Augustine, Florida 32084
(T) (904) 602-9400
(F) (904) 299-5400
reringer@lentolawgroup.com
*Attorney for Plaintiff, Brett Peterson*

## CERTIFICATE OF SERVICE

I, Rook E. Ringer, Esq., **HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent via the Court's CM/ECF system to counsel of record on this 20th day of May, 2022.

_____
**ROOK ELIZABETH RINGER, ESQUIRE**