UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRETT PETERSON, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 3-22-CV-90 |
| ) | |
| v. ) | |
| ) | |
| NORTHEAST FLORIDA ) | |
| NEWSPAPERS, LLC, d/b/a ) | |
| PALATKA DAILY NEWS, a ) | |
| Georgia business entity, SARAH ) | |
| CAVACINI,  et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS NORTHEAST FLORIDA NEWSPAPERS, LLC d/b/a PALATKA DAILY NEWS AND SARAH CAVACINI**

Defendants, Northeast Florida Newspapers, LLC d/b/a Palatka Daily News and its reporter Sarah Cavacini (jointly referred to as "the Newspaper), submit this Memorandum in Support of their Motion for Summary Judgment.

### I. INTRODUCTION AND PROCEDURAL HISTORY[1]

This action arises from an investigation of a suspected security breach of a Crescent City-owned computer. ECF 1 *(Complaint),* ¶ 28, 29, 35; ECF 1-1. On April 5, 2021, City officials, including Mayor Myers, met with investigators at the Putnam County Sheriff's Office and "relayed their concerns that confidential information was being accessed off the Mayor's work computer and then leaked." ECF 1-1, p. 3.

The Putnam County Sheriff's Office investigated and generated a report of its findings.  1 ECF 1-1. The investigation concluded that no evidence of illegal remote

---

[1] The first three paragraphs of this section have been borrowed from the Motion to Dismiss of Crescent City and Michelle Myers.  Dock. #20, 1-3).

access or other illegal activities involving the computer had occurred. *Id.* The investigator concluded that the previous mayor, Brett Peterson, had never logged out of his Google account on the City's computer. In the review of an image file dated 3/24/2021, located on the computer, the investigator noted a link to adult websites and "a link to an unidentified Gmail account" and concluded that such was "not indicative of any unauthorized computer intrusion." *Id.* Although the image file "contained multiple websites and accounts associated with adult sex sites" the investigator's search into the computer's hard drive reflected "no pornography or images of a sexual nature discovered." *Id.* at 4. At the conclusion of the investigation, the City's computer was returned to the City and, by law, the report generated was public record. Fla. Stats. §119.01(1).

Plaintiff, former Mayor Brett Peterson admits that he logged onto the city owned computer "assigned to the mayor's office" using his Google login identity and password and failed to log out of the City's computer after leaving office in November 2021. ECF 1, ¶28, 105. Although it was Peterson's failure to log out of his Google account on the City's computer that, in part, led to the security questions and investigation, he sued his successor in office personally and alleges that she should have "log[ged] out of [his] Google Account." *Id.* ¶¶31, 68, 69.

<u>Against the Newspaper Defendants, Peterson alleges as follows:</u>

    Count II -    Tortious Invasion of Privacy - Public Disclosure of Private Facts;

    Court III -    Tortious Invasion of Privacy - False Light;
    Count IV -    Defamation;

    County IX -    Intentional Infliction of Emotional Distress;

2

      Count X - Negligence.

The Newspaper Defendants shall show in this Memorandum why Plaintiff has no sustainable claim against them under these Counts as alleged.

## II. ACTIVITIES OF THE NEWSPAPER

The Complaint against the Newspaper concerns a news article dated May 11, 2021 that is Exhibit B to Plaintiff's Complaint.  Doc. #1, and a copy is attached to the Summary Judgment Appendix.  (App.4).[2]  The article covers the discovery and investigation of material on the City computer used by the former Mayor of Crescent City, Plaintiff Peterson.

Reporter Sarah Cavacini of the *Palatka Daily News* was the author of the May 11, 2021 article.  The Newspaper's office learned of a Sheriff's investigation concerning computer security at the City of Crescent City, and Ms. Cavacini made a records request to the Putnam County Sheriff's Office.  The Sheriff's Office emailed her the incident report dated April 8, 2021 that is attached as Exhibit A to Plaintiff's Complaint.  Ms. Cavacini also made inquiries about the incident report by telephone with the City Manager Phil Leery, Mayor Michelle Myers, and Allison Waters-Merritt of the Sheriff's Office.  She also interviewed the former Crescent City Mayor, Plaintiff Peterson.  (App. 1, p. 2, ¶4).

Ms. Cavacini also requested and received from the City a printed list of the websites that were found on the City computer formerly used by Mr. Peterson.  She checked those sites and found that ten of them were adult content sites.  (App. 1, p. 2, ¶6.

---

[2]    "App." refers to the evidentiary Appendix supporting this summary judgment motion.

