UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRETT PETERSON, individually, | Case No.: 3:22-cv-00090-TJC-PDB |
| Plaintiff, | |
| v. | |
| MICHELE MYERS, in her official capacity as Mayor of Crescent City, Florida, and in her individual capacity, *et al.,* | |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT NORTHEAST FLORIDA NEWSPAPERS, LLC D/B/A PALATKA DAILY NEWS AND SARAH CAVACINI'S MOTION FOR SUMMARY JUDGMENT [Dkt. #27]

Plaintiff, BRETT PETERSON (hereinafter, "Plaintiff" or "Peterson"), by and through his undersigned attorney, file their response to Defendant NORTHEAST FLORIDA NEWSPAPERS, LLC, d/b/a PALATKA DAILY NEWS and SARAH CAVACINI's Motion for Summary Judgment, Incorporated Memorandum of Law and hereby moves this Court to enter summary judgment in Plaintiffs' favor under Fed. R. Civ. P. 56 as there are genuine issues of material fact as to the claims in Plaintiffs' Complaint [Doc. 27].

## BACKGROUND

This case involves This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and under the Fourth Amendment of the United States Constitution as applied to the

states under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights. Defendants committed these unlawful violations of Plaintiff's constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human and safety rights. The Plaintiff is also seeking state law claims related to these federal claims that form a part of the same case or controversy, under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). On November 5, 2020, Myers unseated the Plaintiff as mayor of Crescent City in an election. It was a contentious election, and since the Plaintiff had only served one term at that point, it was likely that he would attempt re-election and be campaigning against Myers in the future. However, during the months after the election, Myers realized that the computer assigned to the mayor's office was still logged into the Plaintiff's Google Account. The right thing to do in such a situation would have been for Myers to log out of Plaintiff's Google Account. Instead, Myers – either on her own or through agents working on her behalf – opportunistically elected to access the Plaintiff's Google Account, going so far as to assemble a spreadsheet of all of Plaintiff's personal online usernames and passwords. Having complete and unfettered access to Plaintiff's personal online accounts, Myers went on a six-month long fishing expedition for ill-gotten information on the Plaintiff's personal life which might serve to give her a political advantage. In addition, during early 2021, the Plaintiff was speaking out in the media against the Mayor and Sheriff's Office's plans to eliminate the Crescent City

Police Department and outsource law enforcement to the Putnam County Sheriff's Office, at a cost to the taxpayers of approximately $490,000.00 per year. On April 5, 2021, Myers, along with interim City Manager Phil Leary and City Attorney Jay Asbury, directed the Putnam County Sheriff's Office to perform a forensic analysis of the subject computer. Notably, the "reporting officer" in the Forensic Report was Defendant Alex Milligan Sharp. The reasoning given behind the search was based upon the alleged concerns that, "confidential information was being accessed off the Mayor's work computer and then leaked." Importantly, it should be noted that this forensic analysis was not performed pursuant to any warrant, nor in furtherance of any articulable suspicion or probable cause. Rather, the analysis was performed as a result of Myers's disingenuous worries that the computer was being accessed remotely by Plaintiff – her concocted explanation for the fact that the Plaintiff's account was still logged into the computer six months after his having left office. The Forensic Report concluded that "no pornography or images of a sexual nature" were present on the computer, and Sharp was, "not able to establish any illegal activities involving this computer." However, at the point during the forensic analysis at which it was determined that the computer was not, in fact, being accessed remotely, the investigation should have concluded. Determining whether the computer was being accessed remotely, was, after all, the very pretense – albeit false – upon which Myers requested the analysis in the first place.

Therefore, upon determining that the computer had <u>not</u> been accessed remotely, no further investigation was necessary and certainly no probing into Plaintiff's

personal online accounts should have occurred. But the Putnam County Sheriff's Office did not stop. Rather, they invaded Plaintiff's privacy further by searching Plaintiff's private browser history. In so conducting this warrantless forensic analysis on the subject computer, the Putnam County Sheriff's Office was acting solely at the behest of Myers, essentially becoming a dirt-digging tool in her political arsenal. However, contrary to Sharp's conclusions, the computer search did find conclusive evidence of criminal activity, as it showed that at 11:32am on March 24, 2021, someone created a folder titled "Peterson Computer" which contained an Excel spreadsheet of the Plaintiff's passwords (hereinafter, the "Excel Document") and an image filed titled "Google Chrome Screen capture". It also showed that the Excel Document was created moments later, at 11:33am on March 24, 2021, and contained, "a list of websites, usernames, and passwords associated with Peterson." As the author of the Forensic Report, Alex Sharp explained: This is a feature of Google, where you can export all user names and stored passwords from the Google Chrome web browser. Notably, on March 24, 2021, the Plaintiff had been out of office for months, and it would have been physically impossible for him to create either the "Peterson Computer" folder or the Excel Document. It could only have been Mayor Myers who created the "Peterson Computer" folder and the Excel Document, as she was the sole user authorized to use that computer on March 24, 2021.

