UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| BRETT PETERSON, | Case No.: 3:22-cv-00090-TJC-PDB |
| Plaintiff, | |
| v. | |
| CITY OF CRESCENT CITY, FLORIDA, MICHELE MYERS, in her individual capacity and H.D. DELOACH, in his official capacity as Sheriff of Putnam County, Florida, | |
| Defendants. | |

<u>AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>
<u>INJUNCTIVE RELIEF SOUGHT</u>

Plaintiff, BRETT PETERSON (hereinafter, "Plaintiff" or "Peterson"), by and through his undersigned counsel, sues Defendants, CITY OF CRESCENT CITY, FLORIDA, MICHELE MYERS, in her individual capacity and H.D. DELOACH, in his official capacity as Sheriff of Putnam County, Florida, and avers as follows:

<u>NATURE OF THE ACTION</u>

1.     This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and under the Fourth Amendment of the United States Constitution as applied to the states under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective unlawful violations under color of state law of Plaintiff's individual rights.

2.     The Plaintiff is also filing state law claims related to these federal claims that form a part of the same case or controversy, under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.     Plaintiff seeks relief, including declaratory and injunctive relief, compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988 and Florida state law.

<u>PARTIES</u>

4.     Plaintiff is a natural person residing in Putnam County, Florida. At all times relevant to this action, Plaintiff was a resident of Putnam County, Florida.

5.     Defendant City of Crescent City (hereinafter "City"), Florida, is a political subdivision of the State of Florida, existing in Putnam County, Florida which is within the jurisdictional boundaries of this Court. At all times relevant to this action, Defendant City has the capacity to sue and be sure.

6.     Defendant Myers, in her individual capacity, has been a resident of Putnam County, Florida and has the capacity to sue and be sued. She is sui juris.

7.     Defendant H.D. DeLoach (hereinafter, "DeLoach" or "Putnam County Sheriff's Office") is the Sheriff of Putnam County, Florida, and operated the Putman County Sheriff's Office in Putnam County, Florida within the jurisdictional boundaries of this Court.  Defendant Sheriff has the capacity to sue and be sued

<u>VENUE AND JURISDICTION</u>

8.     Venue is proper in the Middle District Court of Florida, pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02 (c), and Defendants' independent and

collective unlawful violations under color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division, as all Defendants work, reside, and/ or do business in this district and division, and all of the acts and omissions giving rise to this action occurred in Putnam County, which is in this district and division.

9.      The Court has subject-matter jurisdiction over the Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343(a)(3) (civil rights).

10.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 65.

11.     This Court also has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a).

12.     At all material times, the Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of the Plaintiff's human and safety rights.

13.     These constitutional law violations are "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125 (1973) (citing Southern Pacific Terminal Co. v. ICC, 219 U. S. 498, 515 (1911), Moore v. Ogilvie, 394 U. S. 814, 816 (1969), Carroll v. Princess Anne, 393 U. S. 175, 178-179 (1968), United States v. W. T. Grant Co., 345 U. S. 629, 632-633 (1953)).

14.     All conditions precedent to the maintenance of this action have been performed, have occurred prior to its institution or have been waived.

<u>FACTS COMMON TO ALL COUNTS</u>

A.   <u>A BRIEF EXPLANATION OF HOW GOOGLE ACCOUNTS WORK</u>

15.   Millions of Americans use Google Accounts to manage their emails, login information, and other linked accounts, like YouTube.

16.   Whenever anyone goes to the Gmail website in order to retrieve their mail, by logging into that site, by logging into Gmail, they also automatically log into their Google Account, which stores their passwords, as well as their browsing history.

17.   Often, Google Accounts are set to stay logged in, in order to make it easier for the user to return to often-used websites without having to re-log in every time they use them.

18.   However, one of the most useful aspects of Google Accounts are that a person can log into their account from any location, whether on a computer, phone, or other smart device.

19.   This enables the user to essentially pick up where they last left off, regardless of computer.

20.   On the other hand, since the Google Account information is stored by Google in the "cloud", nothing is actually on the computer itself.

21.   Essentially, once a person logs out of the computer, access to any of the passwords, browsing history, etc., leaves no trace on the computer.

22.   However, if a person leaves a Google Account signed in, and another person accesses that account while still logged in, that intruder – should they go

looking for it – will have access to the person's passwords, search and browsing history, credit card numbers, banking information, location data, etc.

    B.    <u>THE FACTS OF THE INSTANT CASE</u>

23.    On November 5, 2020, Myers unseated the Plaintiff as mayor of Crescent City in an election.

24.    It was a contentious election, and since the Plaintiff had only served one term at that point, it was likely that he would attempt re-election and be campaigning against Myers in the future.

25.    However, during the months after the election, Myers realized that the computer assigned to the mayor's office was still logged into the Plaintiff's Google Account.

26.    The right thing to do in such a situation would have been for Myers to log out of Plaintiff's Google Account.

27.    Instead, Myers – either on her own or through agents working on her behalf – opportunistically elected to access the Plaintiff's Google Account, going so far as to assemble a spreadsheet of all of Plaintiff's personal online usernames and passwords.

28.    Having complete and unfettered access to Plaintiff's personal online accounts, Myers went on a six-month long fishing expedition for ill-gotten information on the Plaintiff's personal life which might serve to give her a political advantage.

29.    In addition, during early 2021, the Plaintiff was speaking out in the media against the Mayor and Sheriff's Office's plans to eliminate the Crescent City Police

Department and outsource law enforcement to the Putnam County Sheriff's Office, at a cost to the taxpayers of approximately $490,000.00 per year.

30.     On April 5, 2021, Myers, along with interim City Manager Phil Leary and City Attorney Jay Asbury, directed the Putnam County Sheriff's Office to perform a forensic analysis of the subject computer. See, Putnam County Sheriff's Office FIBRS Incident Report, attached hereto as Exhibit "A", p. 1, ¶ 1 (hereinafter, the "Forensic Report").

31.     Notably, the "reporting officer" in the Forensic Report was Alex Milligan Sharp, an employee of the Putnam County Sheriff's Office.

32.     The reasoning given behind the search was based upon the alleged concerns that, "confidential information was being accessed off the Mayor's work computer and then leaked." Ex. "A", p. 1, ¶ 2 – p. 2, ¶ 1.

33.     Importantly, it should be noted that this forensic analysis was not performed pursuant to any warrant, nor in furtherance of any articulable suspicion or probable cause.

34.     Rather, the analysis was performed as a result of Myers's disingenuous statement that the computer was being accessed remotely by Plaintiff – her concocted explanation for the fact that the Plaintiff's account was still logged into the computer six months after Plaintiff having left office.

35.     The Forensic Report concluded that "no pornography or images of a sexual nature" were present on the computer, and Sharp was, "not able to establish any illegal activities involving this computer." Ex. "A", p. 3, ¶¶ 2 – 4.

36.     However, at the point during the forensic analysis at which it was determined that the computer was not, in fact, being accessed remotely, the investigation should have concluded.

37.     Determining whether the computer was being accessed remotely, was, after all, the very pretense – albeit false – upon which Myers requested the analysis in the first place.

38.     Therefore, upon determining that the computer had <u>not</u> been accessed remotely, no further investigation was necessary and certainly no probing into Plaintiff's personal online accounts should have occurred.

39.     But the Putnam County Sheriff's Office did not stop. Rather, it invaded Plaintiff's privacy further by searching Plaintiff's private browser history.

40.     In so conducting this warrantless forensic analysis on the subject computer, the Putnam County Sheriff's Office was acting at the behest of Myers, essentially becoming a dirt-digging tool in her political arsenal.

41.     However, contrary to Sharp's conclusions, the computer search <u>did</u> find conclusive evidence of criminal activity, as it showed that at 11:32am on March 24, 2021, someone created a folder titled "Peterson Computer" which contained an Excel spreadsheet of the Plaintiff's passwords (hereinafter, the "Excel Document") and an image filed titled "Google Chrome Screen capture". <u>Ex. "A"</u>, p. 2, ¶ 6.

42.     It also showed that the Excel Document was created moments later, at 11:33am on March 24, 2021, and contained, "a list of websites, usernames, and passwords associated with Peterson." <u>Ex. "A"</u>, p. 3, ¶ 1.

43.     As the author of the Forensic Report, Alex Sharp explained:

This is a feature of Google, where you can export all user names and stored passwords from the Google Chrome web browser.

Ex. "A", p. 3, ¶ 1.

44.     Notably, on March 24, 2021, the Plaintiff had been out of office for months, and it would have been physically impossible for him to create either the "Peterson Computer" folder or the Excel Document.

45.     It could only have been Myers who created the "Peterson Computer" folder and the Excel Document, as she was the sole user authorized to use that computer on March 24, 2021.

46.     The fact that this invasive deep-dive into Plaintiff's personal online accounts was politically motivated is further evidenced by what happened next, once the forensic audit was finished: the findings were published in a report which was made available to the public.   Upon information and belief, Defendants City and Myers alerted the Palatka Daily News of the existence of the report by DeLoach, prepared by Sharp, which caused the Palatka Daily News to request the report from DeLoach or the report was released by Defendants City and Myers.   The report was thus released by Defendants City, Myers and/ or DeLoach.

47.     As a result of the release of this report to the public, an article was published on May 11, 2021, both in print and online, in the Palatka Daily News, a publication operated by Defendant Northeast Florida Newspapers, LLC (hereinafter, "Palatka Daily News").

48.     The article (a true and correct copy of which is annexed hereto as Exhibit "A"), which remains available on the Palatka Daily News's website, was authored by reporter Sarah Cavacini, and bears the headline, "PORN SITES PUT CRESCENT CITY ON ALERT," followed by the subheading, "AUTHORITIES LINK FORMER MAYOR'S EMAIL, PASSWORD TO ADULT SITES ON OFFICE COMPUTER".