3

Relying on those sources, Ms. Cavacini wrote the news article in question. She has testified in her affidavit that there was nothing in the article that she "knew or suspected was factually false." The only statements of fact not based on the incident report are those statements attributed in the article to the persons who made them, and the statement in the second graph of the story that there were ten adult websites. The identity of those websites was obtained by Ms. Cavacini personally reviewing the sites and finding ten of those to contain adult content. (App. 1, p. 2, ¶6).

In the fifth graph on page 2 of the article in question, Ms. Cavacini personally confirmed that the site "ismygirl.com" showed Mr. Peterson's email address was used as a username. Ms. Cavacini confirmed that from the spreadsheet provided to her from the City. (App. 1, p. 2, ¶7).

In researching and writing the article, Ms. Cavacini states that her intent was to inform the public of a matter of legitimate public interest and concern. She states that she had no intent to cause any harm to Mr. Peterson. (App. 1, p. 3, ¶8).

Another newspaper employee who had a role in the publication of the article was Wayne Smith. At the time of the article, he was the Editor of the *Palatka Daily News*. He too recalled that the newspaper received a report that the Putnam County Sheriff's Office had investigated a matter involving computer security for the City of Crescent City. He recalled that Ms. Cavacini obtained a copy of the Sheriff's incident report and that from the City she obtained a printout of websites found on a computer being used by the former Mayor - Plaintiff Peterson. (App. 2, p. 2, ¶4). Editor Smith also affirms that Ms. Cavacini interviewed the Crescent City Manager, its current Mayor, Ms. Waters-Merritt of the

4

Sheriff's Office, and also former Mayor Brett Peterson. For some of those interviews Editor Smith was listening in the room when the calls were made. (App. 2, p. 2, ¶5).

When Ms. Cavacini finished drafting the article, Mr. Smith reviewed it in his capacity as Editor. From the facts that he had learned concerning Ms. Cavacini's investigation, he saw nothing in the article that caused him to believe that any of the facts stated were incorrect. From his interaction with Ms. Cavacini, he was convinced that she did not know or suspect that anything stated in the article was factually false. He did not either. (App. 2, p. 3, ¶6).

The last employee of the newspaper who had a role in the publishing of the article at issue was Michael Leonard. He had been Publisher of the *Palatka Daily News* since 2018. (App. 3, p. 1, ¶3). After the article was drafted and edited, Ms. Cavacini and Mr. Smith took it to him to review. It was the policy of the paper that he be given an opportunity to review any news article that was potentially controversial regarding a local personality or business. The article was provided to him to review. He asked Ms. Cavacini and Mr. Smith whether the facts in the article were correct, and they confirmed they were. At that point Mr. Leonard gave them the go-ahead to publish the article. (App. 3, p. 2, ¶8).

Mr. Leonard judged the article to be a fair and straightforward presentation of facts reported from those sources. There was nothing in the text of the article or in the background information that caused Mr. Leonard to believe that anyone at the newspaper knew of any false facts in the article or that they suspected that facts stated in the article were incorrect. (App. 3, p. 3, ¶9). As with the other Newspaper employees that had a role in the article, Mr. Leonard did not have any intent to cause damage to Mr. Peterson. (App. 3, p. 3, ¶10).

The determination of whether public interest or the lack of extreme or outrageous statements overrules Plaintiff's claim for invasion of privacy is a question of law for the Court. The Eleventh Circuit dealt with a similar state law construct regarding invasion of privacy and the Eleventh Circuit held that such an issue is a question of law. *Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 812 F.3d 824, 830 (11th Cir. 2016). See also, *Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, n. 7 (1993) (determination of extreme or outrageous conduct is "in the first instance for the court to decide as a matter of law." )

Thus, the Newspaper moves on these grounds for the Court to determine that the content of its article did not infringe on Plaintiff's right of privacy.

**Count II: <u>The Newspaper has no liability for the tort of invading privacy by publishing private facts.</u>**

In a case asserting liability from a newspaper article like the one at issue in this case, whether the former Mayor committed misconduct and whether City-owned computers were misused, the Plaintiff faces a "formidable obstacle" to a privacy claim. *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). This is because the Supreme Court of Florida recognized that "the right of the general public to the dissemination of news and information must be protected and conserved….The right of privacy does not prohibit the publication of matter which is legitimate public or general interest….[T]ruth may be spoken, written or printed about all matters of a public nature as well as matters of a private nature in which the public has a legitimate interest." *Id.* at 1374, quoting *Cason v. Baskin*, 20 So. 2d. 243, 251 (Fla., 1944).

Pursuant to these principles, the Supreme Court held as a matter of law that a newspaper did not commit the privacy tort of disclosure of private facts when it published

6

the details of a trial concerning child abuse. It was a matter of "legitimate public concern." 549 So. 2d at 1379.