## ACTIVITIES OF THE NEWSPAPER

The fact that this invasive deep-dive into Plaintiff's personal online accounts was politically motivated is further evidenced by what happened next, once the

forensic audit was finished: the findings were published in a report which was made available to the public. As a result of the release of this report to the public, an article was published on May 11, 2021, both in print and online, in the Palatka Daily News, a publication operated by Defendant Northeast Florida Newspapers, LLC (hereinafter, "Defendant Palatka Daily News"). The article, which remains available on Defendant Palatka Daily News's website, was authored by reporter Defendant Sarah Cavacini, and bears the headline, "PORN SITES PUT CRESCENT CITY ON ALERT," followed by the subheading, "AUTHORITIES LINK FORMER MAYOR'S EMAIL, PASSWORD TO ADULT SITES ON OFFICE COMPUTER".

## STANDARD OF REVIEW

"The Court shall not grant summary judgment if the movant shows that there are genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputed issues of material fact preclude the entry a summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## SUMMARY JUDGMENT BURDENS

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir.

2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). *Pugh v. Inch*, Case No. 5:18-cv-117-TKW/MJF, 4 (N.D. Fla. Aug. 18, 2020).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . .." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007). *Pugh v. Inch*, Case No. 5:18-cv-117-TKW/MJF, 4-5 (N.D. Fla. Aug. 18, 2020)

## **ARGUMENT**

### I. **The Newspaper has liability for the tort of invading privacy by publishing private facts.**

To preface, Florida law recognizes four unique causes of action which

fall under the umbrella tort of "invasion of privacy", including (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion— physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory. Allstate Ins. Co. v. Ginsberg, 863 So.2d 156 (Fla. 2003) (*citing*, Agency Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1252 n.20 (Fla. 1996)).

Defendants argue the Newspaper has no liability for the tort of invasion of privacy by publishing private facts because the courts ruled in *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989), the general public has right to dissemination of news that has a legitimate or public general interest. However, *Cape* differentiates from the matter at hand because in *Cape* the news was lawfully obtained from government records additional and confidential child abuse information related to the case. Cape Publications, Inc. v. Hitchner, 549 So. 2d 1374, 1378 (Fla. 1989). Here, the publication information was obtained illegally. Defendant Myers herself physically intruded into Plaintiff's private Google Account and various other online accounts belonging to the Plaintiff, going so far as to amass a spreadsheet of Plaintiff's personal usernames and passwords. Myers, Sharp, and DeLoach

proceeded to search Plaintiff's personal online browser history stored at Google – a history only made accessible to them by virtue of the fact that Plaintiff had inadvertently stayed logged into his Google Account on the computer prior to leaving office. Further, while publication of the findings of such an intrusion are not a necessary element of the intrusion itself, here, the ill-gotten fruits of Defendants Myers, Sharp, and DeLoach's tortious search were released to the public and subsequently reported on in the media. *See*, Oppenheim v. I.C. System, Inc., 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010). As caselaw, both in Florida State court and in the Middle District, has made clear, in analyzing invasions of privacy premised upon intrusion into one's private quarters "the focus of the tort is nonetheless 'the right of a private person to be free from public gaze.'" Id. (*citing* Ginsberg, *supra*. 863 So.2d at 162).

In addition, the Plaintiff can prevail in a claim for disclosure of private facts because the facts disclosed are highly offensive to a reasonable person.  For an individual to have their personal Google Account hacked and disseminated for public media purposes is truly highly offensive to a reasonable person. Given the highly sensitive, personal, and private nature of Plaintiff's online conduct – particularly the collection of Plaintiff's online usernames and passwords by Defendant Myers and the searching of Plaintiff's private browser history by Myers, Sharp, and DeLoach – such an intrusion would undoubtedly be offensive to a reasonable person. Defendant are claiming a legitimate public interest and an investigation.  However, as previously mentioned there are no

legitimate public interest where the information was unlawfully and obtained and no warrant to search a private account. Plaintiff has a claim for tort of invasion of privacy.