C.   <u>THE FOURTH AMENDMENT'S APPLICATION TO GOOGLE ACCOUNTS.</u>

49.     The Fourth Amendment bars unreasonable searches and seizures.

50.     In describing the Fourth Amendment as a protection of people and not places, the U.S. Supreme Court has stated that what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." <u>Katz v. United States</u>, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

51.     A government intrusion into a person's private sphere qualifies as a "search," triggering the Fourth Amendment requirement that the intrusion be authorized by a warrant supported by probable cause, when that person " 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable.' " <u>Carpenter v. United States</u>, ─── U.S. ───, 138 S. Ct. 2206, 2213, 201 L.Ed.2d 507 (2018), quoting <u>Smith v. Maryland</u>, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

52.     The Supreme Court also has recognized that an intrusion need not be "trespassory" to be considered a search for Fourth Amendment purposes. See, <u>United</u>

States v. Jones, 565 U.S. 400, 412-13, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (affirming court of appeals decision that required a warrant for a search that tracked an individual's movements for 28 days with global positioning technology); see also, Matter of Search of Info. Stored at Premises Controlled by Google, 481 F. Supp. 3d 730, 734 (N.D. Ill. 2020).

53.  Essentially, the moment that Sharp accessed the Plaintiff's Google Account, he was not "searching" the mayor's computer anymore, but rather, was accessing data stored on Google's corporate servers under the Plaintiff's name and password.

54.  Such a search requires a warrant aimed at Google and/or the Plaintiff, rather than at the physical computer in question, because the information was not stored on the computer at all.

55.  One comparison might be to a law enforcement officer finding a housekey in a public place, and then using that key to conduct a warrantless search of the person's house. Carelessness with a housekey or a password is not license to steal a house or a person's bank account information, nor is it anything that would authorize a warrantless search.

56.  Plaintiff has retained the undersigned to represent his interest in this case and is obligated to pay her a reasonable fee for her services. Defendants should be made to pay said fee and all costs associated with this case.

<u>COUNT I</u>
<u>TORTIOUS INVASION OF PRIVACY – INTRUSION</u>
Common Law
(Defendant Crescent City)

57.     Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

58.     To preface, Florida law recognizes four unique causes of action which fall under the umbrella tort of "invasion of privacy", including (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory. <u>Allstate Ins. Co. v. Ginsberg</u>, 863 So.2d 156 (Fla. 2003) (citing, <u>Agency Health Care Admin. v. Associated Indus. of Fla., Inc.</u>, 678 So. 2d 1239, 1252 n.20 (Fla. 1996)).

59.     Here, Defendant Crescent City, through the actions of Michele Myers, tortiously invaded upon Plaintiff's privacy by intrusion into Plaintiff's private quarters through both physical and electronic means. For the purposes of this Count alone, Myers and other employees referenced herein were acting within the course and scope of their employment with Defendant Crescent City.

60.     Defendant City, through Myers and other employees of Defendant City, physically intruded into Plaintiff's private Google Account and various other online

accounts belonging to the Plaintiff, going so far as to amass a spreadsheet of Plaintiff's personal usernames and passwords.

61.     This is tantamount to misappropriating someone's Social Security Number or the PIN for their debit card and would have required extensive and intrusive probing into Plaintiff's online accounts to obtain this information.

62.     Therefore, Defendant Crescent City, through Myers and other employees of the Defendant City, not only intruded upon Plaintiff's private online quarters by compiling his personal login credentials, but also by digging through Plaintiff's online accounts themselves in order to obtain those login credentials as well as any other politically advantageous information Myers could find.

63.     Further, Defendant Crescent City, through Myers – under a pretense which she knew to be false – directed the Putnam County Sheriff's Office, and specifically Sharp under the guidance of DeLoach, to utilize further physical and electronic means of intruding into Plaintiff's private online quarters, namely, through a forensic analysis of the computer.

64.     Admittedly, the computer itself it not the property of the Plaintiff, and therefore, if the City, Myers, Sharp, and DeLoach had merely confined their forensic analysis to the computer's hard drive to determine whether the computer was being accessed remotely by Plaintiff – as was their purported reason for conducting the analysis in the first place – Defendants arguably would not have intruded upon Plaintiff's private quarters.

65.     However, even after determining that Plaintiff was not, in fact, accessing

the computer remotely, Defendant City, through Myers, and Sharp and DeLoach at Myers request/ direction, proceeded to search Plaintiff's personal online browser history stored at Google – a history only made accessible to them by virtue of the fact that Plaintiff had inadvertently stayed logged into his Google Account on the computer prior to leaving office.

66.   To search through Plaintiff's personal online browser history – information which they had no legal right to access, particularly given that this search was conducted without a warrant – was a clear intrusion into Plaintiff's private online quarters.

67.   Further, while publication of the findings of such an intrusion are not a necessary element of the intrusion itself, here, the ill-gotten fruits of Defendant City's tortious search were released to the public by Defendant City, through Myers, through Myers and/ or DeLoach, and subsequently reported on in the media. See, Oppenheim v. I.C. System, Inc., 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010).

68.    As caselaw, both in Florida State court and in the Middle District, has made clear, in analyzing invasions of privacy premised upon intrusion into one's private quarters "the focus of the tort is nonetheless 'the right of a private person to be free from public gaze.'" Id. (citing Ginsberg, supra. 863 So.2d at 162).

69.   Further, to constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person. Stoddard v. Wohlfahrt, 573 So.2d 1060, 1062-63 (Fla. 5th DCA 1991).

70.   It is clear that as a direct and proximate result of the tortious conduct of

Defendant City, as alleged, directly subjected Plaintiff's private online activities –
information which was password-protected and, thus, clearly intended to be private –
to public scrutiny.

71.     Given the highly sensitive, personal, and private nature of Plaintiff's
online conduct – particularly the collection of Plaintiff's online usernames and
passwords by Defendant City, through Myers, and the searching of Plaintiff's private
browser history by Defendant City, through Myers and Sharp and DeLoach at Myers'
request/ direction – such an intrusion would undoubtedly be offensive to a reasonable
person.

COUNT II
TORTIOUS INVASION OF PRIVACY – INTRUSION
Common Law
(Defendant Myers)

72.     Plaintiff, BRETT PETERSON, repeats and reavers each and every
allegation of paragraphs 1 through 56 as though fully set forth herein.

73.     To preface, Florida law recognizes four unique causes of action which
fall under the umbrella tort of "invasion of privacy", including (1) appropriation—the
unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—
physically or electronically intruding into one's private quarters; (3) public disclosure
of private facts—the dissemination of truthful private information which a reasonable
person would find objectionable; and (4) false light in the public eye—publication of
facts which place a person in a false light even though the facts themselves may not be
defamatory. Allstate Ins. Co. v. Ginsberg, 863 So.2d 156 (Fla. 2003) (citing, Agency

Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1252 n.20 (Fla. 1996)).

74.     Here, Defendant Michele Myers, acting in bad faith, with malice and/or reckless disregard, tortiously invaded upon Plaintiff's privacy by intrusion into Plaintiff's private quarters through both physical and electronic means. For the purposes of this Count alone, Myers was acting outside the course and scope of her employment with Defendant Crescent City.

75.     Defendant Myers physically intruded into Plaintiff's private Google Account and various other online accounts belonging to the Plaintiff, going so far as to amass a spreadsheet of Plaintiff's personal usernames and passwords.

76.     This is tantamount to misappropriating someone's Social Security Number or the PIN for their debit card and would have required extensive and intrusive probing into Plaintiff's online accounts to obtain this information.

77.     Therefore, Defendant Myers not only intruded upon Plaintiff's private online quarters by compiling his personal login credentials, but also by digging through Plaintiff's online accounts themselves in order to obtain those login credentials as well as any other politically advantageous information Myers could find.

78.     Further, Defendant Myers – under a pretense which she knew to be false – directed the Putnam County Sheriff's Office, and specifically Sharp under the guidance of DeLoach, to utilize further physical and electronic means of intruding into Plaintiff's private online quarters, namely, through a forensic analysis of the computer.

79.     Admittedly, the computer itself it not the property of the Plaintiff, and

therefore, if the City, Myers, Sharp, and DeLoach had merely confined their forensic analysis to the computer's hard drive to determine whether the computer was being accessed remotely by Plaintiff – as was the purported reason for conducting the analysis in the first place – the Defendants arguably would not have intruded upon Plaintiff's private quarters.

80.     However, even after determining that Plaintiff was not, in fact, accessing the computer remotely, Defendant Myers, and the City, Sharp and DeLoach at Myers request/ direction, proceeded to search Plaintiff's personal online browser history stored at Google – a history only made accessible to them by virtue of the fact that Plaintiff had inadvertently stayed logged into his Google Account on the computer prior to leaving office.

81.     To search through Plaintiff's personal online browser history – information which they had no legal right to access, particularly given that this search was conducted without a warrant – was a clear intrusion into Plaintiff's private online quarters.

82.     Further, while publication of the findings of such an intrusion are not a necessary element of the intrusion itself, here, the ill-gotten fruits of Defendant City's tortious search were released to the public by Defendant Myers and/ or DeLoach, and subsequently reported on in the media. See, Oppenheim v. I.C. System, Inc., 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010).

83.     As caselaw, both in Florida State court and in the Middle District, has made clear, in analyzing invasions of privacy premised upon intrusion into one's

private quarters "the focus of the tort is nonetheless 'the right of a private person to be free from public gaze.'" Id. (citing Ginsberg, supra. 863 So.2d at 162).