In addition, for the Plaintiff to prevail in a claim for disclosure of private facts, the facts disclosed must be "highly offensive to a reasonable person." 549 So. 2d 1377; *Spilfogel v. Fox Broad. Co.*, 433 Fed. Appx. 724, 725 (11th Cir. 2011). As the Court will determine from its review of the article at issue, it contains nothing that would be considered "highly offensive" to a reasonable person. Combining that with the legitimate public interest in the operation and investigation of the office of the Mayor of the City of Crescent City, Plaintiff has no claim for the tort of invasion of privacy.

**Count III: The Newspaper has no liability for a claim of false light invasion of privacy.**

This claim should be dismissed because Florida law does not recognize a false light tort for invasion of privacy. This is because the Florida courts have found that it is duplicative of existing causes of action, particularly defamation. *Lehtinen v. Straub*, 3 So. 3d 1187 (Fla. 2009); *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008).

**Count III:   Plaintiff, a public official, cannot meet the strict requirements to sustain a claim for defamation.**

Plaintiff served as the Mayor of Crescent City, and the article at issue was written shortly after he lost a bid for reelection and left office. As such, he was a public official for purposes of his libel claim when the article was published.

The article at issue followed within just months[3] from when Peterson's service as Mayor of Crescent City ended. Such a short passage of time between when he left office and when the article at issue was published does not change his status as a public official

---

[3]   Complaint, ¶ 49; and Article of November 5, 2020. (App. 4).

7

for purposes of libel law. In *Rosenblatt v. Baer*, 383 U.S. 75, n. 14 (1966), the Court stated that it was not "seriously contended, and could not be, that the fact respondent no longer [served in his public official capacity] has decisional significance here." The Court pointed out that theoretically one could be so far removed from public service that he "no longer has the interest necessary to justify the *New York Times* rule." But where "lively public interest" continued, so did the status as a public official."

A case that provides conclusive authority on this point is *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066 (5th Cir. 1987).[4] In *Zerangue*, two former police officers brought a defamation case and argued that their public official status had eroded over a period of years since they last served as policeman. The Court of Appeals stated:

> Zerangue and Carriere cite no cases holding that public official status erodes with the passage of time. Other courts have held that ex-public officials must prove that "actual malice" prompted speech concerning their in-office activities. *See, e.g., Rosenblatt v. Baer*, 383 U.S. 75, 87 n. 14 (1966); *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495 (3d Cir.), cert. denied, 439 U.S. 861 (1978); *Arnheiter v. Random House, Inc.*, 578 F.2d 804 (9th Cir. 1978), cert. denied, 444 U.S. 931 (1979). One court imposed the higher standard even though thirty years had passed since the plaintiff had left his official position. *Stripling v. Literary Guild of America, Inc., 636 F.2d 312, 5 Med.L.Rptr.1958 (W.D.Tex.1979). Id.* at 1069.

In the present case, the position of Mayor held by Peterson was of more consequence than that of just a city police officer, and the time between his last service as Mayor and the newspaper article was far less than the time involved in *Zerangue*. Thus, for purposes of bringing a case for defamation, Patterson remains a "public official" and must prove "actual malice" to recover. *Id.* at 1070.

---

[4] *Bonner v. Prichard*, 661 F.2d 1206, 1207 (5 Cir. 1981), makes this case still controlling in the Eleventh Circuit.

8

The exacting standard that Plaintiff must, but cannot meet, in this public official defamation claim has been summarized in several Eleventh Circuit cases. *Berisha v. Lawson* is one:

> Because [Plaintiff] is a public figure, he cannot prevail in this suit unless he shows, by clear and convincing evidence, that the defendants acted with actual malice toward him. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989). That is, he must be able to show—well beyond a preponderance of the evidence—that the defendants published a defamatory statement either with actual knowledge of its falsity or with a "high degree of awareness" of its "probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). It is a subjective test, which asks whether the publisher "in fact entertained serious doubts as to the truth of his publication." *Silvester*, 839 F.2d at 1498 (emphasis added) (internal quotation marks omitted); see also *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968) (standard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing"). Even an "extreme departure from professional [publishing] standards" does not necessarily rise to the level of actual malice. *Harte-Hanks*, 491 U.S. at 665.

*Berisha v. Lawson*, 973 F.3d 1304, 1323 (11th Cir. 2020).

Not only must Plaintiff provide evidence of actual malice, his showing must be by clear and convincing evidence. "Clear and convincing evidence" is evidence that "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established. *Klayman v. City Pages,* No. 5:13-cv-143-Oc-22PRL, 2015 U.S. Dist. LEXIS 49134 (M.D. Fla. Apr. 3, 2014), *quoting s. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*, 139 So. 3d 869, 872 (Fla. 2014); *see also Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 286 n.11, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990) (*quoting In re Jobes*, 108 N.J. 394, 529 A.2d 434, 441 (1987)).