## II.     Plaintiff, a public official, can meet the strict requirements to sustain a claim for defamation.

As for the degree of fault for defamation required under Florida law in order for a private individual to recover actual damages, "the appropriate standard after <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323 (1974)], is negligence – i.e., publication of false and defamatory statements without reasonable care to determine their falsity." <u>Boyles v. Mid-Florida Television Corp.</u>, 431 So.2d 627, 634 (Fla. 5th DCA 1983), <u>affirmed</u>, 467 So.2d 282 (Fla. 1985). *See also*, <u>Cape Publications, Inc. v. Teri's Health Studio, Inc.</u>, 385 So.2d 188 (Fla. 5th DCA 1980). The Defendants each published without privilege false and defamatory statements concerning the Plaintiff without reasonable care as to the truth or falsity of the statements, resulting in actual damages to Plaintiff. As a threshold inquiry, "determining liability in a defamation case turns on whether the libeled party is a public or private figure and on whether the defamatory publication addresses a public or a private concern." <u>Silvester v. American Broadcasting Companies, Inc.</u>, 839 F.2d 1491 (11th Cir. 1988).

The Defendant argues that the Plaintiff is still considered a Public Official and must prove actual malice to succeed on Defamation claim. Although it is maintained that Plaintiff was a private figure at the time the defamatory statements of the Defendants were communicated, as Plaintiff was already out of public office for a

period of six months by the time the Putnam County Sheriff's Office's report was published and Defendant Cavacini's article, which itself was based on that report, was also published, meaning that Plaintiff was once again a private citizen as opposed to a public figure, even if we assume *arguendo* that Plaintiff was a public figure, Plaintiff can still maintain an action for defamation based upon the facts as they presently exist.

A State cannot award damages to a public official for defamatory falsehood relating to his official conduct unless the official proves actual malice—that the falsehood was published with knowledge of its falsity or with reckless disregard of whether it was true or false. *Rosenblatt v. Baer*, 383 U.S. 75, 77, 86 S. Ct. 669, 671, 15 L. Ed. 2d 597 (1966). Plaintiffs can prove actual malice against the Defendants since they acted with knowledge of its falsity and reckless disregard of whether the defamatory statements were true. The courts have upheld findings of actual malice when a defendant failed to investigate a story weakened by inherent improbability, internal inconsistency, or apparently reliable contrary information. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *McHale v. Lake Charles American Press,* 390 So.2d 556, 566 (La.App.3d Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981). *Zerangue v. TSP Newspapers, Inc.,* 814 F.2d 1066, 1070 (5th Cir. 1987).

Here, the false and defamatory statements of the Defendants are stated within Defendant Cavacini's article. Cavacini writes, "The Putnam County Sherrif's Office conducted an audit in early April because interim City Manager Phil Leary and Mayor Michele Myers, who currently uses the computer [Plaintiff] previously used, were

worried 'confidential information was being accessed off the mayor's work computer and then leaked.'". Cavacini goes on to write that, "Additionally, there was concern that they had discovered links to adult websites and accounts with passwords associated with the former Mayor [the Plaintiff]." Although the article goes on to say that, based upon the findings of the forensic audit, "The sheriff's office report did not find any evidence of illegal activities involving Myer's computer that Peterson... used during his time in office," which may perhaps be responsive to the "worry" referenced earlier in the article that "confidential information was being accessed off the mayor's work computer and then leaked," the article never goes on to explicitly state this, despite the Defendants all having evidence – the forensic audit report – that would have definitively answered this question and exculpated Plaintiff with respect to the allegation.

Further, Defendant Cavacini's article is primarily considered about the possibility of Plaintiff having accessed adult sites from the subject computer, but never actually states that Plaintiff did, in fact, access adult sites from the subject computer, despite the Defendants all having evidence – the forensic audit report – that would have definitively answered this question and exculpated Plaintiff with respect to the allegation. The statements were mixed expressions of fact and opinion, made by the Defendants "based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication," From v. Tallahassee Democrat, Inc., 400 So.2d 53, 57 (Fla. 1st DCA 1981), and further,

because they "imply the existence of undisclosed defamatory facts as [their] basis." LXR, Inc. v. Horizon Assocs. Joint Venture, 842 So.2d 881, 885 (Fla. 4th DCA 2003). Additionally, "if the 'facts' upon which the opinion is based are stated in the article, but those 'facts' are either incomplete or incorrect, or the speaker's assessment of them is erroneous, the statement may imply a false assertion of fact. In that event, the statement is not protected as pure opinion." Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990). Here, it is very clearly the case, that the 'facts' – Defendants Myers and DeLoach subjective thoughts and objective findings as related both in the forensic report and Defendant Cavacini's article which was based upon said report – were woefully incomplete so as to imply a false assertion of fact – that Plaintiff looked at porn on his work computer, when this is, in fact, not so. Although whether an alleged defamatory statement consists of mixed opinion and fact is a question of law for the Court (Colodny v. Iverson, Yoakum, Papiano & Hatch, 936 F.Supp. 917, 923 (M.D. Fla. 1996)), "[w]here the court finds that the statements in question is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented." Stembridge v. Mintz, 652 So.2d 444, 446 (Fla. 3d DCA 1995).