84.     Further, to constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person. Stoddard v. Wohlfahrt, 573 So.2d 1060, 1062-63 (Fla. 5th DCA 1991).

85.     It is clear that as a direct and proximate result of the tortious conduct of Defendant Myers, as alleged, directly subjected Plaintiff's private online activities – information which was password-protected and, thus, clearly intended to be private – to public scrutiny.

86.     Given the highly sensitive, personal, and private nature of Plaintiff's online conduct – particularly the collection of Plaintiff's online usernames and passwords by Defendant Myers, and the searching of Plaintiff's private browser history by Defendant Myers and Sharp and DeLoach at Myers' request/ direction – such an intrusion would undoubtedly be offensive to a reasonable person.

**COUNT III**
**TORTIOUS INVASION OF PRIVACY – INTRUSION**
Common Law
(Defendant DeLoach)

87.     Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

88.     To preface, Florida law recognizes four unique causes of action which fall under the umbrella tort of "invasion of privacy", including (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—

physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory. Allstate Ins. Co. v. Ginsberg, 863 So.2d 156 (Fla. 2003) (citing, Agency Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1252 n.20 (Fla. 1996)).

89.     Here, Defendant DeLoach, through the actions of Sharp at the request/ direction of Michele Myers, tortiously invaded Plaintiff's privacy by intrusion into Plaintiff's private quarters through both physical and electronic means. For the purposes of this Count alone, Sharp was acting within the course and scope of his employment with Defendant DeLoach.

90.     Defendant DeLoach, through Sharp and other employees of Defendant Sheriff, physically intruded into Plaintiff's private Google Account and various other online accounts belonging to the Plaintiff.

91.     Further, Defendant DeLoach, based on a request or at the direction by Michele Myers, directed the Putnam County Sheriff's Office, and specifically Sharp, to utilize further physical and electronic means of intruding into Plaintiff's private online quarters, namely, through a forensic analysis of the computer.

92.     Admittedly, the computer itself it not the property of the Plaintiff, and therefore, if the City, Myers, Sharp, and DeLoach had merely confined their forensic analysis to the computer's hard drive to determine whether the computer was being

accessed remotely by Plaintiff – as was their purported reason for conducting the analysis in the first place – Defendants arguably would not have intruded upon Plaintiff's private quarters.

93.     However, even after determining that Plaintiff was not, in fact, accessing the computer remotely, Defendant DeLoach proceeded to search Plaintiff's personal online browser history stored at Google – a history only made accessible to him by virtue of the fact that Plaintiff had inadvertently stayed logged into his Google Account on the computer prior to leaving office.

94.     To search through Plaintiff's personal online browser history – information which he had no legal right to access, particularly given that this search was conducted without a warrant – was a clear intrusion into Plaintiff's private online quarters.

95.     Further, while publication of the findings of such an intrusion are not a necessary element of the intrusion itself, here, the ill-gotten fruits of Defendant DeLoach's tortious search were released to the public by Defendant City, through Myers, through Myers and/ or DeLoach, and subsequently reported on in the media. See, Oppenheim v. I.C. System, Inc., 695 F.Supp.2d 1303, 1309 (M.D. Fla. 2010).

96.      As caselaw, both in Florida State court and in the Middle District, has made clear, in analyzing invasions of privacy premised upon intrusion into one's private quarters "the focus of the tort is nonetheless 'the right of a private person to be free from public gaze.'" Id. (citing Ginsberg, supra. 863 So.2d at 162).

97.     Further, to constitute an invasion of privacy, the intrusion must be highly

offensive to a reasonable person. <u>Stoddard v. Wohlfahrt</u>, 573 So.2d 1060, 1062-63 (Fla. 5th DCA 1991).

98.    It is clear that as a direct and proximate result of the tortious conduct of Defendant DeLoach, as alleged, directly subjected Plaintiff's private online activities – information which was password-protected and, thus, clearly intended to be private – to public scrutiny.

99.    Given the highly sensitive, personal, and private nature of Plaintiff's online conduct – particularly the searching of Plaintiff's private browser history – such an intrusion would undoubtedly be offensive to a reasonable person.

<u>COUNT IV</u>
<u>TORTIOUS INVASION OF PRIVACY –</u>
<u>PUBLIC DISCLOSURE OF PRIVATE FACTS</u>
Common Law
(Defendant Crescent City)

100.    Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

101.    As articulated previously, Florida law recognizes the public disclosure of private facts – in other words, the dissemination of truthful private information which a reasonable person would find objectionable – as a separate cause of action arising under the umbrella tort of "invasion of privacy". <u>Ginsberg</u>, supra.

102.    Here, Defendant City, through Myers, while acting in the course and scope of her employment with Defendant City, tortiously invaded Plaintiff's privacy by causing the public disclosure of private facts concerning the Plaintiff – namely, the contents of Plaintiff's private online browser history. Myers or other employees of the

Defendant City, provided the spreadsheet to the Palatka Daily News and either caused the disclosure of private facts by telling the Palatka Daily News reporter of the existence of the Sheriff's report so that it could be requested from the Defendant Sheriff and/ or actually provided a copy of the Sheriff's report to the Palatka Daily News.

103.   As a recent case in the Eleventh Circuit, <u>Hunstein v. Preferred Collection and Management Services, Inc.</u>, explained, "[u]nder [invasions of privacy based upon the public disclosure of private facts], '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" --- F.4th ----, 2021 WL 4998980 (11th Cir. Oct. 28, 2021) (citing Restatement (Second) of Torts § 652D (1977)).

104.   Further, regarding the publicity component – in other words, the public disclosure of the private facts – "publicity of the sort that underlies the tort of public disclosure of private facts entails communication... which in turn requires 'that one person has brought an idea to the perception of another.'" <u>Id.</u> (citing Restatement (Second) of Torts § 652D (1977) and Restatement of Torts § 559, Comment a, p. 140 (1938)).

105.   Addressing this publicity requirement first, it is clear given the facts underlying this matter, that following the April 2021 forensic audit of the computer formerly utilized by Plaintiff, the contents of Plaintiff's private online browser history were released to the public by Defendant City.

106.   The initial disclosure to the public through the release of the audit's

findings by Defendant City caused the subsequent publication of these findings by the Palatka Daily News.

107. As previously alleged, the disclosure to the public of the contents of Plaintiff's private online browser history – information which was password-protected and, thus, clearly intended to be private – is a disclosure the nature of which would be highly offensive to a reasonable person.

108. Such disclosures are tantamount to doxing, however, whereas doxing typically involves the publication of personal identifying information, which is already in the public domain, such as an individual's home address or telephone number, here, Defendant disclosed highly sensitive and highly confidential facts which were wholly not accessible to the public but-for the publicity given them by the aforesaid Defendant.

109. Finally, the information disclosed was not at all a matter of public concern, given that it did not relate to any matter of "political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983) (discussing "matters of public concern" within the First Amendment context).

110. Just because Plaintiff is a former mayor, does not automatically make him a public figure.

111. In fact, the Supreme Court of the United States held in Wolston v. Readers Digest Association, Inc., that, "The private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." 443 U.S. 157, 167 (1979).

112. Accordingly, the proposition that any private citizen who, at one time

held public office, by virtue of that fact, waives their reasonable expectation of privacy in their private online internet browsing, is unreasonable and unjust.

113.    Therefore, the private contents of Plaintiff's personal internet browser history, as a private citizen, are of no consequence to the public.

114.    This is especially so, given that the contents of that browser history – which were, in fact, accessed by Plaintiff solely from his home computer – were only then viewable by the aforesaid Defendants on the subject computer because of Plaintiff inadvertently staying logged into his Google Account on the computer after leaving office.

115.    Further, at the time the aforementioned disclosures were made, Plaintiff was no longer a public figure – having been out of mayoral office for over six months – and by  Cavacini's own admission in her May 11, 2021, article in the Palatka Daily News, "the sheriff's office report did not find any evidence of illegal activities involving Myers' computer that Peterson, whom Myers defeated in the November general election, used during his time in office."

116.    Therefore, as a direct and proximate result of the tortious conduct of Defendant City, as alleged, said Defendant wrongfully invaded into Plaintiff's private affairs by publicly disclosing the contents of his private online browser history – information which Defendant did not have a legal right to possess, let alone disseminate to the public.

<u>COUNT V</u>
<u>TORTIOUS INVASION OF PRIVACY –</u>
<u>PUBLIC DISCLOSURE OF PRIVATE FACTS</u>
Common Law
(Defendant Myers)

117.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

118.   As articulated previously, Florida law recognizes the public disclosure of private facts – in other words, the dissemination of truthful private information which a reasonable person would find objectionable – as a separate cause of action arising under the umbrella tort of "invasion of privacy". <u>Ginsberg</u>, supra.

119.   Here, Defendant Myers, while acting outside the course and scope of her employment with Defendant City, tortiously invaded Plaintiff's privacy by causing the public disclosure of private facts concerning the Plaintiff – namely, the contents of Plaintiff's private online browser history and the spreadsheet to the Palatka Daily News.  Myers also either caused the disclosure of private facts by telling the Palatka Daily News reporter of the existence of the Sheriff's report so that it could be requested from the Defendant Sheriff and/ or actually provided a copy of the report to the Palatka Daily News.

120.   As a recent case in the Eleventh Circuit, <u>Hunstein v. Preferred Collection and Management Services, Inc.</u>, explained, "[u]nder [invasions of privacy based upon the public disclosure of private facts], '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable

person, and (b) is not of legitimate concern to the public.'" --- F.4th ----, 2021 WL 4998980 (11th Cir. Oct. 28, 2021) (citing Restatement (Second) of Torts § 652D (1977)).