9

Applying this stringent standard to the undisputed facts that no one at the Newspaper involved with the publication of the article knew or suspected that it contained anything factually false, Plaintiff cannot show that as a matter of law or fact that the his defamation claim is valid.[5]

**Count IX:    The Plaintiff has no VALID claim against the Newspaper that is for intentional infliction of emotional distress.**

It is the law in Florida that "a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repeating the same facts." *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992).  Plaintiff cannot sustain such an action by simply alleging that the alleged defamatory statements are "outrageous."  *Id.* at 70.  Moreover, the publication of the article alleged by Plaintiff would not in any event meet the standard to maintain a claim for intentional infliction of emotional distress.  Those elements included extreme and outrageous conduct, intent to cause or reckless disregard, severe emotional distress, and causation.  *Vernon v. Medical Management Assocs*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996).  Moreover, whether a claim has been stated is ordinarily a question of law to be resolved by the court.  *Id.* at 557.

For either of these reasons, no separate cause of action, or Plaintiff's allegations being insufficient to state a claim, summary judgment should be granted to the Newspaper on this Count.

---

[5]     While *Berisha* concerned a case brought by a public figure, the same constitutional law principles established by the Supreme Court apply for public officials.  *Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 773 (1986).

**Count X:** **The Newspaper is not liable to Plaintiff just because Plaintiff denominates his claim as one for "negligence."**

Adding the label of "negligence" to the defamation allegations he makes against the Newspaper does not make a sustainable claim. This matter was addressed recently in the case of *Spindler v. Lab'y Corp. of Am.*, 2022 U.S. Dist. LEXIS 38675 (S.D. Fla. 2022).

> The other form of non-economic damages sought in Counts II and III—reputational damages—is preempted by the presence of Plaintiff's *defamation* claims. Because Plaintiff's *negligence* claims and *defamation* claims seek recovery for the same reputational harm caused by the same defamatory statement (the false-positive PEth test results), the *negligence* claims are duplicative of the *defamation* claims. See *Jackson v. US Steel Corp., 763 F. App'x 805, 808 (11th Cir. 2019)* ("If [the plaintiff's *negligence* claim] relies on the defendants' duty not to *defame* [the plaintiff], it is duplicative of [the plaintiff's] *defamation* claims and preempted."); see also *Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892, 895 (2d Cir. 2012)* (affirming a district court's decision to dismiss the plaintiff's other tort claims as duplicative of his defamation claim when all of the alleged harms flowed from the same facts and reputational injury). This is so, as a matter of common law, because the elements of *negligence* are subsumed within the elements of *defamation*, see *infra* Discussion (II), and because the FAC does not articulate a valid theory for recovery under Counts II and III that is separate and distinct from its *defamation* theory. Accordingly, Plaintiff's *negligence* claims are barred and preempted insofar as they seek recovery for emotional and reputational harm, respectively.

*Id.* at *10-11. Thus, the Newspaper is entitled to summary judgment on this Count.

### III. CONCLUSION

As with most public officials who make claims against newspaper articles they find unflattering, the legal hurdles facing Mr. Peterson are insurmountable. Accordingly, these Newspaper Defendants pray that the Court grant them summary judgment.

Respectfully submitted this 23rd day of June, 2022.

|  |  |
|---|---|
|  | BROOKS C. RATHET<br>Florida Bar No. 0077658 |
| **BROMAGEN, RATHET,**<br>**KLEE & SMITH P.A.**<br>625 Atlantic Boulevard<br>Atlantic Beach, Florida 32233<br>P: (904) 242-0860<br>Brooks@bromagenlaw.com |  |
|  | DAVID E. HUDSON<br>Georgia Bar No. 374450 |
| **HULL BARRETT, P.C.**<br>Post Office Box 1564<br>Augusta, Georgia 30903-1564<br>P: (706) 722-4481<br>DHudson@hullbarrett.com | By: */s/ David E. Hudson*<br>     ATTORNEYS FOR DEFENDANT |

## **CERTIFICATE OF SERVICE**

I certify that the foregoing will be served on counsel through electronic notice sent by the EMF filing system of the Court:

Rook Elizabeth Ringer, Esq.
LENTO LAW GROUP, P.A.
222 San Marco Avenue, Suite C
St. Augustine, Florida  32084

Joseph D. Lento, Esq.
LENTO LAW GROUP
1500 Market Street - 12th Floor
East Tower
Philadelphia, Pennsylvania  19106

This 23rd day of June, 2022.

*/s/ David E. Hudson*
DAVID E. HUDSON