The Defendants all had actual knowledge that their incomplete or incorrect statements were factually false and were such that they were reasonably capable of defamatory interpretation. This knowledge came by virtue of the fact that the Defendants all possessed the findings of the forensic audit of the subject computer which revealed that the allegations levied against Plaintiff vis-à-vis the "links to adult websites and accounts with passwords associated with [Plaintiff]" having been

discovered on the subject computer – the allegations that precipitated the audit and were subsequently published in Defendant Cavacini's article – were all blatantly false and unfounded. In short, the Sheriff's Office's report of the findings of the forensic audit which the Defendants all possessed, fully exonerated Plaintiff with respect to all of the allegations of his wrongful, illegal, or unethical conduct on the subject computer, but Defendant's article and the facts and opinions of the Defendants which comprise it do not make that fact clear to the public, which perhaps was the intended effect from the beginning.

Thus, the Defendants all made their incomplete or incorrect statements about Plaintiff's conduct – statements reasonably capable of defamatory interpretation – with actual malice, having actual knowledge that it their incomplete or incorrect statements were false when they were made, or at the very least, the statements were communicated by each Defendant with reckless disregard of whether the statements were false or not. As has been made clear in this discussion of actual malice, the Defendants each failed to exercise due reasonable care, not only in determining the falsity and incomplete nature of their defamatory statements but failed further to refrain from publishing to third-parties the false and defamatory statements they knew to be incorrect or incomplete depictions of 'fact'. Plaintiff can show that as a matter of law or fact that their defamation claim is valid.

### III.    The Plaintiff has a VALID claim against the Newspaper that is for intentional infliction of emotional distress.

A successful invocation of a defamation privilege *will* preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). However, here to dismiss the intentional infliction of emotional distress claims, the Defendants must concede that defamatory claims against them are valid and will succeed. Therefore, it is premature to dismiss the claims for intentional infliction of emotional distress.

Moreover, the Plaintiffs can meet the standard to maintain a claim for intentional infliction of emotional distress.  Those elements included extreme and outrageous conduct, intent to cause, or reckless disregard to the probability of causing, severe emotional distress, and causation. *Vernon v. Medical Management Assocs*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996). The Defendants have acted with actual malice when they published knowingly false statements with reckless disregard of the truth.

For either of these reasons, Plaintiff's allegations being sufficient to state a claim for intentional infliction of emotional distress, summary judgment should not be granted to the Defendants on this Count.

### IV.    The Newspaper is liable to Plaintiff for his claim for "negligence."

The Negligence claims in addition to the defamation allegations made against The Defendants allow for a sustainable claim. Defamation privilege will not prevent recovery upon separate causes of action which are properly pled upon the existence of

independent facts. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). Defendants present the argument that, "If [the plaintiff's *negligence* claim] relies on the defendants' duty not to *defame* [the plaintiff], it is duplicative of [the plaintiff's] *defamation* claims and preempted."). *Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892, 895 (2d Cir. 2012).* Here, Defendants Cavacini and Palatka Daily News, as a reporter and newspaper publisher/publication, respectively, owed Plaintiff a duty to report insofar as it relates to Plaintiff as its subject in a manner that was reasonably accurate and fair. Defendants Cavacini and the Palatka Daily News have, individually and collectively, also breached the duty of reasonable care they owed Plaintiff by way of their tortious conduct as alleged elsewhere herein. Thus, the Defendants are not entitled to summary judgment on this Count

## **CONCLUSION**

For the foregoing reasons, the Defendants Motion for Summary Judgment and Incorporated Memorandum of law should be denied.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a notice of electronic filing to all counsels of record.

Respectfully submitted this 14th day of August, 2022.

_____

CHIGOZIE IKENNA NWANKWO, ESQ.
Florida Bar No. 123894
LENTO LAW GROUP, P.A.
Wells Fargo Plaza – Suite # 2000
333 SE 2nd Avenue Miami, FL 33131
P - 786-628-1800 – Ext: 467
    833-LENTOLAW - Toll Free
    305-979-6121 - Direct Line
F - 904-299-5400
CNwankwo@Lentolawgroup.com