121.    Further, regarding the publicity component – in other words, the public disclosure of the private facts – "publicity of the sort that underlies the tort of public disclosure of private facts entails communication... which in turn requires 'that one person has brought an idea to the perception of another.'" Id. (citing Restatement (Second) of Torts § 652D (1977) and Restatement of Torts § 559, Comment a, p. 140 (1938)).

122.    Addressing this publicity requirement first, it is clear given the facts underlying this matter, that following the April 2021 forensic audit of the computer formerly utilized by Plaintiff, the contents of Plaintiff's private online browser history were released to the public by Defendant City.

123.    The initial disclosure to the public through the release of the spreadsheet and/ or audit's findings by Defendant Myers caused the subsequent publication of these findings by the Palatka Daily News.

124.    In making the disclosures alleged herein, Myers acted with malice, in bad faith and/ or with reckless disregard.

125.    As previously alleged, the disclosure to the public of the contents of Plaintiff's private online browser history – information which was password-protected and, thus, clearly intended to be private – is a disclosure the nature of which would be highly offensive to a reasonable person.

126.    Such disclosures are tantamount to doxing, however, whereas doxing

typically involves the publication of personal identifying information, which is already in the public domain, such as an individual's home address or telephone number, here, Defendant disclosed highly sensitive and highly confidential facts which were wholly not accessible to the public but-for the publicity given them by the aforesaid Defendant.

127.   Finally, the information disclosed was not at all a matter of public concern, given that it did not relate to any matter of "political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983) (discussing "matters of public concern" within the First Amendment context).

128.   Just because Plaintiff is a former mayor, does not automatically make him a public figure.

129.   In fact, the Supreme Court of the United States held in Wolston v. Readers Digest Association, Inc., that, "The private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." 443 U.S. 157, 167 (1979).

130.   Accordingly, the proposition that any private citizen who, at one time held public office, by virtue of that fact, waives their reasonable expectation of privacy in their private online internet browsing, is unreasonable and unjust.

131.   Therefore, the private contents of Plaintiff's personal internet browser history, as a private citizen, are of no consequence to the public.

132.   This is especially so, given that the contents of that browser history – which were, in fact, accessed by Plaintiff solely from his home computer – were only then viewable by the aforesaid Defendants on the subject computer because of Plaintiff

inadvertently staying logged into his Google Account on the computer after leaving office.

133.   Further, at the time the aforementioned disclosures were made, Plaintiff was no longer a public figure – having been out of mayoral office for over six months – and by Cavacini's own admission in her May 11, 2021, article in the Palatka Daily News, "the sheriff's office report did not find any evidence of illegal activities involving Myers' computer that Peterson, whom Myers defeated in the November general election, used during his time in office."

134.   Therefore, as a direct and proximate result of the tortious conduct of Defendant Myers, as alleged, said Defendant wrongfully invaded into Plaintiff's private affairs by publicly disclosing the contents of his private online browser history – information which Defendant did not have a legal right to possess, let alone disseminate to the public.

COUNT VI
TORTIOUS INVASION OF PRIVACY –
PUBLIC DISCLOSURE OF PRIVATE FACTS
Common Law
(Defendant DeLoach)

135.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

136.   As articulated previously, Florida law recognizes the public disclosure of private facts – in other words, the dissemination of truthful private information which a reasonable person would find objectionable – as a separate cause of action arising under the umbrella tort of "invasion of privacy". Ginsberg, supra.

137.    Here, Defendant DeLoach tortiously invaded Plaintiff's privacy by causing the public disclosure of private facts concerning the Plaintiff – namely, the contents of Plaintiff's private online browser history. DeLoach either caused the disclosure of private facts by telling the Palatka Daily News reporter of the existence of the report so that it could be requested from the Defendant Sheriff and/ or actually provided a copy of the report to the Palatka Daily News.

138.    As a recent case in the Eleventh Circuit, <u>Hunstein v. Preferred Collection and Management Services, Inc.</u>, explained, "[u]nder [invasions of privacy based upon the public disclosure of private facts], '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" --- F.4th ----, 2021 WL 4998980 (11th Cir. Oct. 28, 2021) (citing Restatement (Second) of Torts § 652D (1977)).

139.    Further, regarding the publicity component – in other words, the public disclosure of the private facts – "publicity of the sort that underlies the tort of public disclosure of private facts entails communication... which in turn requires 'that one person has brought an idea to the perception of another.'" <u>Id.</u> (citing Restatement (Second) of Torts § 652D (1977) and Restatement of Torts § 559, Comment a, p. 140 (1938)).

140.    Addressing this publicity requirement first, it is clear given the facts underlying this matter, that following the April 2021 forensic audit of the computer formerly utilized by Plaintiff, the contents of Plaintiff's private online browser history

were released to the public by Defendant DeLoach.

141.    As previously alleged, the disclosure to the public of the contents of Plaintiff's private online browser history – information which was password-protected and, thus, clearly intended to be private – is a disclosure the nature of which would be highly offensive to a reasonable person.

142.    Such disclosures are tantamount to doxing, however, whereas doxing typically involves the publication of personal identifying information, which is already in the public domain, such as an individual's home address or telephone number, here, Defendant disclosed highly sensitive and highly confidential facts which were wholly not accessible to the public but-for the publicity given them by the aforesaid Defendant.

143.    Finally, the information disclosed was not at all a matter of public concern, given that it did not relate to any matter of "political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983) (discussing "matters of public concern" within the First Amendment context).

144.    Just because Plaintiff is a former mayor, does not automatically make him a public figure.

145.    In fact, the Supreme Court of the United States held in Wolston v. Readers Digest Association, Inc., that, "The private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." 443 U.S. 157, 167 (1979).

146.    Accordingly, the proposition that any private citizen who, at one time held public office, by virtue of that fact, waives their reasonable expectation of privacy

in their private online internet browsing, is unreasonable and unjust.

147.   Therefore, the private contents of Plaintiff's personal internet browser history, as a private citizen, are of no consequence to the public.

148.   This is especially so, given that the contents of that browser history – which were, in fact, accessed by Plaintiff solely from his home computer – were only then viewable by the aforesaid Defendants on the subject computer because of Plaintiff inadvertently staying logged into his Google Account on the computer after leaving office.

149.   Further, at the time the aforementioned disclosures were made, Plaintiff was no longer a public figure – having been out of mayoral office for over six months – and by Cavacini's own admission in her May 11, 2021, article in the Palatka Daily News, "the sheriff's office report did not find any evidence of illegal activities involving Myers' computer that Peterson, whom Myers defeated in the November general election, used during his time in office."

150.   Therefore, as a direct and proximate result of the tortious conduct of Defendant DeLoach, as alleged, said Defendant wrongfully invaded into Plaintiff's private affairs by publicly disclosing the contents of his private online browser history – information which Defendant did not have a legal right to possess, let alone disseminate to the public.

COUNT VII
DEFAMATION
Common Law
(Defendant Myers)

151.  Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

152.  Defendant Michele Myers, in her individual capacity, defamed the Plaintiff, through her individual acts of slander or libel.  For the purpose of this Count alone, Defendant Myers was acting outside the course and scope of her employment/ relationship with Defendant City and acted with bad faith, malicious purpose or reckless disregard for her actions.

153.  Defendant Myers caused to be published without privilege false and defamatory statements concerning the Plaintiff without reasonable care as to the truth or falsity of the statements, resulting in actual damages to Plaintiff.  These statements are the Microsoft Excel spreadsheet, the article by the Palatka Daily News and the report by the Putnam County Sheriff.

154.  If Plaintiff is required to plead "actual malice" based on a determination that he is a public figure, he has done so herein.  Actual malice is established by showing that the publication was made with knowledge that it was false or with reckless disregard of whether it was false or not. Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, 460 (Fla. 5th DCA 1999), rev. denied, 760 So.2d 948 (Fla. 2000). See also, Scholz v. RDV Sports, Inc., 710 So.2d 618, 626 (Fla. 5th DCA 1998), rev. denied, 718 So.2d 170 (Fla. 1998).

155.   The false and defamatory statements of Defendant Myers are stated within Cavacini's article, which incorporates the Sheriff's report, and the spreadsheet, which implies that Plaintiff was accessing pornographic sites on City computers when he was the Mayor.

156.   Cavacini writes, "The Putnam County Sherrif's Office conducted an audit in early April because interim City Manager Phil Leary and Mayor Michele Myers, who currently uses the computer [Plaintiff] previously used, were worried 'confidential information was being accessed off the mayor's work computer and then leaked.'" (Ex. "B").

157.   Cavacini goes on to write that, "Additionally, there was concern that they had discovered links to adult websites and accounts with passwords associated with the former Mayor [the Plaintiff]." She writes that a Microsoft Excel spreadsheet was created by the Defendant City from Myers' computer that contained websites, usernames and passwords associated with Plaintiff, again implying that these cites were actually located on City computers, which they were not.

158.   Although the article goes on to say that, based upon the findings of the forensic audit, "The sheriff's office report did not find any evidence of illegal activities involving Myer's computer that Peterson... used during his time in office," which may perhaps be responsive to the "worry" referenced earlier in the article that "confidential information was being accessed off the mayor's work computer and then leaked," the article never goes on to explicitly state this, despite the Defendants all having evidence – the forensic audit report – that would have definitively answered this question and

exculpated Plaintiff with respect to the allegation.

159.   Defendant Myers clearly contributed her subjective thoughts and objective findings in the spreadsheet, to the article published in the Palatka Daily News and to the forensic report upon which the article was based.

160.   Defendant Myers cannot rightfully seek to claim the defense that the statements expressed in Cavacini's article as well as the article itself were solely statements of opinion, which would not be actional as defamation under Florida law. Morse v. Ripken, 707 So.2d 921, 922 (Fla. 4th DCA 1998).

161.   This is because the statements were mixed expressions of fact and opinion, made by the Defendant "based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication," From v. Tallahassee Democrat, Inc., 400 So.2d 53, 57 (Fla. 1st DCA 1981), and further, because they "imply the existence of undisclosed defamatory facts as [their] basis." LXR, Inc. v. Horizon Assocs. Joint Venture, 842 So.2d 881, 885 (Fla. 4th DCA 2003).

162.   Here, it is very clearly the case, that the 'facts' – Defendant Myers subjective thoughts and objective findings as related both in the spreadsheet, forensic report and Cavacini's article which was based upon said report – were woefully incomplete so as to imply a false assertion of fact – that Plaintiff looked at porn on his work computer, when this is, in fact, not so.

163.   Although whether an alleged defamatory statement consists of mixed opinion and fact is a question of law for the Court (Colodny v. Iverson, Yoakum,

<u>Papiano & Hatch</u>, 936 F.Supp. 917, 923 (M.D. Fla. 1996)), "[w]here the court finds that the statements in question is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented." <u>Stembridge v. Mintz</u>, 652 So.2d 444, 446 (Fla. 3d DCA 1995).

164.   Further evidence of that the incomplete or incorrect statements of the Defendant are reasonably capable of defamatory interpretation is the fact that is clear that these statements were made with actual malice by Myers in that she created the spread sheet showing pornographic cites and claimed that they were "on" her computer, which is false.

165.   Actual malice is established by showing that the publication was made with knowledge that it was false or with reckless disregard of whether it was false or not. <u>Hoch</u>, supra. 742 So.2d at 460.

166.   Defendant Myers had actual knowledge that incomplete or incorrect statements about Plaintiff were factually false and were such that they were reasonably capable of defamatory interpretation.

167.   This knowledge came by virtue of the fact that the Defendant possessed the findings of the forensic audit of the subject computer which revealed that the allegations levied against Plaintiff vis-à-vis the "links to adult websites and accounts with passwords associated with [Plaintiff]" having been discovered on the subject computer – the allegations that precipitated the audit and were subsequently published in Cavacini's article – were all blatantly false and unfounded.  Myers also had knowledge that the spreadsheet contained files that were not "on" her computer but

were accessed illegally through Google access into Plaintiff's private account.

168.   In short, the spreadsheet and Sheriff's Office's report of the findings of the forensic audit which the Defendant possessed, fully exonerated Plaintiff with respect to all of the allegations of his wrongful, illegal, or unethical conduct on the subject computer, but the subject article in the Palatka Daily News and the facts and opinions of the Defendant which comprise it do not make that fact clear to the public, which perhaps was the intended effect from the beginning.

169.   Thus, the Defendant made her incomplete or incorrect statements about Plaintiff's conduct – statements reasonably capable of defamatory interpretation including statements in the Microsoft Excell spreadsheet, statements to Cavacini and to the Sheriff – with actual malice, having actual knowledge that her incomplete or incorrect statements were false when they were made, or at the very least, the statements were communicated by Defendant Myers reckless disregard of whether the statements were false or not.

170.   As has been made clear in this discussion of actual malice, Myers failed to exercise due reasonable care, not only in determining the falsity and incomplete nature of her defamatory statements but failed further to refrain from publishing to third-parties the false and defamatory statements she knew to be incorrect or incomplete depictions of 'fact'.

171.   Having breach this duty of reasonable care to refrain from publishing to third-parties the false and defamatory statements she knew to be incorrect or incomplete depictions of 'fact', Defendants Myers acted with actual malice and/ or

malice, bad faith and/ or in reckless disregard for the truth.

172.   As a direct and proximate result of the tortious conduct of Defendant Myers, as alleged, Defendant has defamed Plaintiff with respect to the public, thereby causing Plaintiff to suffered actual damages, including reputational injury, as a result.

COUNT VIII
DEFAMATION
Common Law
(Defendant City)

173.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

174.   Defendant City, through Myers and other employees such as City Manager, Phil Leary, defamed the Plaintiff, through acts of slander or libel.  For the purpose of this Count alone, Myers, Leary and other employees of the Defendant City were acting inside the course and scope of their employment/ relationship with Defendant City.

175.   This claim is brought against the Defendant City in the event that Plaintiff is found to be a private individual and not a public figure.  As for the degree of fault required under Florida law in order for a private individual to recover actual damages, "the appropriate standard after Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)], is negligence – i.e., publication of false and defamatory statements without reasonable care to determine their falsity." Boyles v. Mid-Florida Television Corp., 431 So.2d 627, 634 (Fla. 5th DCA 1983), affirmed, 467 So.2d 282 (Fla. 1985). See also, Cape Publications, Inc. v. Teri's Health Studio, Inc., 385 So.2d 188 (Fla. 5th DCA

1980).

176.   Defendant City caused to be published without privilege false and defamatory statements concerning the Plaintiff without reasonable care as to the truth or falsity of the statements, resulting in actual damages to Plaintiff.  These false and defamatory statements are contained in the spreadsheet, the Sheriff's report and the Palatka Daily News article.

177.   Before the information in connection with which Plaintiff was defamed ever became public through the release of the Sheriff's Office's report to the public and the spreadsheet, and subsequently to Cavacini and the Palatka Daily News, the "controversy" had already been settled and it had been determined that Plaintiff did not use City computers to access pornography.

178.   Cavacini writes, "The Putnam County Sherrif's Office conducted an audit in early April because interim City Manager Phil Leary and Mayor Michele Myers, who currently uses the computer [Plaintiff] previously used, were worried 'confidential information was being accessed off the mayor's work computer and then leaked.'" (Ex. "B").

179.   Cavacini goes on to write that, "Additionally, there was concern that they had discovered links to adult websites and accounts with passwords associated with the former Mayor [the Plaintiff]."

180.   Although the article goes on to say that, based upon the findings of the forensic audit, "The sheriff's office report did not find any evidence of illegal activities involving Myer's computer that Peterson... used during his time in office," which may

perhaps be responsive to the "worry" referenced earlier in the article that "confidential information was being accessed off the mayor's work computer and then leaked," the article never goes on to explicitly state this, despite the Defendant having evidence – the forensic audit report – that would have definitively answered this question and exculpated Plaintiff with respect to the allegation.

181.   Defendant City, through Leary and Myers, at least, clearly contributed their subjective thoughts and objective findings to at least the article published in the Palatka Daily News and Myers also contributed to the spreadsheet and forensic report upon which the article was based.

182.   Defendant City cannot rightfully seek to claim the defense that the statements expressed in Cavacini's article as well as the article itself were solely statements of opinion, which would not be actionable as defamation under Florida law. Morse v. Ripken, 707 So.2d 921, 922 (Fla. 4th DCA 1998).

183.   Here, it is very clearly the case that the 'facts' – Myers and/ or Leary's subjective thoughts and objective findings as related both in the spreadsheet, forensic report and Cavacini's article which was based upon said report – were woefully incomplete so as to imply a false assertion of fact – that Plaintiff looked at porn on his work computer, when this is, in fact, not so.

184.   Although whether an alleged defamatory statement consists of mixed opinion and fact is a question of law for the Court (Colodny v. Iverson, Yoakum, Papiano & Hatch, 936 F.Supp. 917, 923 (M.D. Fla. 1996)), "[w]here the court finds that the statements in question is of mixed opinion and fact and reasonably capable of

defamatory interpretation, then a jury issue is presented." Stembridge v. Mintz, 652 So.2d 444, 446 (Fla. 3d DCA 1995).

185.   Defendant knew or should have known that the spreadsheet and documents flowing from it were false and unfounded in that Defendant possessed the findings of the forensic audit of the subject computer which revealed that the allegations levied against Plaintiff vis-à-vis the "links to adult websites and accounts with passwords associated with [Plaintiff]" having been discovered on the subject computer – the allegations that precipitated the audit and were subsequently published in Cavacini's article – were all blatantly false and unfounded.   Myers also had knowledge that the spreadsheet contained filed that were not "on" her computer but were accessed illegally through Google access into Plaintiff's private account.

186.   In short, the Sheriff's Office's report of the findings of the forensic audit which the Defendants all possessed, fully exonerated Plaintiff with respect to all of the allegations of his wrongful, illegal, or unethical conduct on the subject computer, but subject article in the Palatka Daily News and the facts and opinions of the Defendant which comprise it do not make that fact clear to the public, which perhaps was the intended effect from the beginning.

187.   Thus, the Defendant made its incomplete or incorrect statements about Plaintiff's conduct – statements reasonably capable of defamatory interpretation including statements in the Microsoft Excell spreadsheet, statements to Cavacini and to the Sheriff – having actual knowledge that her incomplete or incorrect statements were false when they were made, or at the very least, the statements were

communicated by Defendant Myers reckless disregard of whether the statements were false or not.

188.    As this relates to the element of fault with respect to defamation, that "the appropriate standard after Gertz is negligence – i.e., publication of false and defamatory statements without reasonable care to determine their falsity." Boyles v. Mid-Florida Television Corp., 431 So.2d 627, 634 (Fla. 5th DCA 1983), affirmed, 467 So.2d 282 (Fla. 1985).

189.    Having breach this duty of reasonable care to refrain from publishing to third-parties the false and defamatory statements they knew to be incorrect or incomplete depictions of 'fact', the Defendants all acted negligently, as alleged.

190.    As a direct and proximate result of the tortious conduct of Defendant City, as alleged, Plaintiff has been defamed with respect to the public, thereby causing Plaintiff to suffered actual damages, including reputational injury, as a result.

<u>COUNT IX</u>
<u>42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE</u>
U.S. Const. Amend. IV
(Defendant City)

191.    Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

192.    42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper
proceeding for redress...

193.   Defendant City is a "person" within the meaning of 42 U.S.C. § 1983.

194.   The Fourth Amendment guarantees "[t]he right of the people to be secure
in their persons, houses, papers, and effects, against unreasonable searches and
seizures." U.S. Const. amend. IV.

195.   The Due Process Clause of the Fourteenth Amendment incorporates
these Fourth Amendment rights as against the states.

196.   The Fourth Amendment's protections extend to "any thing or place with
respect to which a person has a 'reasonable expectation of privacy'." California v.
Ciraolo, 476 U.S. 207, 211 (1967).

197.   Whether an individual has a reasonable expectation of privacy in the
object of the challenged search is a two-part inquiry: first, has the individual manifested
a subjective expectation of privacy in the object of the challenged search, and second,
is society willing to recognize that expectation as reasonable? Id. (citing generally,
Katz v. United States, 389 U.S. 347 (1967)).

198.   Therefore, "a party alleging an unconstitutional search under the Fourth
Amendment must establish both a subjective and an objective expectation of privacy to
succeed." United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995).

199.   The subjective component of the reasonable expectation of privacy
analysis requires that a person "exhibit an actual expectation of privacy". Id.

200.   Here, it is very clear that Plaintiff exhibited an actual expectation of

privacy with respect to his Google Account, his various other online accounts, and his private internet browser history as all of this digital content was password-protected and was therefore only intended to be accessible by Plaintiff.

201.   Regarding the objective component of the reasonable expectation of privacy analysis, this component requires that "'the [privacy] expectation be one that society is prepared to recognize as 'reasonable'." United States v. Ford, 34 F.3d 992, 995 (11th Cir. 1994) (citing, Katz, supra. 389 U.S. at 361).

202.   In determining this, "[u]nder the objective prong, the proper inquiry is whether the 'government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment'." Id. at 996, (citing, Oliver v. United States, 466 U.S. 170, 182-83 (1984)).

203.   Here, the Defendant City, while acting under color of state law, employed sophisticated forms of technological surveillance in the form of a forensic audit on the subject computer, to unlawfully and without a warrant, intrude into Plaintiff's private online quarters.

204.   Defendant Myers was the final policymaker on behalf of the Defendant City and she made the unconstitutional decisions complained of herein.   There was no review of her decisions.

205.   In determining whether the governmental was so intrusive so as to be objectively unconstitutional, "[T]he mere fact that the [governmental actors] have employed relatively sophisticated forms of technological surveillance does not render the surveillance unconstitutional... The crucial inquiry, as in any search and seizure

analysis, is whether the technology reveals 'intimate details'." <u>Robinson</u>, supra. 62 F.3d at 1329, (citing, <u>U.S. v. Ishmael</u>, 48 F.3d 850 (5th Cir. 1995)).

206.   Here, the technology employed by Defendant Myers, as the final policymaker for the Defendant City, very clearly revealed intimate details including, "a Microsoft Excel spreadsheet that listed websites, usernames and passwords that were associated with [Plaintiff]" as well as the contents of the private browser history associated with Plaintiff's Google Account.

207.   The Supreme Court of the United States has "long recognized that the Fourth Amendment's guarantee of freedom from warrantless search and seizures is not premised on arcane concepts of property and possessory interests," but rather, "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion." <u>U.S. Cooper</u>, 203 F.3d 1279, 1283-84 (11th Cir. 2000).

208.   As has been established here, Plaintiff most certainly had a reasonable expectation of privacy with respect to his online content as described, as his expectation thereto was both subjectively and objectively reasonable per Katz, and further, the fact that the search into and the seizure of Plaintiff's highly sensitive and highly private online content was conducted wholly without a warrant in further violation of the Fourth Amendment, makes the unlawful, offensive, and exploitative conduct of the City.

209.   Thus, Defendant Myers, while acting under color of state law and as the final policymaker for the Defendant City, deprived the Plaintiff, in bad faith and with

malicious purpose, of his constitutionally-protected rights as arising under the Fourth Amendment to the United States Constitution.

210. As has been made clear elsewhere herein, this official policy and the tortious acts which underlie it, were the moving force behind the violations of the Plaintiff's Fourth Amendment constitutional rights as alleged.

211. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983, and in addition to damages in connection with this violation, Plaintiff further seeks reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. § 1988.

**COUNT X**
**42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE**
U.S. Const. Amend. IV
(Defendant Myers)

212. Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

213. 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

214. Defendant Myers is a "person" within the meaning of 42 U.S.C. § 1983.

215. The Fourth Amendment guarantees "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

216.   The Due Process Clause of the Fourteenth Amendment incorporates these Fourth Amendment rights as against the states.

217.   The Fourth Amendment's protections extend to "any thing or place with respect to which a person has a 'reasonable expectation of privacy'." California v. Ciraolo, 476 U.S. 207, 211 (1967).

218.   Whether an individual has a reasonable expectation of privacy in the object of the challenged search is a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search, and second, is society willing to recognize that expectation as reasonable? Id. (citing generally, Katz v. United States, 389 U.S. 347 (1967)).

219.   Therefore, "a party alleging an unconstitutional search under the Fourth Amendment must establish both a subjective and an objective expectation of privacy to succeed." United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995).

220.   The subjective component of the reasonable expectation of privacy analysis requires that a person "exhibit an actual expectation of privacy". Id.

221.   Here, it is very clear that Plaintiff exhibited an actual expectation of privacy with respect to his Google Account, his various other online accounts, and his private internet browser history as all of this digital content was password-protected and was therefore only intended to be accessible by Plaintiff.

222.   Regarding the objective component of the reasonable expectation of

privacy analysis, this component requires that "'the [privacy] expectation be one that society is prepared to recognize as 'reasonable'." United States v. Ford, 34 F.3d 992, 995 (11th Cir. 1994) (citing, Katz, supra. 389 U.S. at 361).

223.   In determining this, "[u]nder the objective prong, the proper inquiry is whether the 'government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment'." Id. at 996, (citing, Oliver v. United States, 466 U.S. 170, 182-83 (1984)).

224.   The law was clearly established at the time of Myers intrusion that said intrusion was illegal and unconstitutional.

225.   Here, the Defendant Myers, while acting under color of state law, employed sophisticated forms of technological surveillance in the form of a forensic audit on the subject computer, to unlawfully and without a warrant, intrude into Plaintiff's private online quarters.

226.   In determining whether the governmental was so intrusive so as to be objectively unconstitutional, "[T]he mere fact that the [governmental actors] have employed relatively sophisticated forms of technological surveillance does not render the surveillance unconstitutional... The crucial inquiry, as in any search and seizure analysis, is whether the technology reveals 'intimate details'." Robinson, supra. 62 F.3d at 1329, (citing, U.S. v. Ishmael, 48 F.3d 850 (5th Cir. 1995)).

227.   Here, the technology employed by Defendant Myers, very clearly revealed intimate details including, "a Microsoft Excel spreadsheet that listed websites, usernames and passwords that were associated with [Plaintiff]" as well as

the contents of the private browser history associated with Plaintiff's Google Account.

228.   The Supreme Court of the United States has "long recognized that the Fourth Amendment's guarantee of freedom from warrantless search and seizures is not premised on arcane concepts of property and possessory interests," but rather, "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion." U.S. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000).

229.   As has been established here, Plaintiff most certainly had a reasonable expectation of privacy with respect to his online content as described, as his expectation thereto was both subjectively and objectively reasonable per Katz, and further, the fact that the search into and the seizure of Plaintiff's highly sensitive and highly private online content was conducted wholly without a warrant in further violation of the Fourth Amendment, makes the unlawful, offensive, and exploitative conduct of Myers.

230.   Thus, Defendant Myers, while acting under color of state law, deprived the Plaintiff, in bad faith and with malicious purpose, of his constitutionally-protected rights as arising under the Fourth Amendment to the United States Constitution.

231.   As has been made clear elsewhere herein, this official policy and the tortious acts which underlie it, were the moving force behind the violations of the Plaintiff's Fourth Amendment constitutional rights as alleged.

232.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983, and in addition to damages in connection with this

violation, Plaintiff further seeks reasonable attorney's fees and costs of suit pursuant

to 42 U.S.C. § 1988.

COUNT XI
42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE
U.S. Const. Amend. IV
(Defendant DeLoach)

233.   Plaintiff, BRETT PETERSON, repeats and reavers each and every

allegation of paragraphs 1 through 56 as though fully set forth herein.

234.   42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

235.   Defendant DeLoach is a "person" within the meaning of 42 U.S.C. §

1983.

236.   The Fourth Amendment guarantees "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV.

237.   The Due Process Clause of the Fourteenth Amendment incorporates

these Fourth Amendment rights as against the states.

238.   The Fourth Amendment's protections extend to "any thing or place with

respect to which a person has a 'reasonable expectation of privacy'." California v.

Ciraolo, 476 U.S. 207, 211 (1967).

239.   Whether an individual has a reasonable expectation of privacy in the object of the challenged search is a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search, and second, is society willing to recognize that expectation as reasonable? Id. (citing generally, Katz v. United States, 389 U.S. 347 (1967)).

240.   Therefore, "a party alleging an unconstitutional search under the Fourth Amendment must establish both a subjective and an objective expectation of privacy to succeed." United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995).

241.   The subjective component of the reasonable expectation of privacy analysis requires that a person "exhibit an actual expectation of privacy". Id.

242.   Here, it is very clear that Plaintiff exhibited an actual expectation of privacy with respect to his Google Account, his various other online accounts, and his private internet browser history as all of this digital content was password-protected and was therefore only intended to be accessible by Plaintiff.

243.   Regarding the objective component of the reasonable expectation of privacy analysis, this component requires that "'the [privacy] expectation be one that society is prepared to recognize as 'reasonable'." United States v. Ford, 34 F.3d 992, 995 (11th Cir. 1994) (citing, Katz, supra. 389 U.S. at 361).

244.   In determining this, "[u]nder the objective prong, the proper inquiry is whether the 'government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment'." Id. at 996, (citing, Oliver v. United States, 466 U.S. 170, 182-83 (1984)).

245.   Here, the Defendant DeLoach, while acting under color of state law, employed sophisticated forms of technological surveillance in the form of a forensic audit on the subject computer, to unlawfully and without a warrant, intrude into Plaintiff's private online quarters.

246.   DeLoach was the final policymaker for the Putnam County Sheriff's Office and directed and/or oversaw Sharp's intrusion into Plaintiff's private matters without a warrant.  Alternatively, Sharp was the delegated final policymaker on behalf of the Defendant DeLoach and he made the unconstitutional decisions complained of herein and there was no review of his decisions/report that adversely affected Plaintiff.

247.   In determining whether the governmental was so intrusive so as to be objectively unconstitutional, "[T]he mere fact that the [governmental actors] have employed relatively sophisticated forms of technological surveillance does not render the surveillance unconstitutional... The crucial inquiry, as in any search and seizure analysis, is whether the technology reveals 'intimate details'." Robinson, supra. 62 F.3d at 1329, (citing, U.S. v. Ishmael, 48 F.3d 850 (5th Cir. 1995)).

248.   Here, the technology employed by Defendant DeLoach, with either DeLoach as the final policymaker, or Sharp as the delegated final policymaker for Defendant DeLoach, very clearly revealed intimate details including, "a Microsoft Excel spreadsheet that listed websites, usernames and passwords that were associated with [Plaintiff]" as well as the contents of the private browser history associated with Plaintiff's Google Account.

249.   The Supreme Court of the United States has "long recognized that the

Fourth Amendment's guarantee of freedom from warrantless search and seizures is not premised on arcane concepts of property and possessory interests," but rather, "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion." U.S. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000).

250.   As has been established here, Plaintiff most certainly had a reasonable expectation of privacy with respect to his online content as described, as his expectation thereto was both subjectively and objectively reasonable per Katz, and further, the fact that the search into and the seizure of Plaintiff's highly sensitive and highly private online content was conducted wholly without a warrant in further violation of the Fourth Amendment, makes the unlawful, offensive, and exploitative conduct of DeLoach.

251.   Thus, Defendant DeLoach, while acting under color of state law, deprived Plaintiff, in bad faith and with malicious purpose, of his constitutionally-protected rights as arising under the Fourth Amendment to the United States Constitution.

252.   As has been made clear elsewhere herein, this official policy and the tortious acts which underlie it, were the moving force behind the violations of the Plaintiff's Fourth Amendment constitutional rights as alleged.

253.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983, and in addition to damages in connection with this violation, Plaintiff further seeks reasonable attorney's fees and costs of suit pursuant

to 42 U.S.C. § 1988.

COUNT XII
DEPRIVATION OF EQUAL PROTECTION
MONELL CLAIM – MUNICIPAL LIABILITY
U.S. Const. Amend. XIV
(The City of Crescent City)

254.   Plaintiff, BRETT PETERSON, repeats and reavers each and every

allegation of paragraphs 1 through 56 as though fully set forth herein.

255.   42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

256.   The City of Crescent City is a "person" within the meaning of 42 U.S.C.

§ 1983. ("Congress did intend municipalities and other local government units to be

included among those persons to whom § 1983 applies.") Monell v. Department of

Social Services of City of New York, 436 U.S. 658, 690 (1978).

257.   Under the Fourteenth Amendment to the Constitution of the United

States, Plaintiff had the right as a citizen of the United States to equal protection under

the law. This includes Plaintiff's right "to be secure in [his] persons, houses, papers,

and effects, against unreasonable searches and seizures," as arising under the Fourth

Amendment to the Constitution of the United States.

258.   Plaintiff has adequately demonstrated an unconstitutional violation of

the rights and privileges secured to him by the Fourth Amendment to the Constitution of the United States, specifically, the unconstitutional search and seizure address in Count IX above.

259.   He also alleges that Michele Myers was the final policymaker regarding the unconstitutional action alleged herein and that her actions were not reviewed nor required to be reviewed.

260.   Therefore, pursuant to the powers and authorities delegated to her by the legislature of the State of Florida, Myers, as mayor of Crescent City, while acting under color of state law, engaged in, and further, directed the Putnam County Sheriff's Office, and specifically, Defendant H.D. DeLoach (hereinafter, "DeLoach") to engage in, conduct which violated the rights and privileges secured to Plaintiff by the Fourth Amendment to the Constitution of the United States.

261.   Thus, the violative and unconstitutional conduct of Defendant Myers, as Mayor of Crescent City, while acting under color of state law, and pursuant to the powers and authorities delegated to her by the legislature of the State of Florida, were "acts or edicts [which] may fairly be said to represent official policy" of Defendant the City of Crescent City.

262.   Defendant Myers, as mayor of Crescent City, ordered, approved of, and/ or ratified the tortious acts or edicts which may fairly be said to represent official policy of Defendant City.

263.   As has been made clear elsewhere herein, this official policy and the tortious acts which underlie it, were the moving force behind the violations of the

Plaintiff's Fourth Amendment constitutional rights as alleged.

264.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983, and in addition to damages in connection with this violation, Plaintiff further seeks reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. § 1988.

COUNT XIII
DEPRIVATION OF EQUAL PROTECTION
MONELL CLAIM – MUNICIPAL LIABILITY
U.S. Const. Amend. XIV
(Against Myers)

265.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

266.   42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

267.   Michele Myers is a "person" within the meaning of 42 U.S.C. § 1983.

268.   Under the Fourteenth Amendment to the Constitution of the United States, Plaintiff had the right as a citizen of the United States to equal protection under the law. This includes Plaintiff's right "to be secure in [his] persons, houses, papers, and effects, against unreasonable searches and seizures," as arising under the Fourth Amendment to the Constitution of the United States.

269.   Plaintiff has adequately demonstrated an unconstitutional violation of

the rights and privileges secured to him by the Fourth Amendment to the Constitution of the United States, specifically, the unconstitutional search and seizure address in Count X above.

270.   The law was clearly established at the time of the unconstitutional actions alleged herein to give prior notice to Myers that her actions were unconstitutional.

271.   Myers' actions were the moving force behind the violations of the Plaintiff's Fourth Amendment constitutional rights as alleged.

272.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983, and in addition to damages in connection with this violation, Plaintiff further seeks reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. § 1988.

COUNT XIV
VIOLATIONS OF THE STORED COMMUNICATIONS ACT (SCA)
18 U.S.C. § 2701 et seq.
(Against City of Crescent City)

273.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

274.   The Stored Communications Act ("SCA" or "the Act"), codified at 18 U.S.C. §§ 2701-2713, protects electronic communications in storage, and provides, in relevant part that, "whoever intentionally accesses without authorization a facility through which an electronic communication service is provides; or... intentionally exceeds an authorization to access that facility; and thereby obtains... access to a wire or electronic communication while it is in electronic storage in such system" is liable

pursuant to the SCA. 18 U.S.C. §§ 2701(a). See also, Brown Jordan International, Inc. v. Carmicle, 846 F.3d 1167 (11ᵗʰ Cir. 2017).

275.   "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Vista Marketing, LLC v. Burkett, 812 F.3d 954, 962 (11ᵗʰ Cir. 2016) (citing, 18 U.S.C. § 2510(15)).

276.   Regarding the term "electronic storage," it is defined as follows:

a.   Any temporary, intermediate storage of wire or electronic communication incidental to the electronic transmission thereof; and

b.   Any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

Id. at 963 (citing, 18 U.S.C. § 2510(17)).

277.   The SCA allows for private causes of action where "any person" injured by a violation of the SCA can show that the person violating the Act acted with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

278.   The matter of Brown Jordan International, Inc. v. Carmicle, 846 F.3d 1167 (11ᵗʰ Cir. 2017), is illustrative in the present case.

279.   Put simply, in Carmicle, the company for which the defendant in that matter – Carmicle – worked, was in the process of transitioning from one email service provider to another. To assist in that process, the company's Chief Information Officer provided a generic password – "Password1" – to all employees and instructed each to test his or her new email account with that password.

280.    Carmicle repeatedly accessed the email accounts of other employees, including his superiors, with the generic password and used his personal iPad to take screenshots of hundreds of emails over a period of six months.

281.    Among other defenses, Carmicle contended that he did not violate the SCA because his email access was authorized by virtue of the company's policy which provided, among other things, that "employees at [the company] should have no expectation of privacy while using company-owned or company-leased equipment."

282.    The 11th Circuit Court of Appeals found this argument unpersuasive and determined that Carmicle's access of other employees' email was unauthorized.

283.    Given the facts of the instant matter, and with the Carmicle decision in mind, it is even more clear that the conduct of the City violated the SCA.

284.    First, Carmicle was found to have violated the SCA in the private sector where the freedom of individuals to contract, especially with respect to the employer-employee relationship, is paramount.

285.    Here, Defendant is a governmental actor, and thus, its intrusions into Plaintiff's stored electronic communications were particularly egregious as they were constitutional violations, in addition to being tortious and in violation of the SCA.

286.    Specifically, Defendant City, through Michele Myers and other City employees, had unauthorized access to Plaintiff's entire Google Account – providing her access to such things as Plaintiff's emails, Google Drive, and private browser history – for a period of six months, during which time she compiled a spreadsheet listing the usernames and passwords of Plaintiff's various online accounts.

287.   Admittedly, it is unknown whether Defendant opened and/ or read any of Plaintiff's emails, but Myers, acting in the course and scope of her employment, undoubtedly has the access to do so for a period of six months, and therefore, could easily have deleted any emails she read so as to prevent Plaintiff from finding out.

288.   Further, Defendant Myers, as mayor of Crescent City, directed Defendant the Putnam County Sheriff's Office, to conduct a forensic audit on the subject computer formerly used by Plaintiff, and thereby intruded further into Plaintiff's Google Account by accessing Plaintiff's private internet browser history.

289.   These actions Defendant City were clearly not accidental and were performed with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

290.   Therefore, Defendant City, collectively or individually, violated the SCA by knowingly and intentionally accessing, without authorization in that the access was performed without Plaintiff's consent and not pursuant to a warrant, a facility through which an electronic communication service is provided – Plaintiff's Google Account – and thereby obtaining access to Plaintiff's electronic communication stored therein.

291.   As such, Defendant is liable to Plaintiff under the SCA not only for damages pursuant to 18 U.S.C. § 2707(c), but for reasonable attorney's fees and litigation costs pursuant to 18 U.S.C. § 2707(b).

<u>COUNT XV</u>
<u>VIOLATIONS OF THE STORED COMMUNICATIONS ACT (SCA)</u>
18 U.S.C. § 2701 et seq.
(Against Myers)

292.   Plaintiff, BRETT PETERSON, repeats and reavers each and every

allegation of paragraphs 1 through 56 as though fully set forth herein.

293.   The Stored Communications Act ("SCA" or "the Act"), codified at 18 U.S.C. §§ 2701-2713, protects electronic communications in storage, and provides, in relevant part that, "whoever intentionally accesses without authorization a facility through which an electronic communication service is provides; or... intentionally exceeds an authorization to access that facility; and thereby obtains... access to a wire or electronic communication while it is in electronic storage in such system" is liable pursuant to the SCA. 18 U.S.C. §§ 2701(a). See also, Brown Jordan International, Inc. v. Carmicle, 846 F.3d 1167 (11th Cir. 2017).

294.   "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Vista Marketing, LLC v. Burkett, 812 F.3d 954, 962 (11th Cir. 2016) (citing, 18 U.S.C. § 2510(15)).

295.   Regarding the term "electronic storage," it is defined as follows:

c.   Any temporary, intermediate storage of wire or electronic communication incidental to the electronic transmission thereof; and

d.   Any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

Id. at 963 (citing, 18 U.S.C. § 2510(17)).

296.   The SCA allows for private causes of action where "any person" injured by a violation of the SCA can show that the person violating the Act acted with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

297.    The matter of <u>Brown Jordan International, Inc. v. Carmicle</u>, 846 F.3d 1167 (11th Cir. 2017), is illustrative in the present case.

298.    Put simply, in <u>Carmicle</u>, the company for which the defendant in that matter – Carmicle – worked, was in the process of transitioning from one email service provider to another. To assist in that process, the company's Chief Information Officer provided a generic password – "Password1" – to all employees and instructed each to test his or her new email account with that password.

299.    Carmicle repeatedly accessed the email accounts of other employees, including his superiors, with the generic password and used his personal iPad to take screenshots of hundreds of emails over a period of six months.

300.    Among other defenses, Carmicle contended that he did not violate the SCA because his email access was authorized by virtue of the company's policy which provided, among other things, that "employees at [the company] should have no expectation of privacy while using company-owned or company-leased equipment."

301.    The 11th Circuit Court of Appeals found this argument unpersuasive and determined that Carmicle's access of other employees' email was unauthorized.

302.    Given the facts of the instant matter, and with the <u>Carmicle</u> decision in mind, it is even more clear that the conduct of Defendant City violated the SCA.

303.    First, Carmicle was found to have violated the SCA in the private sector where the freedom of individuals to contract, especially with respect to the employer-employee relationship, is paramount.

304.    Here, Defendant Myers intrusions into Plaintiff's stored electronic

communications were particularly egregious as they were constitutional violations, in addition to being tortious and in violation of the SCA.

305.   Specifically, Defendant Myers had unauthorized access to Plaintiff's entire Google Account – providing her access to such things as Plaintiff's emails, Google Drive, and private browser history – for a period of six months, during which time she compiled a spreadsheet listing the usernames and passwords of Plaintiff's various online accounts.

306.   Admittedly, it is unknown whether Defendant opened and/ or read any of Plaintiff's emails, but Myers undoubtedly has the access to do so for a period of six months, and therefore, could easily have deleted any emails she read so as to prevent Plaintiff from finding out.

307.   Further, Defendant Myers, directed Defendant the Putnam County Sheriff's Office, to conduct a forensic audit on the subject computer formerly used by Plaintiff, and thereby intruded further into Plaintiff's Google Account by accessing Plaintiff's private internet browser history.

308.   These actions Defendant Myers were clearly not accidental and were performed with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

309.   Therefore, Defendant Myers, collectively or individually, violated the SCA by knowingly and intentionally accessing, without authorization in that the access was performed without Plaintiff's consent and not pursuant to a warrant, a facility through which an electronic communication service is provided – Plaintiff's Google Account – and thereby obtaining access to Plaintiff's electronic

communication stored therein.

310.   As such, Defendant is liable to Plaintiff under the SCA not only for damages pursuant to 18 U.S.C. § 2707(c), but for reasonable attorney's fees and litigation costs pursuant to 18 U.S.C. § 2707(b).


COUNT XVI
VIOLATIONS OF THE STORED COMMUNICATIONS ACT (SCA)
18 U.S.C. § 2701 et seq.
(Against DeLoach)

311.   Plaintiff, BRETT PETERSON, repeats and reavers each and every allegation of paragraphs 1 through 56 as though fully set forth herein.

312.   The Stored Communications Act ("SCA" or "the Act"), codified at 18 U.S.C. §§ 2701-2713, protects electronic communications in storage, and provides, in relevant part that, "whoever intentionally accesses without authorization a facility through which an electronic communication service is provides; or... intentionally exceeds an authorization to access that facility; and thereby obtains... access to a wire or electronic communication while it is in electronic storage in such system" is liable pursuant to the SCA. 18 U.S.C. §§ 2701(a). See also, Brown Jordan International, Inc. v. Carmicle, 846 F.3d 1167 (11th Cir. 2017).

313.   "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Vista Marketing, LLC v. Burkett, 812 F.3d 954, 962 (11th Cir. 2016) (citing, 18 U.S.C. § 2510(15)).

314.    Regarding the term "electronic storage," it is defined as follows:

e.    Any temporary, intermediate storage of wire or electronic communication incidental to the electronic transmission thereof; and

f.    Any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

Id. at 963 (citing, 18 U.S.C. § 2510(17)).

315.    The SCA allows for private causes of action where "any person" injured by a violation of the SCA can show that the person violating the Act acted with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

316.    The matter of Brown Jordan International, Inc. v. Carmicle, 846 F.3d 1167 (11th Cir. 2017), is illustrative in the present case.

317.    Put simply, in Carmicle, the company for which the defendant in that matter – Carmicle – worked, was in the process of transitioning from one email service provider to another. To assist in that process, the company's Chief Information Officer provided a generic password – "Password1" – to all employees and instructed each to test his or her new email account with that password.

318.    Carmicle repeatedly accessed the email accounts of other employees, including his superiors, with the generic password and used his personal iPad to take screenshots of hundreds of emails over a period of six months.

319.    Among other defenses, Carmicle contended that he did not violate the SCA because his email access was authorized by virtue of the company's policy which provided, among other things, that "employees at [the company] should have no

expectation of privacy while using company-owned or company-leased equipment."

320.   The 11ᵗʰ Circuit Court of Appeals found this argument unpersuasive and determined that Carmicle's access of other employees' email was unauthorized.

321.   Given the facts of the instant matter, and with the <u>Carmicle</u> decision in mind, it is even more clear that the conduct of Defendant DeLoach violated the SCA.

322.   First, Carmicle was found to have violated the SCA in the private sector where the freedom of individuals to contract, especially with respect to the employer-employee relationship, is paramount.

323.   Here, Defendant DeLoach is a governmental actor, and thus, its intrusions into Plaintiff's stored electronic communications were particularly egregious as they were constitutional violations, in addition to being tortious and in violation of the SCA.

324.   Specifically, Defendant DeLoach, through Sharp, conducted a forensic audit on the subject computer formerly used by Plaintiff, and thereby intruded further into Plaintiff's Google Account by accessing Plaintiff's private internet browser history.

325.   These actions by Defendant DeLoach were clearly not accidental and were performed with a "knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

326.   Therefore, Defendant DeLoach, collectively or individually, violated the SCA by knowingly and intentionally accessing, without authorization in that the access was performed without Plaintiff's consent and not pursuant to a warrant, a facility through which an electronic communication service is provided – Plaintiff's

Google Account – and thereby obtaining access to Plaintiff's electronic communication stored therein.

327.   As such, Defendant is liable to Plaintiff under the SCA not only for damages pursuant to 18 U.S.C. § 2707(c), but for reasonable attorney's fees and litigation costs pursuant to 18 U.S.C. § 2707(b).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)   enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e)   enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs on the Counts above that permit the award of attorneys' fees;

(f)   award Plaintiff interest where appropriate; and

(g)      grant such other further relief as being just and proper under the circumstances.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/ s/  Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801


ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing has been served by filing through Florida's e-filing portal this 30th day of October, 2023 to all counsel of record.

/ s/ Marie A. Mattox
Marie A. Mattox